**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 14-80518-CIV-DIMITROULEAS/SNOW**

KATHY E. EMERY,

      Plaintiff,

v.

ALLIED PILOTS ASSOCIATION,

      Defendant.

_____/

**DEFENDANT ALLIED PILOTS ASSOCIATION'S MOTION TO DISMISS AND**
**MEMORANDUM IN SUPPORT THEREOF**

Kathleen M. Phillips
Florida Bar No. 287873
PHILLIPS, RICHARD & RIND, P.A.
9360 SW 72 Street, Suite 283
Miami, FL 33173
(305) 412-8322
(305) 412-8299 (fax)
kphillips@phillipsrichard.com

Steven K. Hoffman*
D.C. Bar No. 384696
Darin M. Dalmat*
D.C. Bar No. 978922
JAMES & HOFFMAN, P.C.
1130 Connecticut Avenue, NW, Suite 950
Washington, DC 20036
(202) 496-0500
(202) 496-0555
skhoffman@jamhoff.com
dmdalmat@jamhoff.com

*Admitted *Pro Hac Vice*

Attorneys for Defendant Allied Pilots Association

Dated: August 28, 2014

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

STATEMENT OF DISPOSITIVE FACTS ............................................................................1

ARGUMENT .........................................................................................................................6

I.      The Legal Standard for a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)....................6

II.     Emery's Complaint is Time Barred .............................................................................8

III.    Emery Has Not Alleged and Cannot Establish a Plausible Breach of Duty of Fair
        Representation Claim Against the APA ........................................................................10

CONCLUSION......................................................................................................................15

CERTIFICATE OF SERVICE ..............................................................................................16

SERVICE LIST .....................................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Adams v. United Paperworkers Int'l Union*, 189 F.3d 1321 (11th Cir. 1999) ...............................9

*Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65 (1991)...........................................................11

*Air Wisconsin Pilots Prot. Comm. v. Sanderson*, 909 F.2d 213 (7th Cir. 1990) ..........................14

*Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*,
    403 U.S. 274 (1971)...............................................................................................................11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................6, 7

*Avera v. Airline Pilots Ass'n, Int'l*, 436 F. App'x 969 (11th Cir. 2011).....................10, 11, 12, 13

*Bartholomew v. AGL Res., Inc.*, 361 F.3d 1333 (11th Cir. 2004)....................................................8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................................6, 7

*Benson v. Gen. Motors Corp.*, 716 F.2d 862 (11th Cir. 1983) ........................................................8

*Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v.
    CSX Transp., Inc.*, 455 F.3d 1313 (11th Cir. 2006)..............................................................14

*Coppage v. U.S. Postal Serv.*, 281 F.3d 1200 (11th Cir. 2002) ......................................................8

*DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151 (1983) .........................................................8

*Ford Motor Co. v. Huffman*, 345 U.S. 330 (1953) .................................................................10, 11

*Gvozdenovic v. United Air Lines, Inc.*, 933 F.2d 1100 (2d Cir. 1991) .................................... 13-14

*Held v. Am. Airlines, Inc.*, No. 06 C 4240, 2007 WL 433107 (N.D. Ill. Jan. 31, 2007)...............14

*Howard v. Lockheed-Georgia Co.*, 742 F.2d 612 (11th Cir. 1984).................................................8

*Loveless v. E. Air Lines, Inc.*, 681 F.2d 1272 (11th Cir. 1982)......................................................14

*Musto v. Transp. Workers Union of Am.*, 818 F. Supp. 2d 621 (E.D.N.Y. 2011) .........................14

*Parker v. Connors Steel Co.*, 855 F.2d 1510 (11th Cir. 1988) ......................................................10

*Roadway Express, Inc. v. NLRB*, 427 F. App'x 838 (11th Cir. 2011)...........................................11

*Ry. Labor Execs.' Ass'n v. S. Ry. Co.*, 860 F.2d 1038 (11th Cir. 1988) ..........................................8

*SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334 (11th Cir. 2010)............................7

*Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702 (11th Cir. 2014)........................................................7

*Smallakoff v. Air Line Pilots Ass'n, Int'l*, 825 F.2d 1544 (11th Cir. 1987) ..............................8, 14

*Steward v. Int'l Longshoreman's Ass'n, Local No. 1408*, 306 F. App'x 527
    (11th Cir. 2009)...............................................................................................12, 13

*Taaffe v. Bellsouth Telecomms., Inc.*, 204 F. App'x 823 (11th Cir. 2006) ....................................11

*Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89 (1978).....................................................................14

*Vaca v. Sipes*, 386 U.S. 171 (1967) ..................................................................................................11

*Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703 (2d Cir. 2010) ................................ 11-12, 13

**Statutes**

Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ............................2

45 U.S.C. § 153, First(q) ..................................................................................................1, 14

**Rules**

Fed. R. Civ. P. 12(b)(6)..................................................................................................1, 6, 7

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Allied Pilots Association ("APA") respectfully submits this Motion to Dismiss and incorporated Memorandum in Support Thereof to dismiss the Complaint of Plaintiff Kathy E. Emery ("Emery").

Emery, a former pilot employee of American Airlines, Inc. ("American") and a member of the APA, the certified collective bargaining representative of the American pilots, charges that APA breached its duty of fair representation to her. Specifically, she charges that the APA treated her unfairly as opposed to other pilots in allocating to her a share of the equity provided to APA for distribution to the pilots as part of a settlement agreement with American in the context of the American bankruptcy. Emery, however, has failed to state a claim upon which relief may be granted under Rule 12(b)(6), and her Complaint should be dismissed in its entirety and with prejudice.

First, Emery's claim is simply untimely under the six month statute of limitations applicable to duty of fair representation suits.

Second, Emery has not stated and cannot state a plausible claim of breach of duty against the APA because the purported "injury" of which she complains was the result of an independent, neutral arbitrator's decision at the conclusion of an arbitral proceeding in which she fully participated. Accordingly, any claim she may have arising out of her dissatisfaction with the arbitrator's award must take the form of a challenge to the award pursuant to Section 3, First(q) of the Railway Labor Act, 45 U.S.C. § 153, First(q), not a breach of duty claim against the APA.

## STATEMENT OF DISPOSITIVE FACTS

Emery was at certain relevant times an airline pilot employed by American and a member of the APA, the certified collective bargaining representative of the American pilots. Complaint

("Cmplt.") ¶¶ 2-3. As an American pilot employee, the terms and conditions of Emery's employment were provided under a collective bargaining agreement ("CBA") between the APA and American. *Id.* ¶ 2.

In 2003, Emery was medically disqualified from performing pilot duties and was approved in March 2003 for long term benefits under American's disability benefits program. *Id.* ¶¶ 7-10. On June 25, 2007, American stopped her benefits on the ground that she had failed to supply information concerning the continuation of her disability. *Id.* ¶¶ 12-13. Emery appealed the cessation of benefits administratively in August 2007, and that appeal was denied on October 22, 2007. *Id.* ¶ 20. Emery subsequently filed suit against American on September 8, 2008, under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, challenging the cessation of her disability benefits. *Id.* ¶ 58.

In the interim, Emery contends, American terminated her from the Pilot System Seniority List effective October 18, 2007. *Id.* ¶ 64.[1] On December 10, 2007, the APA filed a contractual grievance on Emery's behalf concerning American's various alleged breaches of the governing CBA in its treatment of her. *Id.* ¶ 53.[2]

---

[1]     APA does not dispute the assertion that American terminated Emery from the Pilot System Seniority List, but there is a dispute, not pertinent to the matters at issue in the instant Motion, as to precisely when American did so.

[2]     For reasons unknown, Emery includes in her Complaint allegations concerning her claims for separate disability benefits under the APA sponsored Disability Income Plan (Loss of License) and her suit in this Court over her contention that she did not receive all of the benefits from the Plan to which she felt entitled. Cmplt. ¶¶ 39-44. Although this Court did grant her prejudgment interest in the case, it denied her claims for additional benefits and statutory penalties. *See* Report and Recommendation (Hopkins, Mag. J.); Order Adopting Report and Recommendations of Magistrate Judge (Ryskamp, J.); Final Judgment (Ryskamp, J.), in *Emery v. Allied Pilots Association*, Case No. 11-CV-81123-RYSKAMP/HOPKINS (S.D. Fla.), attached hereto as Exhibit 1.

American, along with its corporate parent, filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code on November 29, 2011. *Id.* ¶ 69. In connection with the bankruptcy proceeding, APA filed a Proof of Claim preserving certain grievances filed by APA on behalf of pilots, including Emery, on July 13, 2012. *Id.* ¶ 70. On or about November 16, 2012, APA and American entered into a Letter of Agreement ("LOA") 12-01, providing, *inter alia*, for settlement of certain bankruptcy claims by APA and the pilots it represented in return for a 13.5% equity stake in the reorganized airline, the New American. *Id.* ¶¶ 71, 74; *see also* LOA 12-01 (Settlement Consideration and Bankruptcy Protections), attached hereto as Exhibit 2.[3] As part of LOA 12-01, American agreed to prosecute a motion to the bankruptcy court for approval of the LOA and the entire New CBA of which it was a part. *Id.* at 5-6; *see* Cmplt. ¶ 74. The court approved the LOA and the CBA on December 19, 2012. *See* Order Pursuant to 11 U.S.C. §§ 363(b) and 105(a) and Fed. R. Bankr. P. 9019(a) Authorizing Entry into Collective Bargaining Agreement and Settlement Letter and Approving Certain Compromises and Settlements in Connection Therewith (Allied Pilots Association), attached hereto as Exhibit 3.

Subsequently, on February 5, 2013, American and APA entered into an agreement for a procedure by which the equity share would be distributed among and between the pilots. *See* Cmplt. ¶ 77; LOA 13-07 (APA's Lump Sum Dispute Resolution Procedure), attached hereto as Exhibit 4. Specifically, LOA 13-07 provided that after the APA initially devised a methodology for distributing the equity among and between the pilots, APA would convene a proceeding "open to all pilots within the APA-represented craft or class, whereby an individual pilot or a group of pilots" dissatisfied with the allocation "may invoke and obtain a final and binding resolution by a qualified neutral Arbitrator" of any complaint they might have. *Id.* In addition to

---

[3]     The same LOA excepted the Emery grievance, among others, from the settlement, thereby preserving it as a claim in the bankruptcy proceeding. *Id.* LOA 12-01, Exh.2.

this CBA-based basis for the procedure, the APA Constitution and Bylaws ("C&B") also contained a provision by which any distribution of a lump sum benefit among and between the pilots represented by the APA would include arbitration before a neutral arbitrator. C&B Art. III § 7.F., attached hereto as Exhibit 5.

To control the arbitration process, on March 5, 2013, the APA adopted a Lump Sum Dispute Resolution Procedure. Cmplt. ¶ 77; Lump Sum Dispute Resolution Procedure ("Procedure"), attached hereto as Exhibit 6. Pursuant to the Procedure, once the APA's Board of Directors had devised an allocation formula and notified the pilots of it, individual pilots and groups of pilots would be given the opportunity to submit objections to the allocation formula to the neutral arbitrator. Cmplt. ¶ 77; *see* Procedure §§ 3-7. The arbitrator selected was required to be a member of the National Academy of Arbitrators, have no conflict of interest and be available on a timely basis. Procedure § 7(b). The question to be decided by the arbitrator "shall be whether to uphold the APA Board of Directors' allocation decisions and, if not, what specific modifications to the decisions are required." Procedure § 6. In making his/her decision, "The arbitrator shall consider but shall not be bound by the allocation decision of the Board of Directors." *Id.* § 7(e). The arbitrator was also required to issue a written decision and award "stating whether the Board of Director's allocation decision is upheld and, if not, what specific modifications are required to be included in a revised method of allocation," along with reasons for the arbitrator's decisions on these questions. *Id.* § 7(f).[4]

The standard of review of the APA Board's particular allocation decisions challenged by individual pilots or groups of pilots to be applied by the arbitrator was whether the "APA's actions or inactions are either arbitrary, discriminatory, or in bad faith." *Id.* § 6.

---

[4]     The Procedure required that pilots exhaust it before taking any legal action against the APA with respect to the allocation decision. *Id.* § 9.

4

The APA Board of Directors approved an equity distribution allocation for each pilot on April 3, 2013. Cmplt. ¶ 76. Although Emery contends that she was not "initially" notified of the arbitration over the APA Board's initial determination and the Board initially did not include her in the equity allocation, Cmplt. ¶ 79, she concedes that she challenged that exclusion in the arbitration. *Id.* ¶¶ 84, 89; *see also* APA Equity Distribution Arbitration Challenge (Kathy E. Emery) (May 19, 2013), attached hereto as Exhibit 7. And Emery admits that, as a result of the arbitration, she was awarded two (out of a possible four) "silos" used to determine the amount of equity allocated to each pilot. Cmplt. ¶ 87.

Indeed, as the Arbitrator Stephen Goldberg pointed out in his October 15, 2013, Decision and Award ("Decision & Award"), attached hereto as Exhibit 8, Ms. Emery fully participated in the arbitral proceeding, presenting "voluminous evidence." *Id.* at 61-62.[5] After evaluating the evidence, the Arbitrator found that the APA Board's exclusion of her from its initial allocation was "arbitrary" and decided that she was to be included in the allocation and awarded two "silos." *Id.* at 62-63, 68; *cf.* Cmplt. ¶¶ 87-93.

Dissatisfied with the Arbitrator's Decision, Emery filed a Request for Clarification and Modification of Decision and Award on November 15, 2013, attached hereto as Exhibit 10. The Arbitrator denied that Request on November 16, 2013, finding, *inter alia*, that Emery had not presented any grounds for the Arbitrator to reach any different conclusion with respect to her claim. Order (November 16, 2013), attached hereto as Exhibit 11.

---

[5]     Arbitrator Goldberg's credentials were made available to "All Participants in the APA Lump Sum Dispute Resolution Process." *See* March 7, 2013, Memorandum from Stephen B. Goldberg to All Participants, attached hereto as Exhibit 9.

**The Instant Complaint**

Emery filed the instant Complaint on April 15, 2014, over a year after the APA Board of Directors approved the allocation formula for the equity distribution with which she was dissatisfied and six months and one day after the Arbitrator issued the Decision and Award awarding her a share in the equity distribution. In the Complaint's single Count, Emery alleges that the APA breached the duty of fair representation to her because the APA Board of Directors did not allocate to her a "fair" portion of the equity distribution. Cmplt. ¶ 91. She also alleges that the Arbitrator's Decision and Award unfairly allocated equity distribution benefits to her. *Id.* ¶ 93. As remedy she seeks compensation in the amount of benefits she believes she was entitled to receive but did not receive. *Id.*, Prayer for Relief.[6]

## ARGUMENT

**I.    The Legal Standard for a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)**

Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint is to be dismissed if it "fail[s] to state a claim upon which relief may be granted." To withstand a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). A claim is "plausible" only when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 556). Plausibility demands more than "sheer possibility": "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

---

[6]    This suit is not the first time Emery has taken legal action with respect to her awarded share of the equity distribution. On March 20, 2014, she filed a Charge of Discrimination with the Florida Commission on Human Relations, alleging that the amount of equity awarded her in the Arbitrator's Decision and Award constituted age discrimination, gender discrimination and a violation of the American with Disabilities Amendments Act of 2008. A copy of the Charge is attached hereto as Exhibit 12.

'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). *See also Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014). Importantly, the court is not required to accept legal conclusions or mere recitations of the elements of a cause of action without supporting factual elements. *Iqbal*, 556 U.S. at 678; *Simpson*, 744 F.3d at 708. Indeed, a complaint "requires more than labels and conclusions," and it will fail if it "tenders 'naked assertion[s]' devoid of 'further factual development.'" *Twombly*, 550 U.S. at 556. *See also Iqbal*, 556 U.S. at 678; *Simpson*, 744 F.3d at 708.

In ruling on a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court may consider materials outside of the complaint if they are referenced in it or central to it; such consideration does not require a conversion of the motion to a motion for summary judgment. *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).

In her Complaint, Emery expressly references, and her allegations largely turn on, the following documents:

1. LOA 12-01, Exh. 2, the agreement between APA and American providing the pilots with a 13.5% equity stake in the reorganized airline, Cmplt. ¶¶ 71, 74;

2. The bankruptcy court's approval of the agreement and the New CBA of which it was a part (Exh. 3), Cmplt. ¶ 74;

3. The agreement between APA and American, LOA 13-07, to establish an arbitration proceeding to determine the allocation of equity shares among and between the pilots (Exh. 4), Cmplt. ¶ 77;

4. The Lump Sum Dispute Resolution Procedure (Exh. 6) adopted by the APA to govern the arbitration process, Cmplt. ¶ 77;

5. Emery's challenge to the APA Board's initial equity allocation decision (Exh. 7), Cmplt. ¶ 84;

6. The Arbitrator's October 15, 2013, decision at the conclusion of the arbitration that, inter alia, considered Emery's claims and awarded her two "silos" (Exh. 8), Cmplt. ¶¶ 87-93.

Accordingly, this Court may consider these documents on this motion to dismiss without converting the instant motion into a motion for summary judgment.

## II. Emery's Complaint is Time Barred

The sole claim Emery alleges in her Complaint is a claim that the APA breached its duty of fair representation to her. *See* Cmplt. Count I, ¶¶ 90-94. The statute of limitations for such a claim is six months. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151 (1983). The limitations period is the same when brought in the context of the Railway Labor Act. *Smallakoff v. Air Line Pilots Ass'n, Int'l*, 825 F.2d 1544, 1545–46 (11th Cir. 1987). A breach of duty claim accrues when the plaintiff knew or reasonably should have known that a breach had occurred. *Ry. Labor Execs.' Ass'n v. S. Ry. Co.*, 860 F.2d 1038, 1044 n.9 (11th Cir. 1988) (citing *Howard v. Lockheed-Georgia Co.*, 742 F.2d 612, 614 (11th Cir. 1984); *Benson v. Gen. Motors Corp.*, 716 F.2d 862, 864 (11th Cir. 1983)). *See also Coppage v. U.S. Postal Serv.*, 281 F.3d 1200, 1204–05 (11th Cir. 2002). When, as is the case here, the claim of breach is that the union has refused to assist the plaintiff or decides to stop assisting the plaintiff, the breach accrues when the plaintiff learns of the action or lack of action complained of. *Bartholomew v. AGL Res., Inc.*, 361 F.3d 1333, 1342 (11th Cir. 2004) ("the statute of limitations began to run when the plaintiffs were informed that the union would not submit their grievances to arbitration"); *Coppage*, 281 F.3d at 1205 (claim accrued when employee first learned of unfavorable settlement reached by union);

*Adams v. United Paperworkers Int'l Union*, 189 F.3d 1321, 1323 (11th Cir. 1999) (claim accrued when employee should have known that "union had failed to properly pursue her grievance causing her to forfeit her claim against her employer … .").

In her Complaint, Emery alleges that "[t]he failure of the Defendants [sic] to allocate fairly the proceeds of the APA Board of Directors approved Equity Distribution to Plaintiff is a breach of the APA's duty to fairly represent Kathy Emery." Cmplt. ¶ 91. According to her own allegations, Emery first learned of her allegedly unfair treatment when she learned of the "final Equity Distribution-APA Board of Directors-Approved Eligibility and Allocation dated April 3, 2013" and specifically that "the APA did not include her in the Equity Distribution, even though she clearly and unambiguously met the Special Status Eligibility Criteria" memorialized in that document. Cmplt. ¶ 79. Although the Complaint does not make clear precisely when Emery learned of her exclusion, it was clearly before her May 19, 2013, submission of a challenge to the decision during the arbitration proceeding to entertain challenges. *Id.* ¶ 84; Exh. 7.

Emery also alleges that after the arbitration proceedings began, but before they concluded, APA allegedly narrowed eligibility criteria to her detriment, *id.* ¶ 84, and argued against her position during the arbitration. *Id.* ¶ 89. As the Arbitrator's Decision and Award indicates, the Arbitrator conducted procedural hearings on June 13-14, 2013; merits hearings on July 16-20, 2013; and supplemental hearings on August 14, 2013, and September 11, 2013. Exh. 8 at 7.

For purposes of limitations analysis, Emery either was or should reasonably have been aware of her allegedly unfair treatment by the APA as early as April 3, 2013, when the APA Board issued its allocation decision leaving her out of any share of the distribution, and certainly by May 19, 2013, when she filed her challenge to that decision. To the extent that she learned of

additional allegedly bad treatment by the APA during the arbitration proceeding, she certainly knew of that treatment at some point prior to or by the conclusion of the proceeding on September 11, 2013.

In view of these facts, in order to submit a timely duty of fair representation claim against the APA, Emery would have had to file that claim within 6 months of September 11, 2013, at the latest, or March 10, 2014. Her actual Complaint, however, was not filed until April 15, 2014, and is therefore untimely.

Her suit would be untimely even if the limitations period were to be deemed triggered by the issuance of the arbitrator's decision, awarding her two silos, on October 15, 2013.[7] Indeed, the six month limitations period for a duty of fair representation suit based on that decision ran on April 14, 2014.

## III.   Emery Has Not Alleged and Cannot Establish a Plausible Breach of Duty of Fair Representation Claim Against the APA

Courts tasked with the job of reviewing claims against labor unions for breach of the duty of fair representation are advised to apply a highly differential standard of review that accords the union wide latitude in the performance of its duties. *Avera v. Airline Pilots Ass'n, Int'l*, 436 F. App'x 969, 979 (11th Cir. 2011) ("because a union needs wide latitude to ensure effective performance of its duties, judicial review of union action must be highly deferential") (internal quotations omitted); *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1519 (11th Cir. 1988) ("mere negligence" insufficient to impose liability on union; union's actions must instead fall outside a "'wide range of reasonableness'" to warrant liability) (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 337–38 (1953)). This is particularly the case in instances where the union is required to

---

[7]     As demonstrated below, however, as a matter of law, Emery has no colorable duty of fair representation claim against the APA based on the decision by the neutral arbitrator on her equity claim. *See infra* at 10-15.

make distinctions among the employees it represents, a situation fundamental to the operations of a labor union. *See Huffman*, 345 U.S. at 338-39 ("Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected."); *Taaffe v. Bellsouth Telecomms., Inc.*, 204 F. App'x 823, 825 (11th Cir. 2006) (same).

Thus, a union may be said to violate the duty only if its actions are "arbitrary, discriminatory or in bad faith." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991). *See also, e.g.*, *Avera*, 436 F. App'x at 979 (quoting *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)). A union's conduct may be deemed "arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *O'Neill*, 499 U.S. at 67. A union's conduct may be deemed "discriminatory" only if it is "insidious," i.e., "intentional, severe, and unrelated to legitimate union objectives." *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 301 (1971); *Taaffe*, 204 F. App'x at 825 (not discriminatory for union to settle grievance in favor of promotion for more senior employee with worse attendance record, where there was "no evidence that the union acted in reckless disregard for the employee's rights"). And in order to establish bad faith, a claimant must make a showing of fraud or deceitful or dishonest action. *Roadway Express, Inc. v. NLRB*, 427 F. App'x 838, 841 (11th Cir. 2011) (union acted in bad faith "by deliberately misleading arbitration committee about crucial matters") (internal quotations, alterations omitted).

Finally, in order to make out a colorable breach of duty claim, a claimant must also plausibly allege that the union's purportedly wrongful conduct caused her harm. *Vaughn v. Air*

*Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010). *Accord Avera*, 436 F. App'x at 978, 980 (employee failed to state claim based on alleged discriminatory effect of federal law governing pilot retirement age, because union "was not responsible for drafting, interpreting, administering, or enforcing" that law); *Steward v. Int'l Longshoreman's Ass'n, Local No. 1408*, 306 F. App'x 527, 531 (11th Cir. 2009) (affirming judgment for union on employee's claim based on allegedly unfair non-referral for positions, where union initially referred employee, who failed to comply with the employer's permissible request for medical clearance).

In this case, Emery contends that the APA breached the duty of fair representation to her by 1) initially deciding that she was not eligible for any share of the equity distribution, and 2) by thereafter arguing against her objection to that decision in the arbitration proceeding. *See supra* at 5-6, 9-10. If that was the entire universe of facts in the Complaint, there could at least be a legitimate question as to whether she had plausibly alleged arbitrary, discriminatory or bad faith conduct on the part of the APA that caused her harm (i.e., the lack of any equity distribution).

Unfortunately for Emery, however, those facts decidedly do not constitute the entire universe of pertinent facts. First, as Emery herself concedes, ultimately she did not receive *no* equity distribution; rather, she received two of four possible "silos." And she received those silos because the APA, pursuant to its collectively bargained agreement with American, LOA 13-07, Exh. 4, had established that a neutral arbitrator—not APA—would make and in fact did make the final decision as to how the equity distribution would be allocated among and between the pilots. *See supra* at 3-4.

Those critical facts entirely undermine any breach of duty of fair representation claim Emery has made or could make against the APA in connection with the equity distribution.

First, whatever position APA may have taken with respect to Emery's entitlement to a share of the equity distribution, the neutral arbitrator thought otherwise and awarded her what the arbitrator—not the APA—deemed to be fair. Because that is the case, regardless of the APA's initial position and regardless of the opposition it may have raised during the arbitral proceeding, neither held sway. Accordingly, even if Emery could establish arbitrary, discriminatory or bad faith conduct on the APA's part in devising its initial position or arguing its case against Emery during the arbitration, she has not established nor can she establish that she was harmed *because of* either. Because she cannot establish the requisite causation, her breach of duty claim against the APA must fail. *Vaughn*, 604 F.3d at 709; *Avera*, 436 F. App'x at 978, 980; *Steward*, 306 F. App'x at 531.

But in the broader sense, her breach of duty claim must fail because it was never the APA's intention that its initial decisions on the allocation of equity shares would govern. On the contrary, it was always the APA's intention that the final decision on this controversial topic would be made by a neutral arbitrator after any pilot with a complaint about the initial allocation decision had a full opportunity to challenge the decision and present evidence and argument in support of that pilot's preferred allocation methodology. And there can be no question here that Emery was not only given an opportunity to participate in the arbitration proceeding but fully participated in it. *See supra* at 5.

In a situation like the one at issue here—a question of how to distribute a finite amount of a benefit among thousands of claimants, each potentially with an individual view as to the fairest way to allocate the benefit—it is well established that a labor union acts neither arbitrarily, discriminatorily or in bad faith by having a neutral arbitrator determine the multitude of competitive interests at stake. *See, e.g., Gvozdenovic v. United Air Lines, Inc.*, 933 F.2d 1100,

1107 (2d Cir. 1991) (submission of seniority dispute between competing employee groups to neutral arbitrator was "an equitable and reasonable method of resolving" dispute and not a breach of the duty of fair representation); *Air Wisconsin Pilots Prot. Comm. v. Sanderson*, 909 F.2d 213, 216 (7th Cir. 1990) (submission of seniority dispute between pilot groups to arbitration where either pilot group could have achieved an award in its favor "is fair, and nothing more is required to comply with the duty of fair representation").

It is true, of course, that Emery is not satisfied by the Arbitrator's decision awarding her two of the four possible distribution "silos." *See supra* at 6. It is well established, however, that one aggrieved by the results of a decision issued in connection with an arbitral proceeding established, like this one, by an agreement between an air carrier and a labor union (i.e., LOA 13-07), may challenge the award in court pursuant to Section 3, First(q) of the Railway Labor Act, 45 U.S.C. § 153, First(q). *See Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 90 (1978); *Sanderson*, 909 F.2d at 216; *Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v. CSX Transp., Inc.*, 455 F.3d 1313, 1315–16 (11th Cir. 2006); *Loveless v. E. Air Lines, Inc.*, 681 F.2d 1272, 1275 (11th Cir. 1982). An aggrieved person, however, may not assert a collateral attack on an arbitral award by means of a duty of fair representation claim. *Sanderson*, 909 F.2d at 218. *Accord Smallakoff*, 825 F.2d at 1545–46 (distinguishing duty of fair representation claims from actions to review an arbitral award). *Musto v. Transp. Workers Union of Am.*, 818 F. Supp. 2d 621, 640 (E.D.N.Y. 2011) (ruling that because the plaintiffs elected not to file a petition to vacate or modify the arbitration award, they could not "now collaterally attack the … award in the context of [a] … claim for breach of the duty of fair representation"); *Held v. Am. Airlines, Inc.*, No. 06 C 4240, 2007 WL 433107, at *6 (N.D. Ill. Jan. 31, 2007) (dismissing plaintiff's breach of fair representation/breach of contract claim that challenged an

award of the System Board, because the plaintiff had not sought judicial review of the award

pursuant to the RLA's appeal procedures). For that reason, as well, Emery's Complaint against

the APA must be dismissed.

## CONCLUSION

For the reasons set forth above, the Complaint must be dismissed in its entirety and with

prejudice.

Dated: August 28, 2014                          Respectfully submitted,

                                                s/ Kathleen M. Phillips
                                                Kathleen M. Phillips
                                                Florida Bar No. 287873
                                                PHILLIPS, RICHARD & RIND, P.A.
                                                9360 SW 72 Street, Suite 283
                                                Miami, FL 33173
                                                (305) 412-8322
                                                (305) 412-8299 (fax)
                                                kphillips@phillipsrichard.com

                                                Steven K. Hoffman*
                                                D.C. Bar No. 384696
                                                Darin M. Dalmat*
                                                D.C. Bar No. 978922
                                                JAMES & HOFFMAN, P.C.
                                                1130 Connecticut Avenue, NW, Suite 950
                                                Washington, DC 20036
                                                (202) 496-0500
                                                (202) 496-0555 (fax)
                                                skhoffman@jamhoff.com
                                                dmdalmat@jamhoff.com

                                                *Admitted *Pro Hac Vice*

                                                Attorneys for Defendant Allied Pilots Association

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the

Clerk of the Court using CM/ECF this 28th day of August, 2014.  I also certify that the foregoing

document is being served this 28th day of August, 2014, on all counsel of record or pro se parties

on the attached Service List in the manner specified, either via transmission of Notices of

Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or

parties who are not authorized to receive electronically Notices of Electronic Filing.


                                          s/ Kathleen M. Phillips
                                          Kathleen M. Phillips

<u>**SERVICE LIST**</u>

**KATHY E. EMERY v. ALLIED PILOTS ASSOCIATION**
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 14-80518-CIV-DIMITROULEAS/SNOW**

*By First-Class Mail and Email*
Kathy E. Emery
1050 NE 91st Street
Miami, FL 33138
(305) 758-9650
a.l.combs@aol.com; ShorelineServ@aol.com; KathyEEmery@aol.com

Pro Se Plaintiff

*By CM/ECF*
Kathleen M. Phillips
Florida Bar No. 287873
PHILLIPS, RICHARD & RIND, P.A.
9360 SW 72 Street, Suite 283
Miami, FL 33173
(305) 412-8322
(305) 412-8299 (fax)
kphillips@phillipsrichard.com

Steven K. Hoffman*
D.C. Bar No. 384696
Darin M. Dalmat*
D.C. Bar No. 978922
JAMES & HOFFMAN, P.C.
1130 Connecticut Avenue, NW, Suite 950
Washington, DC 20036
(202) 496-0500
(202) 496-0555 (fax)
skhoffman@jamhoff.com
dmdalmat@jamhoff.com
*Admitted *Pro Hac Vice*

Attorneys for Defendant Allied Pilots Association

17