UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:14-80518-CIV-RYSKAMP/HOPKINS

KATHY E. EMERY,

    Plaintiff,

v.

ALLIED PILOTS ASSOCIATION,

    Defendant.
_____/

## REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO DISMISS (DE 23)

**THIS MATTER** has come before this Court upon an Order referring all pretrial motions to the undersigned for appropriate disposition. (DE 25). Presently before the Court is Defendant's Motion to Dismiss the *pro se* Plaintiff's Complaint (DE 23), Plaintiff's response papers (DE 26), and Defendant's reply (DE 27, 28). This matter is now ripe for this Court's review.

## BACKGROUND

According to the Amended Complaint (DE 16), Plaintiff was employed as a pilot for American Airlines (American) from 1992 until 2007. She brings this lawsuit against Defendant Allied Pilots Association (APA), the union that exclusively represents American pilots under their Collective Bargaining Agreement with the airline.

Plaintiff claims that she was wrongfully terminated by American in October 2007.[1] The APA filed a grievance on Plaintiff's behalf, but before an arbitration hearing was scheduled, American filed for bankruptcy. Plaintiff's pending grievance was one of the few incorporated into the new Collective Bargaining Agreement the APA entered into with the newly re-organized American Airlines.

Plaintiff states that when American emerged from bankruptcy at the end of 2012, its re-organization plan gave pilots a 13.5% equity stake in the airline. American delegated the allocation of these equity shares to APA, which tasked its Board of Directors with "devis[ing] a methodology for distributing the equity among and between the pilots." (DE 23 at p. 9). Once the distribution plan was in place, "APA would convene a proceeding 'open to all pilots . . . whereby an[y] individual pilot or group of pilots' dissatisfied with the allocation 'may invoke and obtain a final and binding resolution by a qualified neutral Arbitrator.'" *Id.* (citing Letter of Agreement 13-07).

Plaintiff was initially excluded from the equity allocation in April 2013 because APA's Board of Directors concluded that she did not qualify to participate in it. Plaintiff filed a written challenge to the arbitrator on May 19, 2013, claiming that "APA acted in bad faith when they excluded me from the equity distribution" and that APA's actions were "arbitrary and discriminatory." (DE 23, Ex. 8). Plaintiff prevailed on her challenge. (DE 23, Ex. 9). Indeed, in a decision dated October 15, 2013, the arbitrator held that "[t]he challenge of FO Kathy Emery is SUSTAINED. APA is hereby directed to treat FO Emery as an LTD Category 3 pilot, eligible for distributions from the Pension Silo and the Years of Service Silo." (DE 23, Ex. 9 at p. 68). The arbitrator reversed the APA's decision, finding that its disperate treatment of Plaintiff as

---

[1] According to Plaintiff, she was on long-term disability from March 2003 until January 2007, when her disability benefits were suddenly terminated without notice. (Defendant contends that Plaintiff's disability benefits were terminated because she failed to supply information regarding the continuation of her disability.)(DE 23 at p. 7).

compared to the other TAG ("terminated awaiting grievance") pilots was "arbitrary." *Id*. at p. 63. The arbitrator determined that Plaintiff should be included in the allocation and, thus, "she was awarded two (out of a possible four) 'silos' used to determine the amount of equity allocated to each pilot."  (DE 23 at p. 10).

Nevertheless, Plaintiff contends that the amount she was awarded was significantly less than that awarded to other similarly situated pilots.  Specifically, Plaintiff contends that other pilots were awarded equity shares worth an estimated $125,000.00 to $150.000.00, whereas she was only awarded shares worth approximately $20,000.00.  On November 15, 2013, Plaintiff requested a modification of the arbitrator's award (DE 23, Ex. 11), but that request was denied the following day.  (DE 23, Ex. 12).

In Count I of the Amended Complaint, Plaintiff claims that she was treated less favorably than other terminated pilots whose grievances were still pending and that the vastly inequitable awards demonstrate APA's arbitrary, discriminatory and bad faith treatment of her, amounting to a breach of APA's duty of fair representation.  Plaintiff contends that because of her pending grievance over her purported wrongful termination, she should have been treated as an "active pilot" for purposes of the equity distribution. (DE 16 at ¶83).  According to Plaintiff, her reduced equity share is directly attributable to the "deliberate misstatements" of APA representatives, who improperly characterized her as a pilot who "only sought to be placed back on disability." *Id.* at ¶ 87.  Plaintiff argues that the APA knew her grievance actually sought to have her return "in an active employee status," but it "knowingly took a position inconsistent" with her pending grievance when it operated under the "presumption that Plaintiff would not return to work." *Id.* at ¶ 89, 92.

Count II of the Amended Complaint alleges that APA unlawfully denied Plaintiff access to its website, including the pilot discussion forums and the virtual union hall meetings conducted there. Plaintiff contends that such is a violation of the Union Member's Bill of Rights under the Labor Management Reporting and Disclosure Act (LMRDA).[2]

With the instant motion to dismiss (DE 23), APA contends that Plaintiff has failed to allege facts sufficient to show that that the union breached its duty of fair representation because her claims are time-barred and the injury alleged was caused by the decision of a neutral arbitrator. As for Count II, APA asserts that Plaintiff has not exhausted her administrative remedies regarding her claim that she was wrongfully excluded from the union's electronic forum. For these reasons, APA argues that the Amended Complaint must be dismissed for Plaintiff's failure to state a claim under Rule 12(b)(6).

## DISCUSSION

**1. Motion to Dismiss Standard**

When considering a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must determine whether a complaint contains enough "[f]actual allegations to raise the right to relief above the speculative level, on the assumption that the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Additionally, a court must "[o]nly consider the allegations within the four corners of the complaint," and must take all factual allegations as true. *Brown v. S. Florida Fishing Extreme, Inc.,* 2008 WL 2597938, *1 (S.D. Fla. 2008) (citing *Bickley v. Caremark Rx, Inc.,* 461 F.3d 1325, 1329 (11th Cir. 2006)). Although a court will consider the motion in the light most favorable to the non-moving party, a plaintiff must allege more than mere labels and conclusions to survive a

---

[2] APA acknowledges that Plaintiff's access to its electronic forum for pilots was blocked in April 2014, but contends that as a person unqualified to fly planes for American, Plaintiff did not meet the criteria for continued access to the site. (DE 23 at p. 11).

motion to dismiss. *Twombly*, 550 U.S. at 555. While a complaint prepared by a *pro se* plaintiff is held to a less rigorous standard than a complaint prepared by an attorney, *Trawinski v. United Technologies,* 313 F.3d 1295, 1297 (11th Cir. 2002), "even a *pro se* litigant must allege the essential elements of his claims for relief." *Postell v. Fifth Third Bank,* 2013 WL 2043420, *1 (M.D. Fla. Apr. 26, 2013).

### 2. Timeliness

APA contends that Count I of Plaintiff's Amended Complaint is time-barred because Plaintiff only had six months to bring a claim for an alleged breach of the APA's duty of fair representation ("DFR") and that any such claim would have accrued more than six months before the filing of this lawsuit on April 15, 2014.

The Eleventh Circuit has "adopted a short, six-month statute of limitation for the filing of DFR claims" in the "interest of labor relations stability." *Avera v. Airline Pilots Ass'n Int'l*, 436 F. App'x 969, 979 (11th Cir. 2011)(citing *Coppage v. U.S. Postal Serv.*, 281 F.3d 1200, 1204 (11th Cir. 2002). It is well settled that the "limitations period begins to run once the plaintiff discovers or should have discovered the acts that form the basis of the DFR claim." *Id.*

According to APA, Plaintiff knew or should have known about its alleged breach when it first took positions opposed to her interests; in other words, when she learned that APA had excluded her from the allocation. (DE 23 at p. 16). APA claims that Plaintiff knew of the exclusion on May 19, 2013, at the latest, because that is when she filed her written challenge, accusing APA of breaching its duty of fair representation and acting arbitrarily and in bad faith. As for Plaintiff's claims that APA "knowingly took a position inconsistent with and in contradiction to" her pending grievance, and that APA "misled the arbitrator" during the arbitration proceedings, APA points out that the arbitration hearing was concluded on September

11, 2013.  (DE 23 at p. 16).  Thus, APA argues that to be timely, Plaintiff's lawsuit must have been filed by March 10, 2014 (six months after September 11, 2013), and that her lawsuit filed on April 15, 2014 is untimely.

However, it is well settled that where a plaintiff seeks to challenge the adequacy of union representation at an arbitration hearing, the claim accrues when the arbitrator has issued an award.  *See Summers v. Local 779 United Rubber,* 41 F.3d 1508 (6th Cir. 1994); *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 163 (2d Cir. 1989)(filing such a suit before issuance of the arbitrator's award would be "inefficient and premature"); *Freeman v. Local Union No. 135 Chauffeurs,* 746 F.2d 1316, 1319 (7th Cir. 1984).

Since Plaintiff's lawsuit was filed exactly six months following issuance of the arbitrator's award on October 15, 2013, this Court finds that it is not time-barred.[3]

### 3. Union's Duty of Fair Representation

"The standard for stating a claim for breach of a union's duty of fair representation is high." *Bynog v. SL Green Realty Corp.*, 2007 WL 831740, *10 (S.D.N.Y. Mar. 20, 2007).  It requires proof that the union's conduct toward the plaintiff is "arbitrary, discriminatory, or in bad faith." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998).  "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Airline Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67 (1991).  A Plaintiff must also establish that any damages suffered were caused by the union's breach.  *Spellacy v. Airline Pilots Ass'n Int'l*, 156 F.3d 120, 126 (2d Cir. 1998).  Courts afford "unions a considerable amount of discretion in grievance matters." *Bynog*, 2007 WL 831740 at *10.

---

[3]  The Court is not persuaded by APA's attempt to use a 180-day period to claim that, if calculated from the date of the arbitrator's decision, the lawsuit was filed one day late.  The Eleventh Circuit repeatedly uses a six month statute of limitations, rather than 180 days.  *See Smallakoff v. Air Line Pilots Assoc.*, 825 F.2d 1544, 1546 (11th Cir. 1987).

When claiming that a union violated its duty of fair representation during an arbitration proceeding, the plaintiff must demonstrate that the impact of the union's breach on the outcome of the grievance process was "substantial" or "seriously flawed" enough to taint the arbitrator's decision. *Pardon v. Goodrich Corp.*, 2006 WL 2727650, *4 (N.D. Ohio Sept. 13, 2006); *see also Black v. Ryder/P.I.E. Nationwide, Inc.,* 15 F.3d 573, 585 (6th Cir. 1994).

Here, the arbitrator's decision begins as follows:

> The question before the Arbitrator, in reviewing the methodology and allocation decisions . . . adopted by the APA Board of Directors is . . . whether those decisions were arbitrary, discriminatory, or in bad faith. Inasmuch as these standards of review are identical to those that have been developed by the courts in determining whether a union has violated its duty of fair representation, I shall be substantially guided by court decisions and doctrine interpreting and applying the duty of fair representation.

*See* Arbitrator's Decision (DE 23, Ex. 9 at p. 7).

Thereafter, the arbitrator concluded that APA's decision to treat Plaintiff differently from the other TAG pilots and exclude her from the equity allocation was "arbitrary" and he sustained Plaintiff's challenge. (DE 23, Ex. 9 at p. 63). This Court finds this to be persuasive evidence that at least at this early stage, Plaintiff has alleged sufficient facts that if true would establish that APA acted arbitrarily in excluding her from the equity allocation.

Similarly, this Court finds that Plaintiff has alleged sufficient facts to support her claim that APA did not abide by its duty of fair representation during the arbitration proceeding and that its purported breach of this duty was substantial enough to taint the arbitrator's decision. Notably, APA does not dispute that it owes a duty of fair representation to Plaintiff, yet the Amended Complaint alleges a significant conflict of interest with regard to APA adopting an adverse position to Plaintiff during the arbitration proceedings, and supporting its position with falsities and misrepresentations. Thus, to the extent that Plaintiff alleges that APA violated its

duty of fair representation, it seems clear that Plaintiff has met the minimal threshold necessary to survive a motion to dismiss. *See Mann v. Airline Pilots Ass'n, Int'l*, 2012 WL 1447891, *4 (M.D. Fla. Apr. 26, 2012)(whether airline union breached its duty of fair representation to plaintiff "remains for a later stage of the case, [since] the Complaint contains sufficient allegations to survive [defendant's] motion to dismiss"). *See also Martin v. Youngstown Sheet & Tube Co.*, 911 F.2d 1239 (7th Cir. 1990)(to state a legally sufficient claim that a union breached its duty of fair representation, an employee "must allege facts from which the Court can deduce that the union, in taking some action adverse to the employee, engaged in wrongful behavior.").

APA relies heavily on the fact that its initial determination to exclude Plaintiff from the distribution was subsequently reversed by the arbitrator. According to APA, such is proof that Plaintiff was not damaged by its adverse decision. However, this argument ignores the fact that Plaintiff was only partially successful in challenging APA's decision to exclude her from the allocation. Although Plaintiff succeeded in being included in the allocation and receiving two of the four silos available, according to Plaintiff, other similarly situated pilots recovered significantly more shares than she did. Indeed, Plaintiff contends that APA intentionally and knowingly misled the arbitrator to achieve this result. Such facts, if true, would constitute a violation of APA's fiduciary responsibility to Plaintiff who it continues to represent in prosecuting her grievance. Thus, at this preliminary stage of the proceedings, Plaintiff's claims are sufficiently detailed to support the possibility that APA's conduct was "seriously flawed" enough to taint the arbitrator's decision, thereby precluding Plaintiff from obtaining her full equity share. *See Barrington v. Lockheed Martin*, 2006 WL 66720, *9 (M.D. Fla. Jan. 11, 2006)(if true, plaintiff's claims are sufficient to demonstrate that the union breached its duty of fair representation, because if union rep did contact the arbitrator and cause him to form

preconceived opinions about plaintiff and her case, a strong inference that his actions "seriously undermine[d] the integrity of the arbital process" is created).  Thus, the allegations in Count I should proceed to the discovery phase.  *See Barnes v. Air Line Pilots Assoc.*, 2014 WL 4057419, *5 (N.D. Ill. Aug. 14, 2014)(where sub-classes of pilots made specific claims that union breached its duty of fair representation by engaging in bad faith and discrimination, court denied motion to dismiss and ruled that plaintiffs were "entitled to discovery on the integrity of the arbitration – that is, on whether the arbitration was tainted by fraud or corruption").

### 4. Labor Management Reporting and Disclosure Act

In its motion to dismiss, APA contends that Count II of the Amended Complaint must fail because Plaintiff did not exhaust her remedies by filing a grievance.  However, in her response to the motion, Plaintiff states that she "made repeated attempts to contact APA representatives to ascertain the reason why she . . . [was] no longer permitted access to the Challenge and Response forum, and what, if any internal remedies were available.  However, the APA did not respond to [Plaintiff's] repeated inquiries."  (DE 26 at p. 20).

> Ordinarily, employees are required to exhaust remedies provided in a collective bargaining agreement before suing their employer under section 301 of the LMRA.  The exhaustion requirement, however, is subject to exceptions, chief among which is that for the breach of a union's duty of fair representation to the employee . . . In such cases the ordinary exhaustion rule would work an "unacceptable injustice" because a union's discriminatory or arbitrary conduct toward an employee it represents effectively deprives the employee of non-litigative means of protecting his interests under the collective bargaining agreement.

*Zakulski v. Bethlehem Steel Corp.*, 1989 WL 118743, at *3 (W.D.N.Y. Oct. 4, 1989)(citing *Republic Steel v. Maddox*, 379 U.S. 650 (1965); *DelCostello v. Teamsters*, 462 U.S. 151, 164, n.14 (1983)).

Based on the foregoing, the Court finds that Plaintiff has sufficiently alleged her futile efforts to exhaust her administrative remedies. In any event, given this Court's finding that Plaintiff's DFR claim should not be dismissed, APA's failure to exhaust defense would not suffice to bar Plaintiff's claims that she was unlawfully barred from certain pilot websites and virtual union meetings. *See Mann*, 2012 WL 1447891 at *4 (court denied motion to dismiss finding plaintiff "adequately alleged his pursuit of administrative remedies" by asserting that he attempted to use the internal union procedures but was rebuffed). As for whether Plaintiff's ouster from the website was proper, such cannot be decided based on the scant evidence present on a motion to dismiss.

## RECOMMENDATION

Thus, it is hereby **RECOMMENDED** that the District Court **DENY** Defendant APA's Motion to Dismiss Plaintiff's Amended Complaint. (DE 23).

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Kenneth L. Ryskamp, Senior United States District Court Judge for the Southern District of Florida, within fourteen (14) days of being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1) (providing that "within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court."); *see also* Fed. R. Civ. P. 72(b) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy.") Failure to timely file objections shall bar the parties from attacking on appeal the factual findings

contained herein. *See LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988); *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE and SUBMITTED** this 23 day of January, 2015, at West Palm Beach in the Southern District of Florida.

_____
JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

Kathy E. Emery, Pro Se Plaintiff
1050 N.E. 91st Street
Miami, FL 33138