```
1              IN THE UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF FLORIDA
2
                    WEST PALM BEACH DIVISION
3
                   CASE NO.:  14-cv-80518-KLR
4

5

6

7
     KATHY E. EMERY,            )
8                               )
                  Plaintiff,    )
9    v.                         )
                                )            December 1, 2015
10   ALLIED PILOTS ASSOCIATION, )
                                )
11                              )
                  Defendant.    )            Pages 1 - 27
12   _____/

13

14

15
                      TELEPHONIC HEARING
16
            BEFORE THE HONORABLE JAMES M. HOPKINS
17              UNITED STATES, MAGISTRATE JUDGE

18

19

20   APPEARANCES:

21
     On behalf of the Plaintiff:
22

23                          KATHY E. EMERY
                            1050 N.E. 91st Street,
24                          Miami, FL 33138
                            BY:  KATHY E. EMERY, PRO SE
25
```

```
 1    APPEARANCES CONTINUED:

 2

 3    On behalf of the Defendant:

 4
                         JAMES & HOFFMAN PC
 5                       1130 Connecticut Avenue NW
                         Suite 950,
 6                       Washington, DC 20036
                         BY:  DARIN M. DALMAT, ESQ.
 7

 8

 9    Transcribed By:

10
                         BONNIE JOY LEWIS, R.P.R.
11                       7001 SW 13 Street
                         Pembroke Pines, FL  33023
12                       954-985-8875
                         caselawrptg@gmail.com
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    (Thereupon, the following proceeding was held:)

 2                    THE COURT:  Good afternoon all.

 3                    This is Judge Hopkins calling Kathy Emery versus

 4       Allied Pilots Association.

 5                    Well, first, Plaintiff, please announce your

 6       appearance.

 7                    MS. EMERY:  Kathy Emery.

 8                    THE COURT:  And Defense.

 9                    MR. DALMAT:  This is Darin Dalmat.

10                    THE COURT:  Good afternoon.

11                    We are here on the Plaintiff's Motion to Compel,

12       Docket Entry 44.  I have taken a look at the response and the

13       reply.

14                    And let me just ask, initially, of the Defense.

15       In the reply, the Plaintiff refers to a spreadsheet that

16       allegedly was prepared and she wants -- that's it, Page 3 of

17       her reply, Pages 2 and 3.

18                    What is the story with the spreadsheet and the

19       underlying documents?

20                    MR. DALMAT:  There was a master spreadsheet that

21       was prepared in the course of the equity proceeding.

22                    THE COURT:  Oh, okay.  So it is an underlying

23       document, then.  It was not prepared in response to this motion

24       to compel?

25                    MR. DALMAT:  Correct.
```

```
 1              Well, the master spreadsheet was an underlying
 2    document because she only asked for information about five
 3    individuals.  We redacted --
 4              THE COURT:  Right.
 5              MR. DALMAT: -- all the others and produced the
 6    spreadsheet containing the information for the five individuals
 7    that she requested, but we did not create for the purpose of
 8    this litigation a new spreadsheet.  We just took the
 9    information from the old one and produced it based on
10    further --
11              THE COURT:  Okay.  Fine.
12              Plaintiff, why won't you sign the confidentiality
13    agreement?
14              MS. EMERY:  I can't hear you.  What did you say?
15              THE COURT:  Why won't you sign the confidentiality
16    agreement?
17              MS. EMERY:  I don't object to signing the
18    confidentiality agreement.  It is --
19              THE COURT:  Okay.  That's enough.
20              You don't object to it.  Sign the confidentiality
21    agreement and you will get the documents.
22              MS. EMERY:  Judge, I have something to say about
23    this, though.
24              THE COURT:  I have read your pleadings and your
25    arguments about it are not relevant.
```

```
 1              I mean, your argument that it is supposed to be a

 2   transparent process has nothing to do with this lawsuit.

 3              MS. EMERY:  So I need to understand -- before I

 4   sign the confidentiality agreement, I need to understand what

 5   my obligations are because I can see that usually

 6   confidentiality agreements are based on -- let me see what --

 7              THE COURT:  Have you reviewed the proposed

 8   confidentiality agreement?

 9              MS. EMERY:  Yes.  It is very detailed.  It is

10   eleven pages.  It is very complicated and I don't want to run

11   afoul of the confidentiality agreement because the documents

12   that I am seeking are not confidential documents because

13   they --

14              THE COURT:  I have already ruled on that.

15              You are going to have to sign a confidentiality

16   agreement in order to receive the documents.  They contain

17   personal financial information.

18              MS. EMERY:  Can I clarify what information I am

19   not permitted to release because I have already talked to many

20   individuals --

21              THE COURT:  You can discuss with the other side

22   and I would encourage you to discuss with the other side.  And

23   if you cannot reach an agreement about the terms of the

24   confidentiality agreement, then, you can file an appropriate

25   motion, but I am ordering you now to treat the documents as
```

1   confidential in accordance with a proper confidentiality

2   agreement.

3           I do not give you have advice as to at what a

4   proper confidentiality agreement is.  That is your

5   responsibility.  You can certainly discuss that with the other

6   side.

7           MS. EMERY:  And I have discussed that.

8           They had a confidentiality agreement which is one

9   paragraph long during the equity proceedings.  And it related

10  to information that was of a sensitive confidential information

11  and it was only one paragraph long.  This is -- I am in

12  constant contact with --

13          THE COURT:  I do not want to hear about other

14  situations.  I only deal with the situation in front of me.

15          I do not have a motion in front of me where you

16  are objecting to the terms of the confidentiality agreement.

17  You only were objecting to signing any confidentiality

18  agreement.

19          I have ruled on that.  Move on.  Deal with it and

20  deal with the other side.  If you have objections to the

21  proposed confidentiality agreement, put them in writing.

22          MS. EMERY:  Okay.

23          THE COURT:  Now, the rest of the documents, it

24  appears to me the Defense has said that they have already

25  turned them over.

```
 1                    MS. EMERY:  That is incorrect.  That is not --
 2                    THE COURT:  Well, you have their representation in
 3       writing.  If that turns out to be incorrect, you can apply for
 4       sanctions against them.
 5                    MS. EMERY:  Can I explain to you now why it is
 6       incorrect?
 7                    THE COURT:  Go ahead.
 8                    MS. EMERY:  Okay.  In the argument -- we will skip
 9       the confidentiality agreement because you have already ruled on
10       that, but on Page 6 of their response or objection document 46
11       of Request 6 and 7 they say because Rodney --
12                    THE COURT:  Where on Page 6?
13                    MS. EMERY:  Page 6.
14                    THE COURT:  Where on Page 6?
15                    MS. EMERY:  At the very top.  Number 2, Paragraph
16       number 2.
17                    THE COURT:  And are you quoting from them?
18                    MS. EMERY:  Yes.
19                    THE COURT:  Where are you quoting from?
20                    You started off your sentence with because and I
21       don't see a sentence there that starts off because.
22                    MS. EMERY:  Okay.  I am sorry.
23                    It says Request 6 through 7 because -- see the
24       numerical 2 at the very top of the page?
25                    THE COURT:  I see it now.
```

1          MS. EMERY:   Request 6 through 7.

2          Because Rodney Charlson submitted no challenge or

3    complaint in the equity distribution arbitration no documents

4    exist that relate to any such challenge or claim.

5          Then, he goes on to say that I am requesting

6    Request 6 and 7, see documents evidencing any challenge or

7    claim made by Rodney Charlson as it relates to the APA equity

8    distribution.

9          Relates is a pretty broad word, but it is also

10   specific.

11         And those evidencing any decision relating to any

12   challenge or claim made by Rodney Charlson as it relates to the

13   APA equity distribution.

14         Then, they go on to say in a stipulation at

15   Exhibit 6 --

16         THE COURT:   Where are you talking about now?

17         MS. EMERY:   Exhibit 6.

18         THE COURT:   Where are you talking about?

19         MS. EMERY:   APA's Exhibit 6, a stipulation to

20   their response and it is difficult to find.  Maybe you don't

21   have the exhibits in front of you.

22         THE COURT:   Okay.  Go ahead.

23         MS. EMERY:   These stipulate that Rodney Charlson

24   received an equity distribution in accordance with the terms --

25   I don't even have it in front of me right now.  Let me find it.

```
 1                    MR. DALMAT:  In accordance with the formulas.

 2                    THE COURT:  Hold on, Defense.  Hold on Defense.

 3                    MR. DALMAT:  All right.

 4                    THE COURT:  You both cannot talk at once.

 5                    MS. EMERY:  In accordance with the formula

 6    governing those silos and Arbitrator Goldberg's October 15th

 7    decision and award.

 8                    So they admit that Rodney Charlson got four silos.

 9    They admit that Rodney Charlson was not present at the

10    proceedings.  Rodney Charlson was not included in the equity

11    distribution and he made a claim oral, written, or otherwise --

12    APA has e-mails that they have given me -- indicating that he

13    made a written claim to the equity distribution committee

14    subsequent to the decision and award, subsequent to the close

15    of the arbiter process, but during the errors and omissions

16    process.

17                    Rodney asked for a share of the equity

18    distribution and he was given, according to APA, a full award.

19    Rodney admitted to me he received nearly $160,000 in equitable

20    distribution shares of stock and there has to be documents to

21    evidence his receipt of $160,000.

22                    THE COURT:  Okay.  All right.

23                    Defense?

24                    MR. DALMAT:  Two points.

25                    First, as she wrote the request, she asked for
```

1    documents relating to any challenge or claim made by Rodney

2    Charlson.  He did not make any formal or informal challenge in

3    the equity distribution proceedings.  So the request asked for

4    nothing.  That's point one.

5          Point two, Miss Emery is correct that after the

6    equity distribution concluded in October -- I think it was 2013

7    -- Mr. Charlson made an informal request under what he believed

8    was the errors and omissions process and he thought that he

9    could get equity through that process.

10          There is an e-mail that he sent to someone at the

11   union.  We produced that e-mail on August 3rd of 2015 in

12   response to Miss Emery's first set of requests for documents.

13          And to the extent that Miss Emery does not

14   understand how the outcome, you know, how he was ultimately

15   awarded equity --

16          THE COURT:  Hold on.

17          In addition to that e-mail that you turned over,

18   are there any other documents relating to that post equity

19   distribution award?

20          MR. DALMAT:  None that I am aware of after having

21   searched for them.

22          But I will give a hint to Miss Emery which is that

23   she has asked to take the deposition of in-house counsel Mark

24   Myers who handed the equity distribution.  And here that

25   deposition is currently scheduled for next week on the 10th.

```
 1    And she may want to ask him questions about that, but there are

 2    no documents that I am aware of other than what we have already

 3    produced.

 4              THE COURT:  Well, when you say you are aware of,

 5    you only pointed to one e-mail that he sent to you, correct?

 6              MR. DALMAT:  Not to me.

 7              THE COURT:  Meaning you, the Defense, correct?

 8              MR. DALMAT:  No, Mr. Charlson sent an e-mail to

 9    the secretary treasurer of the union.

10              THE COURT:  Isn't that the Defendant?

11              MR. DALMAT:  Yes.  Not me personally.

12              THE COURT:  That's what -- you are not paying

13    attention.

14              MR. DALMAT:  I'm sorry.

15              THE COURT:  Other than that e-mail, are you

16    telling me that there are no documents about the ultimate award

17    other than that one e-mail?

18              MR. DALMAT:  Correct.  Not that I am aware of.

19              THE COURT:  So the union just decided to make an

20    award and there is no paper trail about that award?

21              MR. DALMAT:  What the union did, with respect to

22    Mr. Charlson and I believe one other person, was they read

23    Goldberg's decision.

24              The decision made a certain determination that the

25    people who are similarly situated -- or as to Emery, as to a
```

1    few other people and they made a determination of whether there

2    was anyone else in a similar position to those people and they

3    updated the spreadsheet.

4              There's the spreadsheet, but apart from that

5    anything else that would exist would be privileged.

6              THE COURT:  Plaintiff?

7              MS. EMERY:  Judge, this is my situation.

8              Nothing, Rodney Charlson did not contact APA legal

9    -- I mean, general counsel.  I received no privilege log on any

10   distribution to Rodney Charlson.  He did not appear, which was

11   the requirement.

12             APA said that anyone who wanted to challenge the

13   award must take place in the arbitration process.  At least I

14   was told that.

15             THE COURT:  All right.  I heard enough.  I think

16   you have a good point.

17             Defense, why haven't you produced a privilege log?

18   There may be some interesting privilege issues there and it may

19   be that they are not privileged.

20             MR. DALMAT:  With respect, Your Honor, she only

21   asked for any decision relating to any challenge or claim.

22             You know, the first I heard she's interested in

23   informal decision afterwards that were unrelated to the

24   challenge or claims made by Mr. Charlson things that the union

25   decided to do --

```
 1                    THE COURT:  All right.  I got you.

 2                    MS. EMERY:  One point --

 3                    THE COURT:  When can you produce a privilege log

 4    related to the post formal process that we have been talking

 5    about just now?

 6                    MR. DALMAT:  A week.

 7                    MS. EMERY:  He has already produced a privilege

 8    log and he didn't provide any evidence of privilege.  And my

 9    request --

10                    THE COURT:  I understand, Plaintiff.  I am not

11    through talking with the Defendant.

12                    MS. EMERY:  Okay.

13                    MR. DALMAT:  December 18th, Your Honor.

14                    THE COURT:  Okay.  I will order that you produce

15    it by December 18th, a proper privilege log in relation to

16    those items.

17                    Hold on a second.

18                    Okay.  Anything else, Plaintiff?

19                    MS. EMERY:  Yes.

20                    I would like to say Request 6 and 7 says relate to

21    the APA equity distribution.  That doesn't mean the equity

22    distribution proceedings.  That's in any common sense would

23    mean in particular after the proceedings.

24                    THE COURT:  You are arguing something that I have

25    already agreed with you on, Plaintiff.
```

```
1                 MS. EMERY:  Okay.  And I would like to read one
2      more thing to you so you understand that it is not confidential
3      because I have an e-mail that says:
4                 Just a quick line to take the opportunity to thank
5      the original equity distribution fairness fighters, which I was
6      one.
7                 As you may have heard by now I was, in fact,
8      awarded full equity.  It is unlikely that that would have
9      occurred as smoothly as it did without you all contact with me
10     and previous effort last fall with the arbitration.
11                The way the timing worked as the window of
12     opportunity closed was fortunate.  The equity distribution
13     errors and omissions account personal notification came and in
14     the right direction from all of you, I contacted the EDC equity
15     distribution committee.  They decided I was the recipient
16     candidate and it worked in my favor.
17                The committee had to have made a decision or it
18     had to have gone back to the arbiter.  It isn't done in a
19     vacuum.  They don't give $160,000 in a vacuum.
20                And Rodney Charlson is a perfect example of why I
21     brought this suit.
22                THE COURT:  I am not changing my order.
23                MS. EMERY:  Okay.
24                THE COURT:  I order that you sign a proper
25     confidentiality agreement.
```

1           Anything else, Plaintiff?

2           MS. EMERY:  Request number 8.

3           APA has produced all non privileged documents as

4    it located relate to Emery status in 2007.  This is on Page

5    6 --

6           THE COURT:  I got it.

7           MS. EMERY:  -- Paragraph 3.

8           THE COURT:  Right.

9           MS. EMERY:  Request 8 seeks documents relating to

10   Emery status in 2007 and/or any contention by Kathy Emery or

11   the APA that she was terminated and the effective date of the

12   termination.

13          APA produced all documents it located responsive

14   to this request.  In particular, it produced a summary of

15   status one reports generated by American Airlines with respect

16   to her from January 2000.

17          THE COURT:  What is your objection?

18          MS. EMERY:  My objection, number one, I object to

19   the summary of the status report because it is incomplete.

20   There are huge gaps in it.  In a sworn statement during the

21   equity proceedings, APA admitted that they received monthly

22   status reports from the company.

23          I don't receive those reports.  The APA receives

24   those reports.  The APA is my union representative and since I

25   had a pending arbitration, I cannot direct deal with the

1    company.

2         So any information I get from the company comes

3    from the APA.  And the APA has, based on this document

4    declaration of David Quinlin, there are a number of documents

5    here that APA didn't provide me.

6         They didn't provide the status one report.  There

7    is something called a Missing Person Report when somebody is

8    terminated or loses their seniority, the company or the APA

9    generates something called a Missing Person Report.  There's a

10   seniority list that periodically comes out.

11        THE COURT:  Okay.  Defense, why haven't you turned

12   those over?

13        MR. DALMAT:  First of all, to understand what the

14   documents are that we are talking about, I need to explain how

15   they are created.

16        This is all data that lives in a database called

17   Sabre or the flight operating system, which is a database

18   created by American Airlines that tracks various activities of

19   employees.  That database can generate various reports.

20        What we have produced to Miss Emery was her -- the

21   monthly activity reports for her, specifically, going from 2007

22   through 2010.  So those are data from the Sabre database

23   showing her status in each month from 2007 to 2010 .

24        And as for -- she is now asking for the status one

25   report.  That report is something that encompasses all pilots

```
 1    employed on the property of American Airlines.
 2                 THE COURT:  All right.  Let me cut to the chase
 3    here or attempt to.
 4                 Have you turned over all the data responsive to
 5    this request or not?
 6                 MR. DALMAT:  I believe we have.
 7                 I mean, it might exist in other reports that are
 8    more comprehensive and much, much more --
 9                 THE COURT:  No.  I do not care if it is
10    duplicative elsewhere.  If you have turned over all of the
11    responsive data, then, you have turned it all over.
12                 Is that what you are representing to me?
13                 MR. DALMAT:  Yes.
14                 Between the summary and the monthly reports that
15    we have produced, I believe we have produced everything that
16    would be responsive to her request.
17                 THE COURT:  Plaintiff?
18                 MS. EMERY:  May I make a comment?
19                 THE COURT:  You may.
20                 MS. EMERY:  You say that you don't care if it is
21    duplicative.  I have a declaration by Dave Quinlin.  Now, I
22    have been trying to get this even prior to this case.
23                 The primary basis for the data used on the
24    verification and payout projection website was data provided by
25    the company to APA with TW, Towers and Watson as the
```

1    intermediary.  This data included employee number A status as

2    of January 1, 2013, occupational seniority date, classification

3    date, pay, or leave, or furlough, pension credited service, and

4    a notation of LTD status.

5            January 1, 2013 is significant because it is the

6    initial equity distribution eligibility date.  APA provided me

7    information up to 2007.  The status information report they

8    provided has gaps.  It doesn't support their argument to deny

9    me an equity distribution state.

10           And then, it goes on to say the data provided by

11   the company, Towers and Watson, included data on active pilots

12   currently on his seniority list and pilots who are either

13   listed as furlough, leave of absence -- this is a whole bunch

14   of things.

15           Retired, resigned, deceased, LTD.  This group

16   includes pilots on personal leave of absence, military leave of

17   absence, paid or unpaid, long-term sick and those pilots who

18   are on or have been on long-term disability for less than five

19   years and it goes on and on.

20           And when I initially learned of the equity

21   distribution, albeit after it was well under way, I was told by

22   the APA member of the hotline that they made their decisions

23   primarily on a list provided by American Airlines that had me

24   listed as terminated the very first day I ever learned that I

25   was terminated.

```
1                    And so I have been asking for that list.  It's the

2      Towers -- obviously it appears by this declaration to be the

3      Towers and Watson report, but Mr. Quinlin lists a whole bunch

4      of other documents that they relied on.  And it's got one

5      report --

6                    THE COURT:  Okay.  Defense?

7                    MR. DALMAT:  Frankly, I don't know what she's

8      talking about.  And part of the reason I don't know what she's

9      talking about is because she didn't confer with me before

10     filing this motion.

11                   So in preparation for this hearing, I have asked

12     my client whether there are any other lists that I missed.  I

13     was informed that any list that existed she wasn't on it.  So

14     it didn't relate to her status.

15                   I mean, there might be scores of lists that she

16     doesn't appear on because she hasn't been employed by the

17     company for years, but, I mean, without more specificity, I

18     just don't know what she's talking about.

19                   THE COURT:  Hold on.

20                   Plaintiff, where is your Certificate of Conference

21     in your motion?

22                   MS. EMERY:  Did I forgot to put it -- I obviously

23     forgot to put it, but we have conferred numerous times

24     including during the deposition.

25                   THE COURT:  Okay.  You did not put your
```

1    Certificate of Conference.  Did you discuss this very issue

2    with the Defense?

3                MS. EMERY:  I discussed the issue of documents in

4    general and I have been reviewing --

5                THE COURT:  So the answer would be no?

6                MS. EMERY:  Yes -- no, it wouldn't be no.

7                Yes, I didn't know the name of the specific

8    documents until I am going through the three odd some thousand

9    documents, plus the equity distribution documents that I have

10   and --

11               THE COURT:  Okay.  Okay.  Okay.  I am ruling the

12   way I have already on the items that I have already ruled, but

13   the rest of the items, I am denying for failure to include a

14   Certificate of Conference.

15               And moreover, you need to have conversations about

16   each and every item that you are moving to compel with the

17   other side, specific conversations about specific items.

18               MS. EMERY:  So are you -- I am an pro se litigant

19   and I have done the best I could.  So are you saying that I

20   don't get any of these exhibits at all?

21               THE COURT:  If you have other -- I am going to

22   deny it without prejudice, the rest of it.

23               That means that you can confer with the other side

24   about any items that you have not discussed with them.  And at

25   the end of that process, you can bring another motion if they

1   fail to comply with your request, but you have to have specific

2   discussions with them about specific items.

3            MS. EMERY:  Well, I did have specific discussions

4   about the list that --

5            THE COURT:  Are they lying about that?

6            MS. EMERY:  I --

7            THE COURT:  Wait.  Wait.  I do not want to hear

8   about what you did have.  I am just talking about what you

9   didn't have.

10            MS. EMERY:  I did have --

11            THE COURT:  They just told me that this is the

12   first they heard about this.

13            So are they lying about that?

14            MS. EMERY:  Yes.

15            He is lying about the fact that I requested the

16   list that I was told during on the APA hotline we extensively

17   discussed the list where APA has me listed as terminated -- I

18   mean, American Airlines had me listed as terminated, to my

19   surprise.  And APA has me listed as removed, medical disability

20   removed and I --

21            THE COURT:  Did you discuss all of that?  Did you

22   discuss all of that with them?

23            MS. EMERY:  I absolutely did.

24            THE COURT:  Why didn't you put it in a Certificate

25   of Conference?

```
 1                MS. EMERY:  I -- I neglected to do a Certificate
 2    of Conference.  I usually do.
 3                THE COURT:  Okay.
 4                MS. EMERY:  This is --
 5                THE COURT:  I am going to order you to confer with
 6    the other side about any documents you believe exist and have
 7    good reason to believe exist that they are saying do not exist
 8    and give them an opportunity to track that down.
 9                If they still have not tracked down items that you
10    know exist, because you have in writing now that they have
11    produced all documents that are responsive.  And if upon
12    further conversations with them, you know that they are lying
13    about it, bring a motion.  But you have to have those
14    conversations with them and include your Certificate of
15    Conference about those conversations.
16                MS. EMERY:  That's the mistake I made.
17                It wasn't that I did not confer.  It was because I
18    didn't --
19                THE COURT:  I want you to have further
20    conversations with them.
21                Give them an opportunity to understand why you
22    think that there are documents that you are aware of that they
23    are not producing.  And if they still refuse to give you items
24    that you know have to exist, then, bring another Motion to
25    Compel.
```

1          MS. EMERY:  Okay.  Can I --

2          THE COURT:  And in the meantime, they are going to

3    have to produce that privilege log by December 18th.

4          And you are going to have to sign a proper

5    confidentiality agreement.  So you have a few things to work on

6    with them.

7          MS. EMERY:  Okay.  Can we come before you if there

8    is a dispute over a document that is confidential or not, or if

9    only a portion of the document is confidential?

10          THE COURT:  No, I have already ruled on the issue

11    of whether or not the financial documents are confidential.  I

12    have ruled that they are.

13          MS. EMERY:  Because these were published.

14          THE COURT:  These are public documents.  You have

15    already gotten them.

16          MS. EMERY:  No, they are published.

17          The results of the decisions by the arbitrator and

18    others were published on a website that APA removed those

19    websites.  So nobody now has access to them.

20          They were once common knowledge as to the amount

21    of shares people got, the number of -- the value of the shares.

22    That's all common knowledge, but it is impossible for me, as a

23    pro se litigant, to dig up that stuff that they already have

24    access to it.

25          THE COURT:  You are going to get it.  All you need

1    to do is sign the confidentiality agreement.

2              MS. EMERY:  I agree, but I am concerned that I

3    have already talked to pilots about the number of shares that

4    they have received.

5              THE COURT:  Well, you have not signed the

6    agreement yet.  So it has not been ordered yet.

7              MS. EMERY:  So could I move on to Request number

8    12 because we have discussed the last two *ad nauseam* and I

9    don't think APA will dispute that.

10             THE COURT:  What page is that?

11             MS. EMERY:  Page 8.

12             THE COURT:  On your motion?

13             MS. EMERY:  On APA's.

14             THE COURT:  Response?

15             MS. EMERY:  Response.

16             THE COURT:  What is the issue?

17             MS. EMERY:  The issue is during a July of 2014

18   union meeting -- this is now an LMRDA case also not only fair

19   representation, but the right to opinion in meetings and the

20   right of free speech in union activities.

21             I attended a July --

22             THE COURT:  Are you on number 5 or number 6?

23             MS. EMERY:  I am on number 5.

24             I attended a union meeting and there are minutes

25   regarding the meeting, which they did provide, but they have a

```
 1    sign-in sheet at each and every union meeting.  A pilot either

 2    has to sign in or sometimes, I understand now, they have a

 3    scanning process where they scan an I.D. and a pilot will --

 4                THE COURT:  They are saying they do not have it.

 5                MS. EMERY:  I signed it and it was --

 6                THE COURT:  I understand.  That they are saying

 7    they do not have it.

 8                MS. EMERY:  Okay.

 9                THE COURT:  Okay.

10                MS. EMERY:  Oh, there's one more.

11                THE COURT:  What's that?

12                MS. EMERY:  The replacement APA membership card.

13                THE COURT:  Number 6?

14                MS. EMERY:  Number 6.

15                I did not request this as a Rule 34 request.

16    However, APA is treating it as a Rule 34 request.  And under

17    the constitution and bylaws a pilot is entitled to a membership

18    card so they can, in fact, attend the --

19                THE COURT:  What did you request it pursuant to?

20                MS. EMERY:  I requested it pursuant to the APA

21    constitution and bylaws of APA.

22                THE COURT:  That is not a federal rule of a

23    Federal Civil Procedure rule.

24                MS. EMERY:  I know but --

25                THE COURT:  That is what I am asking you.  What
```

```
 1   entitles you in this lawsuit to this relief?

 2                MS. EMERY:  The membership card.  I guess that

 3   goes to the merits of the case.

 4                THE COURT:  Well, then, you can seek it at trial

 5   if that is what you are looking for as a remedy in the case.

 6                MS. EMERY:  But in the meantime, I am denied

 7   access to union meetings and I am a member.

 8                So by denying the membership card, which they say

 9   doesn't exist --

10                THE COURT:  But that is an ultimate remedy.  You

11   do not get that as part of the discovery process.

12                MS. EMERY:  But APA is treating it as a Rule 34.

13   They sent me an e-mail and ---

14                THE COURT:  No, no, no, no.

15                MS. EMERY:  -- said they are going to --

16                THE COURT:  Ma'am, I am talking.

17                MS. EMERY:  Okay.

18                THE COURT:  You have to provide a Federal Rule of

19   Civil Procedure that applies.

20                They are just speculating that the only one they

21   can think of that might apply is Rule 34 and they are saying it

22   does not apply.  They are also saying that you have not given

23   proper grounds for relief in the discovery process and that is

24   what I have said.

25                MS. EMERY:  With regard to number 6?
```

1          THE COURT:  Correct.  I am denying it.

2          MS. EMERY:  Okay.

3          THE COURT:  Have a good day.

4          MR. DALMAT:  Thank you, Your Honor.

5          THE COURT:  Thank you.

6          (Thereupon, the proceedings concluded.)

```
 1

 2                              CERTIFICATE

 3

 4             I hereby certify that the foregoing transcript is

 5    an accurate transcript of the audio recorded telephonic

 6    proceedings in the above-entitled matter.

 7

 8

 9

10
      12/02/15                          Bonnie Joy Lewis,
11                             Registered Professional Reporter
                                 CASE LAW REPORTING, INC.
12                               7001 Southwest 13 Street,
                                Pembroke Pines, Florida 33023
13                                     954-985-8875

14

15

16

17

18

19

20

21

22

23

24

25
```