```
 1              IN THE UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF FLORIDA
 2
                       WEST PALM BEACH DIVISION
 3
                    CASE NO.:  14-cv-80518-KLR
 4




 7
   KATHY E. EMERY,                 )
 8                                 )
              Plaintiff,           )
 9 v.                              )
                                   )        February 5, 2016
10 ALLIED PILOTS ASSOCIATION,      )
                                   )
11                                 )
              Defendant.           )        Pages 1 - 14
12 _____/




15
                         TELEPHONIC HEARING
16
             BEFORE THE HONORABLE JAMES M. HOPKINS
17              UNITED STATES MAGISTRATE JUDGE




20 APPEARANCES:

21
   On behalf of the Plaintiff:
22

23                       KATHY E. EMERY
                         1050 N.E. 91st Street,
24                       Miami, FL 33138
                         BY:  KATHY E. EMERY, PRO SE
25
```

```
 1  APPEARANCES CONTINUED:

 2

 3  On behalf of the Defendant:

 4
                            JAMES & HOFFMAN PC
 5                          1130 Connecticut Avenue NW
                            Suite 950,
 6                          Washington, DC 20036
                            BY:  DARIN M. DALMAT, ESQ.
 7

 8

 9  Transcribed By:

10
                            BONNIE JOY LEWIS, R.P.R.
11                          7001 SW 13 Street
                            Pembroke Pines, FL  33023
12                          954-985-8875
                            caselawrptg@gmail.com
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                (Thereupon, the following proceeding was held:)
 2           THE COURT:  Okay.  All this is Judge Hopkins calling
 3   Kathy Emery versus Allied Pilot Association.
 4           Counsel, please announce your appearances.
 5           MR. DALMAT:  This is Darin Dalmat for the Allied
 6   Pilots Association.
 7           Good afternoon, Your Honor.
 8           THE COURT:  Good afternoon.
 9           MS. EMERY:  This is Kathy Emery, Plaintiff.
10           Good afternoon, Your Honor.
11           THE COURT:  Good afternoon.
12           We are here on the Plaintiff's motion for a protective
13   order, Docket Entry 63.
14           And first off, let me say that I believe the Defendant
15   is correct that the party challenging the confidentiality
16   designation needs to bring the motion and that the challenging
17   party must make specific challenges.
18           The party challenging a confidentiality designation
19   must file the motion with the Court, according to the Eleventh
20   Circuit.  And this will allow the designating party to
21   temporarily enjoy the protections of Rule 26-C making the
22   designating party's documents presumptively confidential until
23   challenged.
24           So that's that.  It seems to me that the Defendant
25   does not -- excuse me -- it seems to me that if the information
```

1  is obtained independently, then, it is not confidential
2  information and it is not restricted, but if the information
3  was not obtained independently, then, it would enjoy
4  confidential status, or it could enjoy confidential status and
5  would be restricted to being used in connection with the
6  litigation.
7       And that's how the confidentiality order should be
8  worded.  Any objection to that, Defense?
9       MR. DALMAT:  The only distinction -- no objection to
10  the first part at all.  As to the second point, we were trying
11  to distinguish between documents and information.
12       We certainly agree that if Miss Emery has
13  independently obtained any documents, then, she is free to use
14  those as she wishes, but if there is a document that we believe
15  is confidential and she has just obtained information in non
16  documentary form from a third party, certainly she can get a
17  declaration.  And she can get some other form of information to
18  get that, but her obtaining the information, we believe, should
19  not render the confidential document nonconfidential.
20       THE COURT:  Well, I don't have any problem with you
21  designating documents as confidential.
22       And then, if she wants to assert that they're not
23  confidential, she can bring a motion to assert that they are
24  not confidential and I can decide it.  I would not want to give
25  an advance ruling on how I would rule on that.

1             I mean, there are all sorts of factors that would come
2  into play as to whether or not the document was actually
3  confidential, but I mean, it can certainly be designated as
4  confidential by you and, then, subject to the procedure in the
5  confidentiality order.
6             MR. DALMAT:  Very good, Your Honor.  Thank you.
7             MS. EMERY:  May I make a statement about that issue?
8             THE COURT:  You may.
9             MS. EMERY:  The first document that Mr. Dalmat
10 submitted and stated was confidential contains erroneous
11 information that if a person relied on it would believe it to
12 be true.
13            So I need to have the right to, for instance, he
14 listed -- I asked for information about the date that four
15 separate pilots received equity shares from the APA and the
16 number of shares and the approximate amount that they received.
17            THE COURT:  What's your point?
18            MS. EMERY:  The point is if I need to have the right
19 to go to one of those four pilots, if I believe the information
20 that APA has given me is not correct, I need to be able to go
21 to one of those pilots and say is this information --
22            THE COURT:  Hold on.  Hold on.
23            You need to go to them in connection with the
24 litigation?
25            MS. EMERY:  Yes.  One of the -- that's one of the

1 pilots on the document because that's the whole basis --
2     THE COURT: My order, as I articulated it just two
3 minutes ago, was that it would be confidential documents and
4 information would be restricted to being used in connection
5 with the litigation.
6     Do you understand?
7     MS. EMERY: Yes. So are you saying I can go to them
8 and ask if it's correct or I cannot?
9     THE COURT: I am not making specific judgments as to
10 what you are doing and whether or not it is in connection with
11 the litigation. All I am saying is that you can legitimately
12 use documents and information in connection with the
13 litigation.
14     MS. EMERY: Okay. And it is not restricted to
15 scheduled depositions if I need to do an independent inquiry?
16     THE COURT: That is correct. As long as it is in
17 connection with the litigation.
18     MS. EMERY: Okay.
19     THE COURT: And there are a couple of other minor
20 changes that I would make to the confidentiality order.
21     As to Paragraph 9, which states that confidential
22 documents shall be filed under seal, you have to file the local
23 rules and the rest of the law for filing documents under seal.
24 And ultimately, it is up to the Court to decide whether or not
25 they will remain under seal.

```
 1              And then, Paragraph 12 should be changed to reflect
 2   that any modifications of the stipulation require Court
 3   approval.
 4              I'm sorry?
 5              MS. EMERY:  Are you using my proposed order or Darin
 6   Dalmat's?
 7              THE COURT:  The order that you proposed with the
 8   handwritten corrections on it.
 9              MS. EMERY:  I don't think that's the order I proposed,
10   Your Honor.
11              Darin, can you confirm.  I just got the documents and
12   haven't had all the time to go through them, but I believe that
13   one may have been -- Darin, is that the one that I wrote to you
14   and told you that I sent you an incomplete draft?  And then, I
15   sent you another one after that which was a little more
16   detailed.
17              MR. DALMAT:  No, Kathy, it --
18              THE COURT:  Hold on.  Hold on.  I'm talking about
19   Docket Entry 66-1.
20              MS. EMERY:  I don't have access to PACER.  So I'm not
21   sure what is on 66-1.
22              Can you read the top of the document?
23              THE COURT:  It is proposed protective order.
24              MS. EMERY:  Okay.  I assume that's mine.  Okay.
25              MR. DALMAT:  Shall I address this, Your Honor?
```

```
1                THE COURT:  I don't think there is any need to.
2                MR. DALMAT:  Okay.  Very good.
3                THE COURT:  And finally, we have reviewed the
4    Defendant's privilege log.
5                And it appears that only a few e-mail changes with
6    counsel has been withheld as privileged and I think that the
7    log is sufficiently specific.
8                Anything else?
9                MS. EMERY:  Might I -- I'm sorry.
10               THE COURT:  Anything else?
11               MS. EMERY:  Might I address that issue?
12               THE COURT:  Okay.
13               MS. EMERY:  The protective log, first of all, the
14   protective log was ordered by you during the hearing of
15   December 1st.
16               And it was to be primarily in relationship to my
17   request number 4 on the request for protection, or my motion to
18   compel request number 4 about distributions to a pilot Rodney
19   Charlson.  My understanding, the APA is representing that that
20   refers to Rodney Charlson.
21               However, Mr. Charlson didn't even make a claim until
22   well after that date.  Approximately six months after that
23   date.  So there is insufficient -- I think it is Rule
24   265(a)(ii) requires that the parties provide enough information
25   for a person to determine if it is actually privileged
```

1  information.

2       And he does not state in that privilege log even who
3  the attorney is.  He says APA counsel, but APA has general
4  counsel, in which case, I would believe it would be protected
5  and they have in-house counsel.

6       And in particular, if it was the in-house counsel that
7  authorized Rodney Charlson's distribution, who is the same
8  in-house counsel that gave hours and hours of argument over
9  issues during the equity proceedings who has a fiduciary duty
10 to all of the pilots because this money is not APA money.  It's
11 not any individual pilot's money.  It's shared equally or
12 equitably among the pilots.

13      So it belongs to all the pilots and the APA is simply
14 a trustee or a fiduciary.  So I believe, and you correctly
15 said, that there may not even be privilege.  So I believe there
16 could be, without further information there could be an
17 exception, a fiduciary exception to the attorney/client
18 privilege issue.

19      And I have deposed the parties to the communication,
20 Mellerski and Quinlan and they really couldn't even -- they
21 didn't have a clue what the communication was about.

22      And to the extent that it authorizes some kind of
23 secondary process or backdoor process for getting benefits from
24 the equity distribution that's critical to my case.  And I
25 really don't know what they're saying mailing lists for equity

```
 1  distribution what that even means.  So you can't even determine
 2  if it's privileged without more information --
 3          THE COURT:  Defense?
 4          MS. EMERY:  -- technically it doesn't even go to the
 5  main issue upon which I was seeking to compel.
 6          And to this date, Allied Pilots Association, they
 7  claim they have eight documents they haven't provided, which
 8  they claim are confidential, but there are a whole lot more
 9  documents that they haven't provided that can't be
10  confidential.
11          And you deferred ruling on that because during the
12  hearing Mr. Dalmat claimed, and erroneously claimed, that we
13  had not conferred, but we had conferred over the issues in
14  particular of Mr. Charlson ad nauseam before the hearing.  And
15  I --
16          THE COURT:  We're going far afield now.
17          MS. EMERY:  Pardon?
18          THE COURT:  We're going far afield now.  Let me hear
19  from the Defense --
20          MS. EMERY:  Okay.
21          THE COURT:  -- on the privilege issue.
22          MR. DALMAT:  We believe that there's no distinction at
23  all between in-house counsel and outside counsel in terms of
24  the applicability of the privilege.
25          Yes, APA has in-house counsel.  That counsel gives
```

1  advice to the APA and its committees, including the Equity
2  Distribution Committee.  And when that advice is given in a
3  confidential manner, then, that is properly the subject of
4  attorney/client privilege.
5       The fact that in-house counsel may also have taken a
6  public position in a public proceeding, like the equity
7  distribution arbitration, means that we did not claim privilege
8  for those public statements of in-house counsel, but when
9  in-house counsel acts to advise its clients in a private
10 confidential manner, those communications properly are the
11 subject of privilege and there is no distinction whatsoever
12 between inside and outside counsel.
13      THE COURT:  What about her fiduciary argument?
14      MR. DALMAT:  Well, I don't think -- I'm not familiar
15 with any exception that a union with in-house counsel somehow
16 loses -- the representation that the in-house counsel gives is
17 to the union as an institution, yet the union represents pilots
18 and represents other people.  And owes certain other legal
19 duties to those people, but the in-house counsel legal
20 representation and legal responsibility runs to the union as an
21 institution and the Constitution and Bylaws define who that is
22 and that is the Board of Directors and the union as an
23 institution, but it is not the individual members.
24      Even when there's a grievance, which this is not a
25 grievance, but even where there is a proceeding where an

```
 1  in-house attorney prosecutes a grievance on behalf of a
 2  specific individual pilot, the in-house attorney's duties still
 3  run to the union as an institution and --
 4          THE COURT:  That sounds right to me.
 5          MR. DALMAT:  -- and executes those duties and --
 6          THE COURT:  All right.  I've heard enough.
 7          MR. DALMAT:  -- of individual pilots --
 8          THE COURT:  Hello?  I've heard enough.  I agree with
 9  you.
10          MS. EMERY:  Can I make one more comment?
11          THE COURT:  On this?
12          MS. EMERY:  Yes.
13          THE COURT:  No, I've heard what you had say and I have
14  ruled on it.
15          MS. EMERY:  Since he raised another issue I have
16  something else to say.
17          THE COURT:  He didn't raise another issue.  He was
18  just responding to you.
19          MS. EMERY:  Well, there's a Railroad Labor Act issue
20  and they do have a duty of fair representation and a duty to
21  treat each pilot the same.
22          THE COURT:  Well, that's the union's duties and not
23  the attorney's duty.
24          MS. EMERY:  Well, it's much like Judge Ryskamp.  In
25  this case this is unusual because they're fiduciaries to this
```

1  trust that belongs to the pilots.
2          THE COURT:  But that does not mean that they cannot
3  have confidential conversations with their attorney.
4          MS. EMERY:  I still don't think that there's enough
5  information here to learn it as confidential, to determine if
6  it's confidential because if they're making this -- the problem
7  here is after the --
8          THE COURT:  I disagree with you.
9          MS. EMERY:  Okay.
10          THE COURT:  They've got a more than adequate
11  description in the privilege log.
12          MS. EMERY:  Then, the only issue is did they comply
13  with the order when they didn't give a privilege log for the
14  issues relating to Rodney Charlson that occurred well after
15  this privilege log because I still haven't gotten evidence.
16          And you correctly questioned how the APA --
17          THE COURT:  They are not withholding of that.  They
18  have produced the privilege log for what they have withheld.
19  They are not withholding that.  If you think that they are not
20  complying file a motion.
21          MS. EMERY:  They are withholding evidence relating to
22  the distribution of --
23          THE COURT:  Then file a motion.
24          MS. EMERY:  Okay.
25          THE COURT:  Have a good weekend.

```
 1            MR. DALMAT:  Would you like us to submit another
 2   proposed order reflecting your rulings or are you just going to
 3   rule, Your Honor?
 4            THE COURT:  I'll just rule.
 5            MR. DALMAT:  I'm sorry.  I didn't hear you.
 6            THE COURT:  I'll just rule.
 7            MR. DALMAT:  Thank you, Your Honor.
 8            THE COURT:  Thank you.
 9            MS. EMERY:  I appreciate that, Your Honor.  Thank you
10   for your time.
11            THE COURT:  Certainly.  Have a good weekend.
12            MS. EMERY:  You too.
13            (Thereupon, the proceedings concluded.)
14
15
16
17
18
19
20
21
22
23
24
25
```

CERTIFICATE

I hereby certify that the foregoing transcript is an accurate transcript of the audio recorded telephonic proceedings in the above-entitled matter.

02/17/16

Bonnie Joy Lewis,
Registered Professional Reporter
CASE LAW REPORTING, INC.
7001 Southwest 13 Street,
Pembroke Pines, Florida 33023
954-985-8875