1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA


14-80518-CV DTKH


KATHY E. EMERY,

          Plaintiff,

vs.

ALLIED PILOTS ASSOCIATION,

          Defendant.
_____/




TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE DANIEL T.K. HURLEY
TUESDAY, OCTOBER 11, 2016; 11:40 A.M.


FOR THE PLAINTIFF:
     Kathy E. Emery, pro se

FOR THE DEFENDANT:
     James & Hoffman, P.C.
     By:  Darin M. Dalmat, Esquire
     1130 Connecticut Avenue, NW, Suite 950
     Washington, DC 20036



     Proceedings recorded by mechanical
stenography, transcript produced by computer.
_____

JILL ANN SHERIDAN, RPR
PHIPPS REPORTING
1551 FORUM PLACE, SUITE 200E
WEST PALM BEACH, FLORIDA 33401

2

1   Thereupon,

2         THE COURT:  Good morning, everyone.

3   Please, be seated.  We have a little bit of a

4   problem, and I wanted to talk with you about it.

5         We've gotten behind schedule because our

6   court reporter who was going to be here -- and I

7   was so thankful that we have a replacement, but

8   our court reporter called in sick today, and so we

9   were unclear about how to move forward.  We have a

10  backup recording system that we -- we use in -- in

11  extreme situations.  And so we got really

12  behind schedule with the first matter that was

13  both a plea and a sentencing, and then, of course,

14  some of you folks were present for the last

15  matter.  And I -- and I wanted to ask you what

16  you'd like to do.

17        We need to stop, at about five minutes of

18  twelve, because of a matter that -- so that I can

19  meet with some of the other judges.  And so my

20  suggestion is, if it's all right with you, that we

21  continue this matter until one-thirty.  And that

22  will allow me to hear you in context, and deal

23  with this matter.  I have another pretrial

24  conference set at 2:30 but I think that would give

25  us a full hour.

3

1          Now I wanted to see -- I know that you

2     folks are all busy and have other things to do.

3     Would -- can you accommodate your schedules so

4     that you could do that?

5          MS. EMERY:  Yes, Your Honor, I can.

6          MR. DALMAT:  That's fine, Your Honor.

7     Thank you.

8          THE COURT:  Why don't we do this?  Why

9     don't we plan to meet at -- at 1:30?  That gives

10    us a full hour for the discussions that we have.

11    And this is the Defendant's motion for summary

12    judgment.

13         MR. DALMAT:  Yes, Your Honor.

14         THE COURT:  And I guess while there are

15    many issues in the lawsuit the one that seems to

16    just jump out at you is if there was an

17    arbitration proceeding, and the award is

18    unchallenged, how can we have litigation after

19    that.  And I want to turn to you for your help on

20    that because if -- if there is a valid arbitration

21    agreement -- and I don't think anybody has claimed

22    that the agreement was not valid.  So if you've

23    got a valid arbitration agreement, and despite the

24    fact that there may be assertions of imperfections

25    in the process, irregularities, if that was

4

1    unchallenged, doesn't that resolve many of the

2    issues in the lawsuit?  And I suppose both parties

3    have views on that.  But I -- I really want to

4    hear your views on that.  We all know that, you

5    know, the landscape has changed, probably in the

6    last twenty years, to reinforce the validity and

7    to encourage arbitration agreements.  And,

8    essentially, to tell courts that they need to be

9    prepared to enforce them, unless there's some

10   extraordinary irregularity.  And there's a lot of

11   case law, and a lot of -- not only case law from

12   the courts of appeal but from Supreme Court

13   opinions, say, in the last five years, that really

14   underscore that.  So I think we need to talk about

15   that.

16          And then I think, also, it would be

17   helpful for me to understand, in addition to that,

18   are there other parts of this lawsuit that are

19   separate and apart from arbitration, that -- that

20   are just different, and have a different basis.  I

21   just wanted to ask you to think about that over

22   the lunch hour, because those are some of the

23   things that I think we're going to have to grapple

24   with.

25          So why don't we stop now.  Let's take a

5

1    break until 1:30.  That will give us loads of time

2    to come on back and talk about this leisurely, see

3    where we are.

4           Is this case on a present trial calendar?

5           MR. DALMAT:  It is.  It's set for trial

6    in November.

7           THE COURT:  In November.  Okay.  Because

8    I think we want to get the summary judgment

9    resolved and allow you folks to digest that and

10   then see where you are.  Okay?

11          MS. EMERY:  We are scheduled for

12   mediation, court-ordered mediation, day after

13   tomorrow.

14          THE COURT:  Good.  Good.

15          And I want you to know, we talked

16   seriously about whether we should put this off

17   until then, and I thought we ought not to.  You

18   probably won't have a decision by me, on this, I

19   doubt, before then, but I thought there was a

20   possibility of that.  But I -- I know this case

21   has been going on a long time.  I just thought we

22   needed to keep moving forward as best we could.

23   Okay?

24          MR. DALMAT:  Appreciate it.

25          THE COURT:  Take a break.  I apologize to

6

1   you.  This is the post hurricane, getting back up

2   to speed and trying to do all the things we need

3   to do.  Okay?

4          MR. DALMAT:  Thank you very much, Your

5   Honor.

6          THE COURT:  There are a load of

7   restaurants, by the way, on Clematis Street,

8   within walking distance.  As you get closer down

9   toward the water, there are some restaurants, as

10  well.  Okay?

11         Thank you all.  Appreciate your

12  understanding.

13         (Thereupon, a luncheon recess was taken

14  at 11:48 a.m., after which the following

15  proceedings were had.)

16         THE COURT:  Good afternoon, everybody.

17         The next matter before the Court is Case

18  14-80518.  This is the case of Miss Kathy E. Emery

19  versus the Allied Pilots Association.  Let me

20  begin by allowing the parties a moment to make

21  their appearances.  I'm going to start by

22  recognizing the Plaintiff, Miss Emery.

23         MS. EMERY:  Kathy Emery, Plaintiff.

24         THE COURT:  Thank you, Miss Emery.  If I

25  might turn to counsel for the Defense.

7

1             MR. DALMAT:  Good afternoon, Your Honor.
2    My name is Darin Dalmat from James and Hoffman on
3    behalf of the Allied Pilots Association.
4             THE COURT:  Mr. Dalmat.
5             MR. DALMAT:  I'm accompanied today by
6    Mr. Steven Hoffman.
7             THE COURT:  I'm sorry?
8             MR. HOFFMAN:  Steven Hoffman.
9             THE COURT:  Thank you, Mr. Hoffman.  Are
10   you a representative of the union or counsel with
11   Mr. Dalmat?
12            MR. HOFFMAN:  We are both.
13            THE COURT:  Co-counsel, good.
14            Now we are here today on Defendant's
15   motion for summary judgment.  I'm allocating an
16   hour for the arguments, so thirty minutes to the
17   side.  How would the Defendant like to divide your
18   time?
19            MR. DALMAT:  If it pleases Your Honor, I
20   would like to make a very brief opening statement,
21   but reserve the majority of my time after for --
22            So perhaps forty (phonetic) minutes.
23            THE COURT:  You may do that.  I'll just
24   give you thirty minutes for that and what you
25   don't use, you can use it later.  Does that sound

8

1    fair?

2              MR. DALMAT:  Yes, Your Honor.

3              THE COURT:  All right.  When you're

4    ready, you may proceed.

5              MR. DALMAT:  Thank you, Your Honor.  And

6    good afternoon.  Again, my name is Darin Dalmat

7    and I represent the Allied Pilots Association.

8              I'd like to begin with a question that

9    Your Honor raised prior to our lunch break and

10   that focuses on what is the standard when there is

11   an arbitration.  And -- and in particular when the

12   arbitration is being conducted according to a

13   valid arbitration agreement, as is the case here.

14   And -- and I think we briefed this at some length

15   in our papers.  Under the Railway Labor Act, the

16   standard for overturning an arbitration award is

17   one of the most exacting and demanding known to

18   the law.  There has to be a showing either of a

19   statutory violation under the RLA, a fraud or

20   corruption, or that the award somehow --

21             THE COURT:  I wonder, though, if I could

22   stop you for just a second.  I know you folks are

23   so much more familiar with this than I.  But I

24   wonder if we could go back to this for a moment.

25             I take it that, as part of the membership

9

1    in the union, I assume there is somehow a

2    provision, in some document, that suggests that if

3    there are disputes, between the member and the

4    union, the disputes will be resolved through

5    arbitration.  Is that true?

6              MR. DALMAT:  I don't know if that's

7    generally true but certainly with respect to this

8    particular dispute, the dispute over the

9    allocation of the equity, that is absolutely true.

10             While American was going through its

11   bankruptcy, the APA enacted a provision of the

12   constitution -- I'm just looking for it right

13   now -- that specifically addressed this.  It's on

14   docket 37 -- sorry, 93-7.  This is the

15   constitution and bylaws of the APA.

16             THE COURT:  Yes?

17             MR. DALMAT:  And, if you turn to page

18   forty of that document, it will be article three,

19   section seven, subparagraph F, and it reads, in

20   pertinent part:  In the event that the association

21   has discretion to distribute a lump sum payment --

22   and that's what this was in this case, a lump

23   sum -- in the form of equity from the American

24   Airlines reorganization -- and skip a little

25   bit -- any pilot or group of pilots who wishes to

10

1    challenge the distribution shall be required to

2    exhaust the lump sum dispute resolution procedure.

3    No pilot or group of pilots may take legal action

4    against the association, with respect to any

5    matter that could be addressed in the lump sum

6    dispute resolution procedure, unless this

7    procedure has been invoked and exhausted by the

8    pilot or group of pilots.

9            And so, subsequent to that amendment to

10   the constitution and bylaws which gave the APA

11   authority, if there was such a payment, to enter

12   into this procedure to resolve any disputes,

13   American and APA did, in fact, negotiate a side

14   letter to the collective bargaining agreement.

15   This is 1307, letter of agreement 1307.  And I

16   believe it's Exhibit 2, to that same declaration

17   document 93-7, at page sixty-five of the document.

18           And under that letter of agreement the --

19   the company and the union came together and they

20   expressly agreed that any dispute over how the

21   equity would be allocated -- allocated would be

22   resolved through arbitration.  So you have --

23           THE COURT:  Let me just stop you, though,

24   for a minute.

25           Normally, arbitration is agreed to by the

1    parties.  Has Miss Emery ever agreed that any

2    dispute that she had would be resolved by

3    arbitration?

4          MR. DALMAT:  Well, she is a member of the

5    Allied Pilots Association.  An inactive member but

6    a member.  And implicitly, by being a member, she

7    is subject to the provisions of the constitution

8    and bylaws.  So, through that -- through that

9    process, she has agreed.  And I don't know if this

10   was cited to you in -- in our papers but the

11   Supreme Court addressed this question in a case

12   called Elgin -- I don't remember the defendant.

13         THE COURT:  That's all right.

14         MR. DALMAT:  Burley.

15         This was one of the early Railway Labor

16   Act cases.  I believe it's in around 1945.

17         And this question about a member's

18   ability to cede to its bargaining representative

19   the -- the authority to enter into arbitration

20   agreements on its behalf.  So I think that there's

21   ample legal authority that both through the

22   constitutional provision and through the separate

23   bilateral agreement between American and the APA

24   that the arbitration process set up through those

25   two agreements is binding on Emery.  And I would

12

1   add to that, Emery participated fully --

2          THE COURT:  Now before we get to that,

3   though, just without jumping, so I take it that,

4   based on that provision, the APA did in fact

5   establish a lump sum resolution procedure?

6          MR. DALMAT:  It did.

7          THE COURT:  And where do I find that?

8          MR. DALMAT:  That is in the equity

9   document, the board-approved equity document.  If

10  you give me just one second, I will be able to

11  direct you to the particular page.

12          It is Exhibit 3 to the Meyers (phonetic)

13  declaration.  So, again, we're in document number

14  93-7 and, looks like --

15          THE COURT:  That's all right.  Now tell

16  me what that says.

17          MR. DALMAT:  It says, essentially, that

18  the board had approved the process.  They created

19  an equity dispute committee.  The committee spent

20  several months coming up with a formula and

21  that -- and that the APA created an arbitration

22  process, in front of a neutral arbitrator, highly

23  recognized, nationally-recognized arbitrator,

24  Goldberg --

25          THE COURT:  You know that one of the

13

1   contentions here is that some arbitration

2   proceedings have more than one arbitrator, and of

3   course the -- the claim is that this was an

4   arbitrator selected by the APA, which I guess you

5   agreed to.  But you suggest that the person is

6   neutral?

7            MR. DALMAT:  Yes.

8            THE COURT:  Is and was neutral.

9            MR. DALMAT:  Yes.  A couple points --

10   again, in 1307, the letter of agreement between

11   American and APA, American expressed no objection

12   to APA's ability to choose.  So, essentially, the

13   process that Miss Emery contemplates, a

14   five-person system board, American said we have no

15   objection, APA, you go choose the arbitrator that

16   you wish.  And for good reason.

17            And the reason is that in this case it

18   was a dispute not between the union and the

19   company but it was a dispute between pilots

20   represented by the union on how the union should

21   allocate equity, money, between those pilots and

22   so --

23            THE COURT:  I understand that, but it

24   does sound a little strange, doesn't it, that it's

25   the pilots' association who has structured this,

14

1    the union member, whose issue is being resolved,

2    seems to have no role in the -- in the formulation

3    of the arbitral panel, and it's one arbitrator.

4              Be that as it may, that's what we have.

5              So I wanted to kind of go forward, then.

6              MR. DALMAT:  Well, may I address that --

7              THE COURT:  What actually happens?

8              MR. DALMAT:  May I address that, then?

9              THE COURT:  Surely, you can.

10             MR. DALMAT:  Miss Emery did not raise any

11   objection during the arbitration itself.

12             THE COURT:  That's what I want you to

13   take me to.  When did the arbitration take place?

14             MR. DALMAT:  It was in the fall of 2013,

15   I believe.

16             Well, over the course of several months.

17   There were hearings in April.  I think there were

18   additional hearings in July and the decision came

19   out October 2013.

20             THE COURT:  And I wanted to ask you about

21   that.  So the arbitrator's decision came when?

22             MR. DALMAT:  In October 2013 is my

23   recollection.

24             THE COURT:  And I think there's reference

25   that -- that there was a request by Miss Emery

15

1    that the arbitrator reconsider the decision.

2         MR. DALMAT:  She filed a paper.  He ruled

3    on it and denied that.

4         THE COURT:  Did he deny it or grant part

5    of her ruling?

6         MR. DALMAT:  No, he granted her relief in

7    the initial --

8         THE COURT:  In the proceeding itself?

9         MR. DALMAT:  Yes, Your Honor.

10        THE COURT:  So the decision we look at --

11   in other words, it contains the arbitrator's final

12   decision -- is October 20th of 2013?

13        MR. DALMAT:  That sounds correct.

14        THE COURT:  Okay.  Let's go from there,

15   from your point of view.

16        MR. DALMAT:  And in that decision, as

17   Your Honor just said, Arbitrator Goldberg

18   sustained her challenge.

19        Apa's initial proposal said that Miss

20   Emery should get no equity because she was not

21   flying for American in 2013.  And, again, the

22   fundamental principle of this -- of the equity

23   distribution formula devised by the committee that

24   APA put together was that APA had negotiated,

25   during the bankruptcy, a contract that was

16

1    concessionary, that was less favorable to the

2    pilots than the contract that preceded APA --

3              THE COURT:  In other words, the contract

4    that would govern the pilots going forward --

5              MR. DALMAT:  Exactly.

6              THE COURT:  -- after the reorganization

7    was put into effect.

8              MR. DALMAT:  Precisely so.

9              And so the purpose of the distribution

10   formula was to compensate pilots to the extent

11   that the committee was able to, and APA was able

12   to, for the losses they would suffer by flying

13   under the 2013 contract.

14             And so, because Emery had not been flying

15   as of 2013 and, in fact, had not been flying for

16   many years before that, APA's initial proposal

17   said that she was not entitled to equity at all.

18   Now, she presented evidence, she presented

19   argument, she presented many documents and

20   cross-examined witnesses, and she said she was

21   entitled to equity and the arbitrator agreed with

22   her.

23             THE COURT:  Yes?

24             MR. DALMAT:  The arbitrator said she was

25   entitled to two silos, these four buckets of

1    equity, and that her entitlement was based on a

2    grievance that she had filed in 2007.

3            And why did he reach that decision?  He

4    reached that decision because the arbitrator

5    accorded her the very same presumption that he had

6    accorded to other pilots who had filed grievances

7    and -- and who had a claim to equity based on

8    those.

9            The presumption that the APA, by

10   taking -- by prosecuting agreements with the

11   company, by saying we believe this is a claim they

12   have under the contract, that APA had taken a

13   formal position, and APA should be held to that

14   position.  And so Arbitrator Goldberg accorded her

15   the presumption that her grievance would be

16   successful.

17           So what does this case boil down to?  It

18   boils down to what her grievance was seeking.

19   Right?  Arbitrator Goldberg heard all of the

20   evidence, including much of the evidence that Miss

21   Emery has presented to this Court, and he ruled,

22   after considering her argument and APA's argument,

23   that her grievance sought the reinstatement of her

24   disability benefits.  Not reinstatement of -- of

25   her position to an -- she had never been

18

1    terminated in 2007 so she wasn't seeking

2    reinstatement to an active flying position, not

3    reinstatement of her employment, but reinstatement

4    of her disability benefits.

5           And Miss Emery's allegation in this case

6    is that APA knowingly misrepresented the

7    arbitrator in making that argument.

8    And how do you know that that's not correct?  You

9    know that that is not correct based on every piece

10   of paper submitted in this -- in this case,

11   relevant to her -- her grievance.  And let me

12   direct you to a few of them.

13          You know it's not correct based on the

14   grievance itself.  The language of the grievance

15   referred -- doesn't refer to termination at all,

16   it doesn't refer to the fact that she has been

17   fired as of 2007.  Instead, it refers to the fact

18   that American had taken the position that she had

19   been on disability benefits from American for

20   several years, starting in 2003 or 2004, and she

21   failed to present evidence to continue to

22   substantiate that disability in around 2007 and

23   so American cut off her disability benefits in

24   2007 and that's the action that she grieved.

25          And you don't have to take APA's word for

19

1    it; you can also look at American's understanding

2    of the grievance.  And this is document 93-A at

3    three twenty-one.  It's a letter by Lucretia

4    Gia (phonetic), an attorney for the company.  So

5    you have both APA and American who agree on what

6    the grievance means.  That's point number one.

7              Point number two, you can look at every

8    piece of contemporaneous employment record that

9    APA had available to it at the time in 2007.

10   These are the status one reports.  And if I can

11   take just a couple seconds to explain what a

12   status one report is.  The company has -- at the

13   time, had ten thousand pilots or so.  And, on a

14   monthly basis, it would provide information about

15   the status of those pilots:  Where they were

16   domiciled; what their seniority number was; what

17   equipment they were flying; whether they were a

18   first officer or captain, et cetera.  And so that

19   information got sent to APA in an electronic file.

20   It was downloaded and APA has a database that it's

21   able to generate, going all the way back, what

22   those reports were.

23             So we produced what the status one

24   reports were showing she was employed by American

25   all the way through 2009 and only at 2009 did she

20

1   lose her seniority number.  And that's exhibit

2   thirty-two to the Meyers' declaration, docket

3   93-8.

4            Same thing if you look at the monthly

5   activity reports.  It's just a spin on the same

6   information.  That's out of a database called

7   Saver, but the same information.  And that's

8   Exhibit 33 to the Meyers' declaration.

9            You can also look at -- and those

10   records, by the way, are American Airlines'

11   records.  You can also look at APA's internal

12   records, the records it kept on its own members.

13   You can look at the membership profile that APA

14   had on Miss Emery.  That's Exhibit 37 to --

15            THE COURT:  Aren't we getting off on a

16   side tangent here?

17            MR. DALMAT:  I don't think so, Your

18   Honor.

19            THE COURT:  Isn't the issue there was an

20   arbitration and there was a decision?

21            MR. DALMAT:  Absolutely.

22            THE COURT:  All right.  Where do we go

23   from there?

24            MR. DALMAT:  Well, I -- I don't -- I

25   think that's largely conclusive, and that's

21

1    largely conclusive because Emery can't show that

2    any of APA's actions caused her harm because

3    she had full and fair opportunity to present her

4    case and the arbitrator heard it and the

5    arbitrator ruled so --

6            THE COURT:  And you're saying the

7    arbitrator assumed that she would have been

8    successful, on her grievance --

9            MR. DALMAT:  Correct.

10           THE COURT:  -- and what the arbitrator

11   then did, I assume, was to award these two silos

12   that you've referred to.

13           MR. DALMAT:  Correct.  And the APA paid

14   for those two silos.

15           THE COURT:  Okay.

16           MR. DALMAT:  So the APA complied with her

17   other --

18           THE COURT:  What happened to the

19   disability benefit issue?

20           MR. DALMAT:  Well, honestly, Your Honor,

21   I can't -- Miss Emery has litigation against

22   American.

23           THE COURT:  Is that the other case that's

24   now pending in the court?

25           MR. DALMAT:  No, you're -- she has -- she

22

1    has several cases that are pending.  She has two

2    cases --

3              THE COURT:  Let's not get off on that

4    either.

5              MR. DALMAT:  Correct.

6              THE COURT:  So you have this decision by

7    the arbitrator that says you are entitled to the

8    two silos.  What happens next?

9              MR. DALMAT:  APA paid her the two silos.

10              THE COURT:  Okay.

11              MR. DALMAT:  And subsequently she brought

12    suit.

13              THE COURT:  When was this lawsuit filed?

14              MR. DALMAT:  It was filed exactly on

15    the -- the six month -- on the last day of the

16    statute of limitations, I think, is 2014, I don't

17    remember the exact date.  But if -- six months

18    after October, so it was probably in March or

19    April of 2014.

20              THE COURT:  From your point of view,

21    then, what does that do to this lawsuit?

22              MR. DALMAT:  What does what do?

23              THE COURT:  What the factual recitation

24    you've just given --

25              MR. DALMAT:  Yes, Your Honor.

23

1          THE COURT:  -- if that's all correct,

2    where does that take us with respect to this

3    lawsuit?

4          MR. DALMAT:  I think APA is clearly

5    entitled to prevail on the lawsuit, on all the

6    claims, but on -- especially on the equity claim

7    we're talking about right now.  There is a valid

8    arbitration agreement; the arbitrator rendered a

9    decision; APA complied with the decision and, to

10   the extent that -- that Miss Emery wishes to

11   pierce that decision by claiming that APA

12   knowingly misrepresented facts in its presentation

13   to the arbitrator -- I recited some of the

14   evidence.  There's more.  We don't need to get

15   into the details, but it's just simply not the

16   case.  APA, I don't think --

17         THE COURT:  Well, let me, I guess, put

18   the question to you directly.  There's no question

19   that the union had an obligation to fairly

20   represent its members, and one tends to think that

21   that is at its apex when the union is dealing with

22   the employer.

23         MR. DALMAT:  Correct.

24         THE COURT:  Because you've got a union

25   trying to safeguard and promote the interests of

24

1   its members.

2            MR. DALMAT:  Correct.

3            THE COURT:  But when you have a

4   disagreement between a member and the union, and

5   you have an arbitration proceeding, clearly, the

6   union presents its view, whatever it is, the

7   member presents its view.  Presumably, they're at

8   odds or you wouldn't be there in the first place.

9            MR. DALMAT:  Correct.

10           THE COURT:  And you get a decision.

11           MR. DALMAT:  Correct.

12           THE COURT:  Now, what is the time period

13  to challenge that arbitral award?

14           MR. DALMAT:  Well, I -- I think Miss

15  Emery has brought a timely claim.  It's either six

16  months under the duty of fair representation

17  limitations period --

18           THE COURT:  Well, I guess I need to come

19  back to you.

20           Is this -- are we here under the Federal

21  arbitration act?

22           MR. DALMAT:  No, Your Honor.

23           THE COURT:  No.

24           Are we here under the State of Florida's

25  arbitration act?

25

1          MR. DALMAT:  No, Your Honor.

2          THE COURT:  Then what is the statute or

3     the legal background that I need to look at?

4          MR. DALMAT:  You need to look at The

5     Railway Labor Act.

6          THE COURT:  Uh-huh?

7          MR. DALMAT:  And --

8          THE COURT:  Why is that?

9          MR. DALMAT:  It is because American

10    Airlines is an airline -- it's -- it's funnily

11    titled.  The statute was first passed in 1926 when

12    only -- there weren't airlines.  It was later

13    extended to 19 -- to airlines in 19 --

14          THE COURT:  Initially, railroads, and

15    then extended to airlines.

16          MR. DALMAT:  Correct.  So --

17          THE COURT:  What does that say about

18    arbitrations?

19          MR. DALMAT:  Well, two things.  Number

20    one, it provides express provisions on arbitration

21    standards of review, and those are cited -- I

22    don't have the statute in front of me but we cite

23    it to you in an Eleventh Circuit case, Henry v.

24    Delta Airlines, which is an ROA case.  This is

25    759 F.2d 870.

26

1              THE COURT:  Yeah.

2              MR. DALMAT:  That lays out that standard

3     of review that emerges out of the Railway Labor

4     Act.

5              There's also a duty of fair

6     representation that is implied from the Railway

7     Labor Act and we --

8              THE COURT:  I don't understand what that

9     means, though, in this context.

10             MR. DALMAT:  Sure.  Sure.  Let me

11    explain.

12             As Your Honor has noted, the union has a

13    duty to fairly represent a member -- the pilots

14    that it represents, everyone within the craft or

15    class of the bargaining unit.  When there is an

16    issue like this one, the equity distribution, it

17    is a zero sum game.  Seniority systems are very

18    similar.  When it's the union responsible for

19    determining how one pot of money is going to be

20    distributed, some pilots will do better, some

21    pilots will do worse, because you have a fixed

22    amount.  Then there's a series of cases on this.

23    They're cited to you at pages seven and eight of

24    our opening brief.

25             Bonduraut (phonetic), Hudson,

1    Wadestuck (phonetic) --

2         THE COURT:  That's okay.  Go ahead.  What

3    do they say?

4         MR. DALMAT:  They say, essentially, that

5    unless there's something inherently unfair about

6    the arbitration process, it's a perfectly

7    reasonable, perfectly appropriate, thing to do, to

8    give that to an arbitrator, because the union is

9    necessarily going to be in a difficult position.

10   Any money that it gives extra to one of Miss

11   Emery's colleagues, it can't give to her.  The

12   flip side --

13        THE COURT:  Okay.  I want to take you

14   back, then, to the question I asked you before.

15   And you've helped me out by telling me I need to

16   look at the Railway Labor Act, but what is the

17   time frame that the Railway Labor Act sets, with

18   respect to contesting an arbitration award?

19        MR. DALMAT:  Again, I think it's either

20   two years or six months, depending on which

21   particular provision of the Railway Labor Act.

22   There's argument even less than that, ten days for

23   interest arbitration.  Not making argument --

24        THE COURT:  So you are -- you agree that

25   the lawsuit is timely; is that right?

28

```
 1            MR. DALMAT:  Well, the magistrate told us
 2    it is.
 3            THE COURT:  No, I'm asking as to what you
 4    agree.  Do you agree now that the suit is timely?
 5            MR. DALMAT:  I think it's an open
 6    question.  She filed exactly on the -- the sixth
 7    month period.  I actually can't remember, I
 8    haven't looked at the motion to dismiss papers in
 9    awhile.  I can't remember if it was a hundred
10    eighty days -- the hundred eightieth day she filed
11    on or the six month -- if you went with one way,
12    the way we argued in that motion to dismiss, we
13    would prevail.  The other calculation, he found
14    her timely.
15            We're not relying on that, at this stage
16    of the proceedings.
17            THE COURT:  Okay.  All right.  So
18    without -- without saying that you're now claiming
19    that she's here too late, why should you prevail
20    on summary judgment?
21            MR. DALMAT:  Well --
22            THE COURT:  On the arbitration.
23            MR. DALMAT:  Two main reasons:  We
24    complied with the arbitration award and she hasn't
25    met any of the exacting standards of review.  She
```

29

1   hasn't shown that we -- that the arbitrator failed

2   to comply with the RLA; she hasn't found fraud or

3   corruption by the arbitrator; she hasn't presented

4   any evidence that would support that.

5           Second, to the extent that she's

6   challenging the award based on APA's unfair

7   representation, it is just simply not the case

8   that APA misrepresented anything with respect to

9   her.  APA did not act in bad faith.  To violate

10  the duty of fair representation, you have to meet

11  one of three standards of bad conduct,

12  essentially.  You either have to act

13  discriminatorily, arbitrarily or in bad faith.

14          THE COURT:  Okay.  I'm sorry to interrupt

15  you.  I know this was not your intent but you have

16  five minutes left.  You want to stop and allow

17  Miss Emery to speak so you have some time?

18          MR. DALMAT:  Yes.

19          THE COURT:  Thank you for your time and

20  help.

21          Turn to Miss Emery and allow her to come

22  forward.

23          MR. DALMAT:  Thank you, Your Honor.

24          MS. EMERY:  Judge, without being

25  disrespectful, would you mind if I keep --

30

1           THE COURT:  I'm afraid I do need to ask

2      you to use the lectern.  Our court reporter is

3      going to take down what you're saying and she

4      needs to be able to see you.

5           MS. EMERY:  Okay.

6           THE COURT:  Feel free to put any

7      documents on the rail so you can refer to them.

8           MS. EMERY:  Okay.

9      I've got so many.

10          Okay.  Judge, one thing for certain:

11     This was not a Railway Labor Act, it was

12     represented to the pilots as being a dispute

13     resolution process, procedure.  And it's in

14     accordance with the constitution and bylaws, which

15     is the law of the APA.

16          THE COURT:  I understand that.  The --

17     the only problem I have -- and I guess at some

18     point we're going to need to definitively resolve

19     this -- is:  What sets the standard for this type

20     of thing?  You see, we've got a -- a Federal

21     arbitration act that's kind of independent, all by

22     itself, the State of Florida has a statutory

23     provision on arbitration, and I guess now we have

24     the Railway Labor Act that deals with issues like

25     this, as well.

31

1           What do you think is the legal foundation

2    for all of this?

3           MS. EMERY:  Quite frankly, Judge, there

4    is no statutory foundation for this arbitration.

5    At the very best, it's a nonbinding arbitration or

6    dispute resolution procedure.  Because the --

7    the document itself states that the pilot must

8    invoke the arbitral process prior -- it didn't

9    even call it an arbitral process, dispute

10   resolution process, prior to taking any legal

11   action.  So it can't be construed as final and

12   binding.  We never were told it was final and

13   binding.  We were told, if you're going to dispute

14   this in Federal Court, you have to invoke the

15   arbitral process.

16          Interestingly, pilots after the decision

17   and award, similarly situated to me, were given

18   full equity, almost six months after the process

19   was closed, pilots who didn't invoke the arbitral

20   process.

21          THE COURT:  Just so I can understand

22   this:  Is there a dollar figure you attach to

23   these silos?

24          MS. EMERY:  Yes, I received approximately

25   sixteen thousand dollars.  There were eleven

32

1    pilots designated by the APA as TAG, terminated

2    awaiting grievance.

3            THE COURT:  Yes.

4            MS. EMERY:  And I fit that definition

5    to a tee.

6            THE COURT:  Yes?

7            MS. EMERY:  Because when I was stripped

8    of my disability benefits, American and the APA

9    hired an independent medical evaluator, jointly,

10   and that decision is final and binding.

11           THE COURT:  Yes?

12           MS. EMERY:  On a pilot, the association

13   and the APA.

14           I then appealed it.  I had -- I sat there

15   for eight months without pay or benefits, and APA

16   did nothing.  There was actually a fraudulent

17   medical reviewer, it turned out in the end, that

18   APA and American hired.

19           And I sat there for eight months so I had

20   no option but to appeal it, and I lost all my

21   appeals.

22           THE COURT:  So I take it your -- your

23   beginning argument is:  This is kind of a

24   nonbinding dispute resolution procedure, and

25   you are free to accept or reject the -- the

33

1    decision?  Is that your basic -- your first --

2    your starting point?

3            MS. EMERY:  Well, I know according to the

4    documents it's nonbinding.  He alleges that there

5    was some kind of side agreement with American

6    Airlines but, if you read that letter, it says the

7    parties agree to this.  And then, the paragraph

8    about the dispute resolution process, it says,

9    that the APA advises American --

10           THE COURT:  But I just want to make sure

11   I understand your starting position.  Is it your

12   starting position that whatever emanated from the

13   arbitration process is just sort of a nonbinding

14   process, that you were free to accept it or eject

15   it and go from there?

16           MS. EMERY:  Well, yes, I feel that way

17   based on the plain language of the APA equity

18   distribution allocation.

19           THE COURT:  But I wanted to ask you.

20   Let's assume you're correct on that.  What is the

21   legal consequence, then, of you having taken what

22   you got, as opposed to simply saying, you've

23   awarded me this but I think I'm entitled to

24   more.

25           In other words, are you foreclosed in any

34

1   way because you accepted part of the award?

2   That's what I'm really asking you.

3          MS. EMERY:  I don't believe I have.  And

4   the award was automatically put in a fund for me

5   and I have not touched the award.

6          THE COURT:  Do you have legal ownership

7   of it?

8          MS. EMERY:  It -- I never did anything to

9   obtain the money.  Apparently, APA put it in a

10  compushare (phonetic) account under my employee

11  number.

12         THE COURT:  Okay.

13         Now, I understand what you're saying, but

14  why don't we go to the next step.  And I'm not

15  asking you to give up your starting position, but

16  let's assume that the arbitration process was

17  valid.  What do you think -- and -- well, let's

18  assume it was valid.  What do you put out, then,

19  as the standard that I need to follow as to

20  whether to enforce it or reverse it?  What -- what

21  do you see as the legal standard that the Court

22  has to follow?

23         MS. EMERY:  Well, the legal standard,

24  under the Railway Labor Act -- although this was

25  not a Railway Labor Act arbitration because under

35

1    Railway Labor Act arbitration there's a system

2    board of adjustment.  Delta, I believe --

3           THE COURT:  I read all of that.  I

4    promise, I'll again go over it carefully.  But

5    let's assume this was legitimate.  What is the

6    standard I have to follow as to whether to enforce

7    it or not?

8           MS. EMERY:  Well, firstly, Darin did

9    mention the standard.  One of the standards under

10   which it can be enforced is it has to be in

11   compliance with the act.  It was not in compliance

12   with the act --

13          THE COURT:  "The act," being the Railway

14   Labor Management?

15          MS. EMERY:  It was not a Railway Labor

16   Act arbitration, it wasn't -- like you say, it

17   wasn't Florida arbitration, can't be railway

18   because workers are covered under the Railway

19   Labor Act, and it requires a system board.  Then

20   it goes on about this zero sum gain.  Just like

21   the equity distribution seniority is a zero sum

22   game.  This just came to me off the APA website a

23   couple days ago.  The seniority list arbitration

24   panel issued its final decision and award today.

25   The SLI arbitration panel consisted of arbitrators

36

1    Dana Eishin (phonetic), Ira Jaffe and Dana Bond.

2    Nineteen days of arbitration hearings, held in

3    September and October of 2015, and in January

4    2016, resulting in --

5              THE COURT:  Okay.  Well, let's put that

6    aside now, for just a second.  I want to come back

7    to you because the question I put to you:  What is

8    the legal standard that you think the Court has to

9    look at, in deciding whether to enforce the

10   arbitration or -- or not enforce it?  Where do I

11   find that standard?  Do you agree it's in the

12   Railway Labor Act?

13             MS. EMERY:  That is the minimum standard.

14   Since it wasn't a Railway Labor Act arbitration,

15   I'm not sure what the standard is.

16             THE COURT:  Okay.

17             MS. EMERY:  But if you assume it's the

18   Railway Labor Act standard, there's a tri-party

19   standard, three-part standard, which is --

20             THE COURT:  Why don't we assume that

21   that -- and I understand that you don't agree that

22   it necessarily is, but if that is the standard,

23   help me out now in terms of why you think this

24   arbitration award should not be enforced.

25             MS. EMERY:  Well, number one, I don't

37

1   want to criticize the arbitrator but the

2   arbitrator was select -- selected solely by the

3   APA.  The challengers, or the parties, had no

4   input whatsoever in selecting the arbitrator.

5          THE COURT:  Can I ask you:  Did you ever

6   file anything before the arbitrator suggesting

7   that he should be disqualified because of that?

8          MS. EMERY:  No, unfortunately, the APA

9   said I had to invoke whatever they put in front of

10  us before I could take legal action, and the

11  arbitrator was hired long before I even got notice

12  of the system board.

13         THE COURT:  Okay.

14         MS. EMERY:  And the first --

15         THE COURT:  So the answer is no, you did

16  not, for all the reasons you've said.

17         Okay.  Then why should -- why should the

18  arbitrator's decision not be enforced?  What's

19  your -- what's your big argument on that?

20         MS. EMERY:  Well, my big argument is

21  this:  When APA initiated the arbitral process --

22  not even going to call -- a dispute resolution

23  process.

24         THE COURT:  Right.

25         MS. EMERY:  -- they did have a duty, a

38

1   fair representation to me, as well as every other

2   pilot.

3         What the APA did is -- firstly, I wasn't

4   even notified of the equity distribution.  I found

5   out about it about a week or two before the

6   hearings, and I had to fight for two weeks

7   straight, one or two weeks straight, to even get

8   the equity distribution document.  I was locked

9   out of the -- the pilots' part of the website.  I

10  had to fight tooth and nail to even participate.

11  Then, as soon as I did file a challenge, the

12  APA -- find it, it's Exhibit 1 -- it has criteria,

13  for obtaining equity.  And they have a criteria.

14  It's called an exception, and it's for terminated

15  awaiting grievance.

16        Apa wouldn't tell me why I was excluded

17  or why I would be included.  They had this

18  document, the four pages of this document.  The

19  four corners of the document, as the written word,

20  it's been approved by the board of directors, and

21  that's all we're telling you.  So I read the

22  document.  It's 2013.  I was removed from

23  disability in 2007.

24        THE COURT:  Yes?

25        MS. EMERY:  After I lost my PBAC appeal

1    saying I'm no longer disabled or in need of

2    medical treatment, I was sent a letter from the

3    chief pilot saying you're on unauthorized leave of

4    absence and you must return to work.  I couldn't

5    have been happier.  I didn't -- I objected to the

6    disability in the first place.  I attempted to

7    return to work.  I was sent to AA Medical.  The

8    same doctor who medically disqualified me is the

9    one that said you're no longer disabled.

10           My chief pilot was sympathetic to me.

11   He said, okay, "They got to put you back to work."

12   And I said, "Yeah, that's what I wanted, I never

13   believed I was disabled to start with."

14           So, I was sent to the medical department,

15   and the same doctor who said I'm no longer

16   disabled refused to conduct the medical evaluation

17   required under the contract.  And at the time

18   I was stripped of my benefits I was under the care

19   of a physician assigned to me by American

20   Airlines.

21           THE COURT:  Yes?

22           MS. EMERY:  So, I'm sitting there in

23   limbo.  What do I do?  So I did -- I was told that

24   I'd get a reasonable accommodation, until they

25   could give me medical clearance.  I had been

40

```
 1    taking a medically-disqualifying prescription drug
 2    that I needed to come off of.
 3              THE COURT:  In other words, you -- that
 4    you could not fly while you still were taking
 5    that -- those medications, correct?
 6              MS. EMERY:  Correct.  But, about a year
 7    later, the drug was approved.
 8              THE COURT:  Right.
 9              MS. EMERY:  So what happened was, here
10    I am told I'm on unauthorized leave, I'm going to
11    be terminated, if I don't come to medical.  I went
12    to medical, and they basically took me in a room,
13    he sat there with a clipboard and he said, "I
14    don't know what I'm going to do."  So he sent me
15    back.  So we immediately filed a grievance.
16              Now APA would like you to believe that
17    the grievance seeks to be put back on disability.
18    What it says is that I was improperly moved from
19    disability, because --
20              THE COURT:  Improperly moved off of and
21    away from disability?  Yeah.
22              MS. EMERY:  The reason being, that is
23    true.  They have a procedure.  If they're going to
24    strip a pilot of disability benefits, they have to
25    notify him first, have him correct the errors, or,
```

41

1    if the pilot's no longer disabled, they have to

2    set him up for medical clearance.

3              THE COURT:  Yes.

4              MS. EMERY:  So American didn't follow any

5    of those procedures, because the pension benefit

6    program was underfunded by a billion dollars and,

7    in one fell swoop, they stripped about a hundred

8    pilots of disability benefits without notice.

9              So, they say I'm no longer disabled, the

10   decision is final and binding, on the pilot, the

11   association and the company, so I am seeking to

12   return to work.  So my defense specifically asks:

13   Put me in a paid status of paid withhold.  And

14   when it went to arbitration, awaiting training.

15   And the A -- American Airlines' internal records

16   will show that I was to be given a reasonable

17   accommodation, and if they were going to send

18   me the training materials, to prepare for

19   training.

20             THE COURT:  Yes?

21             MS. EMERY:  This grievance was filed in

22   2007.  Under the collective bargaining agreement,

23   a grievance has to be heard, if it's not heard

24   within two years, I believe it's a limit of

25   twenty-four months.  We're in 2007.  The ar -- the

42

1    equity distribution is 2013, and my grievance

2    still had not been scheduled by the APA for

3    arbitration, well after the deadline.  The

4    eligibility period -- they're playing a game,

5    saying, oh, well, she was removed from the

6    seniority list, in 2009.  The eligibility period,

7    for terminated awaiting grievance, was January

8    2013.  And the subsequent qualification period,

9    they had an extended qualification period, that

10   extended to August.

11            THE COURT:  I think I understand what

12   you're saying.  It's pretty complex.  But, I take

13   it, when you found out about the distribution,

14   because of the bankruptcy of American Airlines,

15   originally they didn't -- they weren't going to

16   give you anything; is that right?

17            MS. EMERY:  Correct.

18            THE COURT:  So, I take it, if you

19   objected to that and sought arbitration, did you

20   not?

21            MS. EMERY:  I did.

22            THE COURT:  Okay.

23            MS. EMERY:  Mandatory.  It was mandatory.

24   I was told you have to.

25            THE COURT:  You've heard the opposition

43

1   say the arbitrator concluded that you would have

2   been successful on your use defense, and because

3   of that the arbitrator found that you were

4   eligible, but only to get two of these silos, what

5   they refer to as silos.

6            Now, is that what we're here on today?

7            MS. EMERY:  That's what we're here on.

8            THE COURT:  Okay.

9            MS. EMERY:  Because I only -- it says two

10  silos, but I received money from one.

11           THE COURT:  Okay.  Now --

12           MS. EMERY:  Other --

13           THE COURT:  Understanding there's been an

14  arbitration, and it dealt with the receipt of

15  these silos, these lumps of money, why -- why, in

16  your view, should that not be enforced?

17           MS. EMERY:  Because --

18           THE COURT:  What was wrong with the

19  arbitration proceeding?

20           MS. EMERY:  One, the arbitration

21  proceeding itself was not a Railway Labor Act

22  arbitration.

23           THE COURT:  Yes?

24           MS. EMERY:  APA did not disclose this.

25  I was actually a certified -- Florida Supreme

44

1    Court certified mediator.

2          APA did not disclose, at the onset of the

3    arbitration, that they had an approximately

4    fifteen-year relationship with Arbitrator

5    Goldberg.  They didn't disclose, at the mediation,

6    that a month or two prior --

7          THE COURT:  Can I stop you?  What do you

8    mean by that?  That they had hired him as an

9    arbitrator?

10         MS. EMERY:  Yes, they'd hired him as an

11   arbitrator and there's records buried in the APA

12   files as far back in '94 he was meeting with the

13   board of directors.  I don't know for what legal

14   matters.

15         THE COURT:  Are you suggesting that --

16   that there was a duty of disclosure or are you

17   suggesting that the arbitrator was being, somehow,

18   improperly compensated by the union?

19         MS. EMERY:  I don't know that he was

20   being -- I don't think he was being improperly

21   compensated.  I do believe, based on everything I

22   know, the AAA arbitral guidelines, the guidelines

23   under which he purportedly is a member, they say

24   that an arbitrator selected, by one party alone,

25   you shall not take that arbitration.  APA argued

45

1  that because I had never been before the

2  arbitrator, well, he couldn't be biased.

3            THE COURT:  So the initial point you make

4  is that where you have a system like this, where

5  one party to the arbitration has effectively

6  selected the only arbitrator --

7            MS. EMERY:  Correct.

8            THE COURT:  -- that the system is rigged.

9  I mean that's what you're really saying, aren't

10  you?

11            MS. EMERY:  That's not my primary

12  argument --

13            THE COURT:  What are you saying?

14            MS. EMERY:  -- but that has come to my

15  attention.

16            THE COURT:  What are you saying?  I want

17  to understand.  Maybe I used an incorrect word but

18  I want to understand this.  Aren't you saying that

19  the union -- it is the union not the airline.

20            MS. EMERY:  No, it's the union.

21            THE COURT:  Because the union had

22  retained this particular arbitrator over a number

23  of years -- as arbitrator, by the way, not as

24  anything else -- you're saying that that somehow

25  invalidates the process?

46

1          MS. EMERY:  I'm not saying it invalidates

2     the process, I'm just saying it's one more issue

3     to be looked at.

4          THE COURT:  What should -- well, looked

5     at.

6          All right.  So, in other words, it's

7     something that you want to put down on the list.

8     It's a questionable fact in your mind?

9          MS. EMERY:  Correct.  Because the record

10    does show that prior to the dispute resolution

11    proceedings APA, general counsel, had met with the

12    arbitrator, on many occasions, and one e-mail

13    refers to the distribution document.  So therefore

14    they met, for a month or two, prior to the

15    proceedings, and then, a month later, there's an

16    e-mail, oh, by the way, do you want to be the

17    arbitrator on this case?  So he was working on the

18    case --

19          THE COURT:  Are you suggesting, and have

20    you alleged in your pleadings here, that the union

21    was providing ex parte information to the

22    arbitrator outside of the arbitration proceeding

23    that you participated in?

24          MS. EMERY:  I saw one e-mail that

25    appeared he did.

47

```
 1              THE COURT:  Did you allege that in your
 2   documents?
 3              MS. EMERY:  No, I didn't, because I just
 4   found out about it.  The reason I found this out
 5   is because the same arbitrator was on a TWA
 6   arbitration, it was the union -- it was TWA pilots
 7   that are now American pilots.
 8              THE COURT:  Yes.
 9              MS. EMERY:  And it was an internal
10   dispute, like they're calling this, but there was
11   an arbitral panel and there were three
12   arbitrators.
13              THE COURT:  Right.
14              MS. EMERY:  One of them was Arbitrator
15   Goldberg.  And they just filed a motion in the
16   bankruptcy court to vacate the arbitration because
17   they found numerous e-mails of ex parte
18   communication.
19              THE COURT:  But you have not alleged that
20   in any document in this lawsuit.
21              MS. EMERY:  I can't because I just got
22   the documents.
23              THE COURT:  All right.  All right.
24              Well, then, let's go forward.
25              What else have you alleged that you rely
```

48

1    on to upset the arbitration, to -- to set it
2    aside?
3              MS. EMERY:  Well, first of all, from day
4    one, they didn't tell me about it.  The very first
5    pleadings they filed --
6              THE COURT:  And when you say "didn't tell
7    me about it," you're saying that in your view they
8    had an obligation, the union had an obligation to
9    disclose to you --
10             MS. EMERY:  Um-hum.
11             THE COURT:  -- that it had utilized the
12   arbitrator over a number of years.
13             MS. EMERY:  No.
14             Well, yeah, they did have -- the
15   arbitrator did have that duty to disclose.
16   Nobody, that I know of, had any knowledge that
17   they had used him over the years.
18             THE COURT:  Well, but let's talk about
19   you and what you've alleged now.  Because this
20   comes under -- you're suggesting, if I understand
21   you, that the arbitration should be set aside, and
22   you're saying that either the arbitrator or the
23   union should have disclosed that they had this
24   relationship over a number of years.  And the
25   "relationship" being the man had arbitrated other

49

1   claims?

2          MS. EMERY:  That had -- that was just

3   become known to me.  That wasn't the reason I

4   brought this suit.

5          THE COURT:  Okay.  Then let me come back,

6   then.  I want to try and make sure I understand.

7          What are you relying on to say this

8   arbitration should be set aside?

9          MS. EMERY:  Well, APA has a duty of fair

10  representation.  From day one, they sought to

11  dismiss my challenge claiming no duty of fair

12  representation, that I had been active --

13  inactive, for more than five years, I no longer

14  had had a seniority number, and they had no duty

15  of fair representation to me.

16         In 2013 is the very first time that APA

17  told me I was terminated, while I'm sitting there

18  for eight years.

19         THE COURT:  So, if I understand what

20  you're saying -- I know you don't agree with what

21  the union did, but I -- I take it you're saying

22  that, despite what you put before the arbitrator,

23  despite what the union put before the arbitrator,

24  you think the arbitration should be set aside

25  because the union was taking positions that were

50

1    adverse to you?

2         MS. EMERY:  Adverse to me what they had a

3    duty to represent me.

4         Not only adverse to me, they took -- they

5    made false and misleading statements to the

6    arbitrator and that's what -- when they filed a

7    motion to dismiss, Judge Ryskamp or Hopkins ruled,

8    she can argue this.

9         THE COURT:  You know, let me tell you

10   what -- when you say that, what comes to my

11   mind.

12        And I understand it's the union overlay

13   that kind of puts this in a different picture, but

14   often times in court you have two parties who are

15   completely opposed to each other, but that's like

16   saying, my opponent was putting forth arguments

17   which, by the way, I overcame, at least somewhat,

18   but they shouldn't have done it in the first place

19   and therefore you ought to upset the whole thing.

20        MS. EMERY:  No, judge, they have a duty

21   to be truthful, and they have a duty of fair

22   representation.

23        THE COURT:  But doesn't the arbitrator

24   make that judgment?  The arbitrator has the

25   benefit of listening to you and your witnesses,

1   and the arbitrator has the ability to listen to

2   the union and its witnesses.  It -- if -- if

3   the -- if a party to the arbitration comes in and

4   says, I was partially successful, but you ought to

5   upset the whole thing because my opponents came in

6   with some testimony that I think was untruthful.

7   That seems to be what you're saying.

8           MS. EMERY:  Yeah, Judge, but they do have

9   a duty to be truthful, since they are my union.

10   If it was an adversary with Joe Blow and they're

11   suing me for a car wreck or something, they still

12   have a duty to be truthful.

13           THE COURT:  Would you agree the standard

14   has to be higher than I just don't agree with what

15   they said?  Don't you have a standard to prove

16   they tried to come in and commit a fraud upon the

17   arbitrator?

18           MS. EMERY:  They -- I don't know if the

19   standard is -- it says, hostile.  They were

20   hostile to me.  They made false representations to

21   the arbitrator that they knew were not true.  APA

22   knows I was -- they told the arbitrator I was on

23   disability five -- more than five years, and I was

24   removed from the seniority list.

25           THE COURT:  But didn't you tell him the

52

1   opposite?

2          MS. EMERY:  To the best that I could but

3   it was a very rushed procedure.  The arbitrator --

4   in my particular case, I went to the hearing --

5          THE COURT:  How long did it last?

6          MS. EMERY:  There was a motion to

7   dismiss.

8          THE COURT:  Yeah?

9          MS. EMERY:  And I had to fly all the way

10  to Dallas to argue the motion to dismiss.  I had

11  very little time because it was a --

12         THE COURT:  But how long did the

13  arbitration proceeding itself last?

14         MS. EMERY:  Well, it lasted a period, I

15  believe, of two days.

16         THE COURT:  So two days of arbitration?

17         MS. EMERY:  Right.

18         THE COURT:  Where did it take place?

19         MS. EMERY:  In Texas.

20         THE COURT:  Did you represent yourself or

21  have counsel?

22         MS. EMERY:  I had to represent myself

23  because I've been out of pay for eight years.

24         THE COURT:  Right.

25         MS. EMERY:  So I went to the arbitration.

53

1    The thing that bothers me about the arbitration

2    is, the pilot before me, he got about a four-hour

3    argument and he got to call multiple witnesses.

4    The APA, in one of my requests for witnesses, they

5    wrote, we will allow her to question a person, one

6    person.  It turns out the pilot before me that got

7    four silos, that's been on disability, for ten

8    years now, cannot hold a medical, had an ERISA

9    case pending, all of the factors that applied to

10   me pretty much applied to him, he got $135,000 --

11            THE COURT:  But, without looking at the

12   end result, here's the thing:  You appear before

13   an arbitrator.  I assume the arbitrator set the

14   rules of the arbitration, didn't he?  Who -- for

15   instance, did anybody say to you, you could not

16   call witnesses?

17            MS. EMERY:  Yes.

18            THE COURT:  Who said that to you?

19            MS. EMERY:  The arbitrator.  He said, "I

20   will give you one witness."  As I was proceeding

21   in my argument, I was -- maybe argued about an

22   hour and I was just getting to the meat of the 11D

23   argument --

24            THE COURT:  Yeah?

25            MS. EMERY:  And I couldn't have been

54

1    terminated under this 11D because I had sick leave

2    of absence and they can only terminate you under

3    11D if you exhausted your sick leave of absence.

4    So, getting to the meat of the argument, he says

5    it's been a long day, you have fifteen minutes.

6    So my argument was pretty much shut down.

7            I did get to file a brief, after the

8    fact, but the fact is similarly-situated pilots --

9    there were eleven pilots, most of them who didn't

10   even appear, got a full equity share.  Some of

11   them were terminated, because they committed a

12   felony.  There's one pilot who committed a felony.

13   He can't hold TSA clearance for at least ten or

14   twelve years.  He got a full equity share, because

15   the APA treated him in accordance with this

16   document that I believe I should be treated the

17   same.  A pilot who has been terminated by the

18   company, as of January 1, 2013, but has not

19   completed the grievance process, will be

20   considered an active pilot for the distribution.

21           We have about eight of them who had

22   substance abuse problems that some showed up

23   testing positive for drugs or alcohol, and were

24   terminated, awaiting their grievance.  They got a

25   full equity distribution.  We have one pilot who

55

1   has a substance abuse problem.  He's identical to

2   me, in that he had a medical condition.  He was

3   out the exact same period of time.  He was

4   terminated practically on the same date.  But APA

5   alleges he was terminated because the company

6   asked him to come in and submit to a medical.  He

7   refused to do so, twice, so they terminated him

8   for insubordination.  His grievance, he can't hold

9   a medical.  He just sent me a copy of his FAA

10  request for a medical.  It's been denied.  It's

11  been ten years.  He got a full equity

12  distribution.  He's identical to me.  He didn't

13  have to show up.  But he -- he was awarded that

14  by the APA.

15          We have a -- another pilot, they -- they

16  allege that --

17          THE COURT:  I want to come back here.  I

18  understand how upsetting this must be to you, when

19  you compare your situation to other people, and

20  frankly you feel you are far distinct, and have a

21  much more meritorious claim.

22          The problem that I am going to have to

23  wrestle with, I think, if I get to your second

24  point, is:  Looking at infirmities in the

25  arbitration proceeding and deciding whether they

56

1    are so serious that you should vacate, literally,

2    and set aside the arbitration award, and you've

3    told me that you were limited to calling one

4    witness, there was the failure to disclose, the

5    fact that the arbitrator had previously worked for

6    the union as an arbitrator.

7            Is there anything else that you point to

8    that you think would justify upsetting the

9    arbitration award?

10           MS. EMERY:  Well, throughout the

11   procedures, APA told the arbitrator I only sought

12   to be put back on disability.  They know that is

13   not true because they have letters from me asking

14   for my arbitration, they have letters from me

15   saying that --

16           THE COURT:  Now this goes back to what

17   you said to me before.

18           MS. EMERY:  2007 --

19           THE COURT:  You were not asking to be put

20   back on disability; you were asking to be put back

21   on work.

22           MS. EMERY:  To get clearance --

23           THE COURT:  To get the medical clearance

24   to go back to work.

25           MS. EMERY:  Even if I had gotten a

57

```
 1    section twenty evaluation, which I was entitled

 2    to --

 3              THE COURT:  Yeah.

 4              MS. EMERY:  -- and the company decided

 5    I was disabled, they would have to put me in this

 6    paid withhold status first --

 7              THE COURT:  What does that mean, "paid

 8    withhold"?

 9              MS. EMERY:  It's like an administrative

10    status while doing investigation.

11              THE COURT:  Okay.  Movement or awaiting

12    training.  One time to go to Washington to do

13    politicking, one time to wait for training, when

14    they got rid of the aircraft I was on.  Numerous

15    times, I've been on it.  When they medically

16    disqualified me, I was on paid withhold probably

17    four months going through a medical evaluation.

18              THE COURT:  Okay.

19              MS. EMERY:  So paid withhold is full paid

20    pilot status, paid pilot, been aligned, like a

21    policeman put in an administrative status, and a

22    company would either decide okay she's not

23    disabled, we already said she was, and the PBA

24    wasn't, and the PBAC said she wasn't, and a

25    Federal Court said she isn't, so we're going to
```

1    take her back, or we're going to put her back on

2    disability, which is what they did for my friend,

3    Lawrence Meadows (phonetic).  He lost his Federal

4    appeals.  He was identical to me.  He got put back

5    on disability but he got four silos.  Because, he

6    was treated as sufficiently likely to prevail on

7    his grievance.

8              THE COURT:  Is that what you're -- I mean

9    I know there's a second part of this lawsuit that

10   deals with the web page.  But is that what you're

11   saying, that you want either the four silos or --

12   or what?  To go back to arbitration?

13             MS. EMERY:  No, just the four silos.  I'm

14   not asking to set aside the arbitration.

15             THE COURT:  Yes?

16             MS. EMERY:  I'm just asking to modify my

17   award.

18             THE COURT:  You want the other two silos.

19             MS. EMERY:  Or the equivalent thereof.

20             At one point, APA had a claim reserved.

21   Tried to ask for it in claim reserve, saying you

22   made a mistake.  Giving other pilots, after the

23   decision and award, like me designated as MDD who

24   according to the arbitrator's award would have

25   only gotten two silos.  They made a decision, six

59

1    months after the decision and award, and gave him

2    the full amount.

3              THE COURT:  All right.  Well, thank you.

4    I'm going to turn back if I might now to the other

5    side to give them the benefit.  This time has gone

6    by fast.  You've been very helpful setting out --

7    of course, I have your brief which has been

8    helpful, too.

9              Counsel, do you want to come on up and

10   let me give you your five minutes?

11             MR. DALMAT:  Thank you, Your Honor.

12             The fundamental point here is that all of

13   the arguments you heard from Miss Emery today she

14   made to the arbitrator.  All the distinctions that

15   she tried to draw between her and other pilots, or

16   all the similarities she tried to draw, she made

17   those points to the arbitrator.  He ruled them, he

18   ruled, and he ruled in her favor.  She won.  She

19   won two silos and to the extent he distinguished

20   her from other pilots, all of that was based on

21   record evidence.

22             The scope of her testimony spanned

23   sixty-nine pages of transcripts.  She says she got

24   to examine only one witness.  That's not true.

25   She examined two.  She asked initially for a

1    third, Chuck Harriston.  The arbitrator said,

2    we'll listen to your testimony and, when you're

3    done, let me know if you still need Chuck, and she

4    waived that, at the end.  So she got to examine

5    every witnes that she wanted to --

6              THE COURT:  Do I have the transcript of

7    the arbitration proceeding in the Court file?

8              MR. DALMAT:  You do.

9              THE COURT:  Okay.

10             MR. DALMAT:  I believe it's an exhibit to

11   the Meyers' declaration, I don't know which one.

12             THE COURT:  Okay.

13             MR. DALMAT:  So that's the essence of the

14   case, and I think that's enough for you to resolve

15   it right there.  Just a few quick other points and

16   then I will submit.

17             Her notion that -- that in -- when there

18   is an intraunion dispute, a dispute between pilots

19   represented by the union, that somehow each and

20   every pilot has veto power over the arbitration,

21   that's just not a workable system and the Seventh

22   Circuit, Judge Posner writing, said you don't have

23   to do it that way.  So did the Second Circuit, in

24   Buzz Denham (phonetic).  Those cases are cited

25   to --

61

1          THE COURT:  I'm not sure what you're
2    suggesting, though.
3          MR. DALMAT:  I'm suggesting that she
4    implicitly authorized the union to act on her
5    behalf --
6          THE COURT:  By becoming a member of the
7    union?
8          MR. DALMAT:  Correct.
9          THE COURT:  And so, having done that, if
10   the union, with the employer, developed this
11   process for arbitration, you're saying it's
12   binding on the members of the union.
13         MR. DALMAT:  Yes.
14         THE COURT:  And Miss Emery's effort today
15   to say, well, it's kind of nonbinding arbitration,
16   your view is you just can't do that.
17         MR. DALMAT:  Correct.
18         THE COURT:  It's a binding arbitration
19   procedure.
20         The real issue, from your point of view,
21   is:  Has the Plaintiff come up with anything that
22   would allow a Court, on a principle basis, to not
23   enforce the arbitration.  And you say the answer
24   to that is no, if I understand you correctly.
25         MR. DALMAT:  Exactly right, Your Honor.

62

```
 1              THE COURT:  Okay.
 2              MR. DALMAT:  And just two other brief
 3      points --
 4              THE COURT:  Yeah.
 5              MR. DALMAT:  -- and then I will sit down.
 6              THE COURT:  Yes.
 7              MR. DALMAT:  She says today -- and she
 8      made this argument to the arbitrator but I just
 9      want to make it clear because it's important --
10      that her grievance -- although it challenged the
11      disability, it also had a small component about
12      this paid withheld status and that somehow is
13      equivalent to a back-to-work request.  It's not.
14      She told you today -- and I agree with her --
15      that paid withheld is equivalent to an
16      administrative leave status.  That's a temporary
17      status; it's not permanent employment.  And, at
18      the very most, it could have extended only until
19      her grievance was denied in November 2008.  That's
20      when the grievance was initially denied.  So, at
21      the very most, she could have asked for temporary
22      paid leave until American made a decision while it
23      was investigating.  It did make that decision five
24      years before the eligibility date.  Paid withheld
25      can't get her, point one.
```

63

1            And, point two, she tells you today that

2      she really wanted to go back to work, but for

3      years after that she took disability benefits from

4      APA, she took disability benefits from the Federal

5      government, SSDI, and -- not after that from

6      American but she did file a lawsuit asking for

7      disability benefits from American and making

8      representations that she was entitled to them

9      after 2007.  So the positions she's taking in

10     court today are inconsistent with her receipt of

11     years and hundreds of thousands of dollars worth

12     of disability benefits from both APA and the

13     government.

14            Unless Your Honor has any further

15     questions --

16            THE COURT:  I don't.  Thank you all very

17     much.  I appreciate it.  I am going to try to get

18     an order out just as quickly as I can.

19            I urge you all to move forward with your

20     mediation before Judge Grannon (phonetic).

21            You know, I want to just point out, and

22     I've said it to litigants in other cases, when

23     people come to court --

24            And is this set for jury trial,

25     by the way?

64

```
 1              MR. DALMAT:  It is, Your Honor.
 2              THE COURT:  When people come to court and
 3    do that, what you're really saying to the jury is,
 4    we have this dispute, we've tried to settle it
 5    ourselves and we can't do it, and so we ask --
 6    whatever the number of jurors are -- to listen to
 7    you and then try to come back with a decision.
 8    They try very hard but I'm firmly convinced that
 9    it's when people themselves come to an agreement
10    usually they can live with it.  I think we all
11    agree -- we've got two parts to this lawsuit.  And
12    whether the arbitration is binding, that's a legal
13    decision, and whether someone's come up with
14    enough to upset an arbitration, that's a legal
15    decision, too.  And I think we all understand that
16    those are pretty high hurdles.  There's another
17    part to the lawsuit that obviously you folks are
18    looking at.  So, I hope that when you go in to see
19    Judge Brannon (phonetic) you'll exercise your best
20    efforts.  I know you came very close, I think,
21    once before, to try to put this behind you and
22    to -- and to move on with life.  So, I'll wait to
23    see if Judge Brannon has any good news but, if
24    not, please, know I'll get to this right away and
25    look forward to seeing you on the November
```

65

1   December calendar and move this forward.

2             MS. EMERY:  Any chance I can say one more

3   thing?

4             THE COURT:  I have a load of lawyers

5   waiting in the hallway to come in and we've

6   already gone through their time.  Once again,

7   thanks again for being nice to put it off till

8   1:30.  I think we had a better, less-hurried kind

9   of approach.

10            Mr. Marshall, would you tell the parties

11  in the next case that they can come in?

12            THE BAILIFF:  Yes, Your Honor.

13            (Proceedings concluded at 2:30 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

66

```
 1                    CERTIFICATE OF REPORTER

 2

 3         I, Jill Ann Sheridan, Registered Professional

 4    Reporter, in and for the United States District

 5    Court for the Southern District of Florida, do

 6    hereby certify that pursuant to Section 753, Title

 7    28, United States Code that the foregoing is a

 8    true and correct transcript of the

 9    stenographically reported proceedings held in the

10    above-entitled matter and that the transcript page

11    format is in conformance with the regulations of

12    the Judicial Conference of the United States.

13

14         Dated this 2nd day of November, 2016.

15

16

17    _____

18    Jill Ann Sheridan, R.P.R.
      Phipps Reporting

19

20

21

22

23

24

25
```

DocuSigned by:

*Jill Ann Sheridan*

461F102264BC4ED...

**A**

**a.m** 1:14 6:14
**AA** 39:7
**AAA** 44:22
**ability** 11:18
  13:12 51:1
**able** 12:10 16:11
  16:11 19:21
  30:4
**above-entitled**
  66:10
**absence** 39:4
  54:2,3
**absolutely** 9:9
  20:21
**abuse** 54:22
  55:1
**accept** 32:25
  33:14
**accepted** 34:1
**accommodate**
  3:3
**accommodation**
  39:24 41:17
**accompanied**
  7:5
**accorded** 17:5,6
  17:14
**account** 34:10
**act** 8:15 11:16
  24:21,25 25:5
  26:4,7 27:16
  27:17,21 29:9
  29:12 30:11,21
  30:24 34:24,25
  35:1,11,12,13
  35:16,19 36:12
  36:14,18 43:21
  61:4
**action** 10:3
  18:24 31:11
  37:10
**actions** 21:2
**active** 18:2
  49:12 54:20
**activity** 20:5

**add** 12:1
**addition** 4:17
**additional** 14:18
**address** 14:6,8
**addressed** 9:13
  10:5 11:11
**adjustment** 35:2
**administrative**
  57:9,21 62:16
**adversary** 51:10
**adverse** 50:1,2,4
**advises** 33:9
**afraid** 30:1
**afternoon** 6:16
  7:1 8:6
**ago** 35:23
**agree** 19:5 27:24
  28:4,4 33:7
  36:11,21 49:20
  51:13,14 64:11
**agreed** 10:20,25
  11:1,9 13:5
  16:21 62:14
**agreement** 3:21
  3:22,23 8:13
  10:14,15,18
  11:23 13:10
  23:8 33:5
  41:22 64:9
**agreements** 4:7
  11:20,25 17:10
**ahead** 27:2
**aircraft** 57:14
**airline** 25:10
  45:19
**airlines** 9:24
  25:10,12,13,15
  25:24 33:6
  39:20 42:14
**Airlines'** 20:10
  41:15
**alcohol** 54:23
**aligned** 57:20
**allegation** 18:5
**allege** 47:1 55:16
**alleged** 46:20
  47:19,25 48:19

**alleges** 33:4 55:5
**Allied** 1:7 6:19
  7:3 8:7 11:5
**allocate** 13:21
**allocated** 10:21
  10:21
**allocating** 7:15
**allocation** 9:9
  33:18
**allow** 2:22 5:9
  29:16,21 53:5
  61:22
**allowing** 6:20
**amendment**
  10:9
**American** 9:10
  9:23 10:13
  11:23 13:11,11
  13:14 15:21
  18:18,19,23
  19:5,24 20:10
  21:22 25:9
  32:8,18 33:5,9
  39:19 41:4,15
  42:14 47:7
  62:22 63:6,7
**American's** 19:1
**amount** 26:22
  59:2
**ample** 11:21
**Ann** 1:23 66:3
  66:18
**answer** 37:15
  61:23
**anybody** 3:21
  53:15
**Apa** 9:11,15
  10:10,13 11:23
  12:4,21 13:4
  13:11,15 15:24
  15:24 16:2,11
  17:9,12,13
  18:6 19:5,9,19
  19:20 20:13
  21:13,16 22:9
  23:4,9,11,16
  29:8,9 30:15

**32:1,8,13,15**
  32:18 33:9,17
  34:9 35:22
  37:3,8,21 38:3
  38:12,16 40:16
  42:2 43:24
  44:2,11,25
  46:11 49:9,16
  51:21 53:4
  54:15 55:4,14
  56:11 58:20
  63:4,12
**APA's** 13:12
  15:19 16:16
  17:22 18:25
  20:11 21:2
  29:6
**apart** 4:19
**apex** 23:21
**apologize** 5:25
**Apparently** 34:9
**appeal** 4:12
  32:20 38:25
**appealed** 32:14
**appeals** 32:21
  58:4
**appear** 53:12
  54:10
**appearances**
  6:21
**appeared** 46:25
**applied** 53:9,10
**appreciate** 5:24
  6:11 63:17
**approach** 65:9
**appropriate**
  27:7
**approved** 12:18
  38:20 40:7
**approximately**
  31:24 44:3
**April** 14:17
  22:19
**ar** 41:25
**arbitral** 14:3
  24:13 31:8,9
  31:15,19 37:21

**44:22 47:11**
**arbitrarily**
  29:13
**arbitrated** 48:25
**arbitration** 3:17
  3:20,23 4:7,19
  8:11,12,13,16
  9:5 10:22,25
  11:3,19,24
  12:21 13:1
  14:11,13 20:20
  23:8 24:5,21
  24:25 25:20
  27:6,18,23
  28:22,24 30:21
  30:23 31:4,5
  33:13 34:16,25
  35:1,16,17,23
  35:25 36:2,10
  36:14,24 41:14
  42:3,19 43:14
  43:19,20,22
  44:3,25 45:5
  46:22 47:6,16
  48:1,21 49:8
  49:24 51:3
  52:13,16,25
  53:1,14 55:25
  56:2,9,14
  58:12,14 60:7
  60:20 61:11,15
  61:18,23 64:12
  64:14
**arbitrations**
  25:18
**arbitrator** 12:22
  12:23 13:2,4
  13:15 14:3
  15:1,17 16:21
  16:24 17:4,14
  17:19 18:7
  21:4,5,7,10
  22:7 23:8,13
  27:8 29:1,3
  37:1,2,4,6,11
  43:1,3 44:4,9
  44:11,17,24

45:2,6,22,23
46:12,17,22
47:5,14 48:12
48:15,22 49:22
49:23 50:6,23
50:24 51:1,17
51:21,22 52:3
53:13,13,19
56:5,6,11
59:14,17 60:1
62:8
**arbitrator's**
14:21 15:11
37:18 58:24
**arbitrators**
35:25 47:11
**argue** 50:8 52:10
**argued** 28:12
44:25 53:21
**argument** 16:19
17:22,22 18:7
27:22,23 32:23
37:19,20 45:12
53:3,21,23
54:4,6 62:8
**arguments** 7:16
50:16 59:13
**article** 9:18
**aside** 36:6 48:2
48:21 49:8,24
56:2 58:14
**asked** 27:14 55:6
59:25 62:21
**asking** 28:3 34:2
34:15 56:13,19
56:20 58:14,16
63:6
**asks** 41:12
**assertions** 3:24
**assigned** 39:19
**association** 1:7
6:19 7:3 8:7
9:20 10:4 11:5
13:25 32:12
41:11
**assume** 9:1
21:11 33:20

34:16,18 35:5
36:17,20 53:13
**assumed** 21:7
**attach** 31:22
**attempted** 39:6
**attention** 45:15
**attorney** 19:4
**August** 42:10
**authority** 10:11
11:19,21
**authorized** 61:4
**automatically**
34:4
**available** 19:9
**Avenue** 1:19
**awaiting** 32:2
38:15 41:14
42:7 54:24
57:11
**award** 3:17 8:16
8:20 21:11
24:13 27:18
28:24 29:6
31:17 34:1,4,5
35:24 36:24
56:2,9 58:17
58:23,24 59:1
**awarded** 33:23
55:13
**awhile** 28:9

___
**B**
**back** 5:2 6:1
8:24 19:21
24:19 27:14
36:6 39:11
40:15,17 44:12
49:5 55:17
56:12,16,20,20
56:24 58:1,1,4
58:12 59:4
63:2 64:7
**back-to-work**
62:13
**background**
25:3
**backup** 2:10

**bad** 29:9,11,13
**BAILIFF** 65:12
**bankruptcy**
9:11 15:25
42:14 47:16
**bargaining**
10:14 11:18
26:15 41:22
**based** 12:4 17:1
17:7 18:9,13
29:6 33:17
44:21 59:20
**basic** 33:1
**basically** 40:12
**basis** 4:20 19:14
61:22
**BEACH** 1:25
**becoming** 61:6
**beginning** 32:23
**behalf** 7:3 11:20
61:5
**believe** 10:16
11:16 14:15
17:11 34:3
35:2 40:16
41:24 44:21
52:15 54:16
60:10
**believed** 39:13
**benefit** 21:19
41:5 50:25
59:5
**benefits** 17:24
18:4,19,23
32:8,15 39:18
40:24 41:8
63:3,4,7,12
**best** 5:22 31:5
52:2 64:19
**better** 26:20
65:8
**biased** 45:2
**big** 37:19,20
**bilateral** 11:23
**billion** 41:6
**binding** 11:25
31:12,13 32:10

41:10 61:12,18
64:12
**bit** 2:3 9:25
**Blow** 51:10
**board** 12:18
13:14 35:2,19
37:12 38:20
44:13
**board-approved**
12:9
**boil** 17:17
**boils** 17:18
**Bond** 36:1
**Bonduraut**
26:25
**bothers** 53:1
**Brannon** 64:19
64:23
**break** 5:1,25 8:9
**brief** 7:20 26:24
54:7 59:7 62:2
**briefed** 8:14
**brought** 22:11
24:15 49:4
**buckets** 16:25
**buried** 44:11
**Burley** 11:14
**busy** 3:2
**Buzz** 60:24
**bylaws** 9:15
10:10 11:8
30:14

___
**C**
**calculation**
28:13
**calendar** 5:4
65:1
**call** 31:9 37:22
53:3,16
**called** 2:8 11:12
20:6 38:14
**calling** 47:10
56:3
**captain** 19:18
**car** 51:11
**care** 39:18

**carefully** 35:4
**case** 4:11,11 5:4
5:20 6:17,18
8:13 9:22
11:11 13:17
17:17 18:5,10
21:4,23 23:16
25:23,24 29:7
46:17,18 52:4
53:9 60:14
65:11
**cases** 11:16 22:1
22:2 26:22
60:24 63:22
**caused** 21:2
**cede** 11:18
**certain** 30:10
**certainly** 9:7
**CERTIFICATE**
66:1
**certified** 43:25
44:1
**certify** 66:6
**cetera** 19:18
**challenge** 10:1
15:18 24:13
38:11 49:11
**challenged**
62:10
**challengers** 37:3
**challenging** 29:6
**chance** 65:2
**changed** 4:5
**chief** 39:3,10
**choose** 13:12,15
**Chuck** 60:1,3
**Circuit** 25:23
60:22,23
**cite** 25:22
**cited** 11:10
25:21 26:23
60:24
**claim** 13:3 17:7
17:11 23:6
24:15 55:21
58:20,21
**claimed** 3:21

**claiming** 23:11
28:18 49:11
**claims** 23:6 49:1
**class** 26:15
**clear** 62:9
**clearance** 39:25
41:2 54:13
56:22,23
**clearly** 23:4 24:5
**Clematis** 6:7
**clipboard** 40:13
**close** 64:20
**closed** 31:19
**closer** 6:8
**Co-counsel** 7:13
**Code** 66:7
**colleagues** 27:11
**collective** 10:14
41:22
**come** 5:2 24:18
29:21 36:6
40:2,11 45:14
49:5 51:16
55:6,17 59:9
61:21 63:23
64:2,7,9,13
65:5,11
**comes** 48:20
50:10 51:3
**coming** 12:20
**commit** 51:16
**committed**
54:11,12
**committee** 12:19
12:19 15:23
16:11
**communication**
47:18
**company** 10:19
13:19 17:11
19:4,12 41:11
54:18 55:5
57:4,22
**compare** 55:19
**compensate**
16:10
**compensated**

**44**:18,21
**completed** 54:19
**completely**
50:15
**complex** 42:12
**compliance**
35:11,11
**complied** 21:16
23:9 28:24
**comply** 29:2
**component**
62:11
**compushare**
34:10
**computer** 1:22
**concessionary**
16:1
**concluded** 43:1
65:13
**conclusive** 20:25
21:1
**condition** 55:2
**conduct** 29:11
39:16
**conducted** 8:12
**conference** 2:24
66:12
**conformance**
66:11
**Connecticut**
1:19
**consequence**
33:21
**considered**
54:20
**considering**
17:22
**consisted** 35:25
**constitution**
9:12,15 10:10
11:7 30:14
**constitutional**
11:22
**construed** 31:11
**contains** 15:11
**contemplates**
13:13

**contemporane...**
19:8
**contentions** 13:1
**contesting** 27:18
**context** 2:22
26:9
**continue** 2:21
18:21
**contract** 15:25
16:2,3,13
17:12 39:17
**convinced** 64:8
**copy** 55:9
**corners** 38:19
**correct** 15:13
18:8,9,13 21:9
21:13 22:5
23:1,23 24:2,9
24:11 25:16
33:20 40:5,6
40:25 42:17
45:7 46:9 61:8
61:17 66:8
**correctly** 61:24
**corruption** 8:20
29:3
**counsel** 6:25
7:10 46:11
52:21 59:9
**couple** 13:9
19:11 35:23
**course** 2:13 13:3
14:16 59:7
**court** 1:1 2:2,6,8
3:8,14 4:12 5:7
5:14,25 6:6,16
6:17,24 7:4,7,9
7:13,23 8:3,21
9:16 10:23
11:11,13 12:2
12:7,15,25
13:8,23 14:7,9
14:12,20,24
15:4,8,10,14
16:3,6,23
17:21 20:15,19
20:22 21:6,10

21:15,18,23,24
22:3,6,10,13
22:20,23 23:1
23:17,24 24:3
24:10,12,18,23
25:2,6,8,14,17
26:1,8 27:2,13
27:24 28:3,17
28:22 29:14,19
30:1,2,6,16
31:14,21 32:3
32:6,11,22
33:10,19 34:6
34:12,21 35:3
35:13 36:5,8
36:16,20 37:5
37:13,15,24
38:24 39:21
40:3,8,20 41:3
41:20 42:11,18
42:22,25 43:8
43:11,13,18,23
44:1,7,15 45:3
45:8,13,16,21
46:4,19 47:1,8
47:13,16,19,23
48:6,11,18
49:5,19 50:9
50:14,23 51:13
51:25 52:5,8
52:12,16,18,20
52:24 53:11,18
53:24 55:17
56:16,19,23
57:3,7,11,18
57:25 58:8,15
58:18 59:3
60:6,7,9,12
61:1,6,9,14,18
61:22 62:1,4,6
63:10,16,23
64:2,2 65:4
66:5
**court-ordered**
5:12
**courts** 4:8,12
**covered** 35:18

**craft** 26:14
**created** 12:18,21
**criteria** 38:12,13
**criticize** 37:1
**cross-examined**
16:20
**cut** 18:23

**D**
**Dallas** 52:10
**Dalmat** 1:18 3:6
3:13 5:5,24 6:4
7:1,2,4,5,11,19
8:2,5,6 9:6,17
11:4,14 12:6,8
12:17 13:7,9
14:6,8,10,14
14:22 15:2,6,9
15:13,16 16:5
16:8,24 20:17
20:21,24 21:9
21:13,16,20,25
22:5,9,11,14
22:22,25 23:4
23:23 24:2,9
24:11,14,22
25:1,4,7,9,16
25:19 26:2,10
27:4,19 28:1,5
28:21,23 29:18
29:23 59:11
60:8,10,13
61:3,8,13,17
61:25 62:2,5,7
64:1
**Dana** 36:1,1
**DANIEL** 1:13
**Darin** 1:18 7:2
8:6 35:8
**database** 19:20
20:6
**date** 22:17 55:4
62:24
**Dated** 66:14
**day** 5:12 22:15
28:10 48:3
49:10 54:5

66:14
**days** 27:22
  28:10 35:23
  36:2 52:15,16
**DC** 1:19
**deadline** 42:3
**deal** 2:22
**dealing** 23:21
**deals** 30:24
  58:10
**dealt** 43:14
**December** 65:1
**decide** 57:22
**decided** 57:4
**deciding** 36:9
  55:25
**decision** 5:18
  14:18,21 15:1
  15:10,12,16
  17:3,4 20:20
  22:6 23:9,9,11
  24:10 31:16
  32:10 33:1
  35:24 37:18
  41:10 58:23,25
  59:1 62:22,23
  64:7,13,15
**declaration**
  10:16 12:13
  20:2,8 60:11
**defendant** 1:8
  1:17 7:17
  11:12
**Defendant's**
  3:11 7:14
**defense** 6:25
  41:12 43:2
**definition** 32:4
**definitively**
  30:18
**Delta** 25:24 35:2
**demanding** 8:17
**Denham** 60:24
**denied** 15:3
  55:10 62:19,20
**deny** 15:4
**department**

39:14
**depending** 27:20
**designated** 32:1
  58:23
**despite** 3:23
  49:22,23
**details** 23:15
**determining**
  26:19
**developed** 61:10
**devised** 15:23
**different** 4:20,20
  50:13
**difficult** 27:9
**digest** 5:9
**direct** 12:11
  18:12
**directly** 23:18
**directors** 38:20
  44:13
**disability** 17:24
  18:4,19,22,23
  21:19 32:8
  38:23 39:6
  40:17,19,21,24
  41:8 51:23
  53:7 56:12,20
  58:2,5 62:11
  63:3,4,7,12
**disabled** 39:1,9
  39:13,16 41:1
  41:9 57:5,23
**disagreement**
  24:4
**disclose** 43:24
  44:2,5 48:9,15
  56:4
**disclosed** 48:23
**disclosure** 44:16
**discretion** 9:21
**discriminatorily**
  29:13
**discussions** 3:10
**dismiss** 28:8,12
  49:11 50:7
  52:7,10
**dispute** 9:8,8

10:2,6,20 11:2
  12:19 13:18,19
  30:12 31:6,9
  31:13 32:24
  33:8 37:22
  46:10 47:10
  60:18,18 64:4
**disputes** 9:3,4
  10:12
**disqualified**
  37:7 39:8
  57:16
**disrespectful**
  29:25
**distance** 6:8
**distinct** 55:20
**distinctions**
  59:14
**distinguished**
  59:19
**distribute** 9:21
**distributed**
  26:20
**distribution**
  10:1 15:23
  16:9 26:16
  33:18 35:21
  38:4,8 42:1,13
  46:13 54:20,25
  55:12
**District** 1:1,1
  66:4,5
**divide** 7:17
**docket** 9:14 20:2
**doctor** 39:8,15
**document** 9:2
  9:18 10:17,17
  12:9,9,13 19:2
  31:7 38:8,18
  38:18,19,22
  46:13 47:20
  54:16
**documents**
  16:19 30:7
  33:4 47:2,22
**doing** 57:10
**dollar** 31:22

**dollars** 31:25
  41:6 63:11
**domiciled** 19:16
**doubt** 5:19
**downloaded**
  19:20
**draw** 59:15,16
**drug** 40:1,7
**drugs** 54:23
**duty** 24:16 26:5
  26:13 29:10
  37:25 44:16
  48:15 49:9,11
  49:14 50:3,20
  50:21 51:9,12

—————
**E**
**E** 1:4,16 6:18
**e-mail** 46:12,16
  46:24
**e-mails** 47:17
**early** 11:15
**effect** 16:7
**effectively** 45:5
**effort** 61:14
**efforts** 64:20
**eight** 26:23
  32:15,19 49:18
  52:23 54:21
**eightieth** 28:10
**eighty** 28:10
**Eishin** 36:1
**either** 8:18 22:4
  24:15 27:19
  29:12 48:22
  57:22 58:11
**eject** 33:14
**electronic** 19:19
**eleven** 31:25
  54:9
**Eleventh** 25:23
**Elgin** 11:12
**eligibility** 42:4,6
  62:24
**eligible** 43:4
**emanated** 33:12
**emerges** 26:3

**Emery** 1:4,16
  3:5 5:11 6:18
  6:22,23,23,24
  11:1,25 12:1
  13:13 14:10,25
  15:20 16:14
  17:21 20:14
  21:1,21 23:10
  24:15 29:17,21
  29:24 30:5,8
  31:3,24 32:4,7
  32:12 33:3,16
  34:3,8,23 35:8
  35:15 36:13,17
  36:25 37:8,14
  37:20,25 38:25
  39:22 40:6,9
  40:22 41:4,21
  42:17,21,23
  43:7,9,12,17
  43:20,24 44:10
  44:19 45:7,11
  45:14,20 46:1
  46:9,24 47:3,9
  47:14,21 48:3
  48:10,13 49:2
  49:9 50:2,20
  51:8,18 52:2,6
  52:9,14,17,19
  52:22,25 53:17
  53:19,25 56:10
  56:18,22,25
  57:4,9,19
  58:13,16,19
  59:13 65:2
**Emery's** 18:5
  27:11 61:14
**employed** 19:24
**employee** 34:10
**employer** 23:22
  61:10
**employment**
  18:3 19:8
  62:17
**enacted** 9:11
**encourage** 4:7
**enforce** 4:9

34:20 35:6
36:9,10 61:23
**enforced** 35:10
36:24 37:18
43:16
**enter** 10:11
11:19
**entitled** 16:17
16:21,25 22:7
23:5 33:23
57:1 63:8
**entitlement** 17:1
**equipment**
19:17
**equity** 9:9,23
10:21 12:8,9
12:19 13:21
15:20,22 16:17
16:21 17:1,7
23:6 26:16
31:18 33:17
35:21 38:4,8
38:13 42:1
54:10,14,25
55:11
**equivalent** 58:19
62:13,15
**ERISA** 53:8
**errors** 40:25
**especially** 23:6
**Esquire** 1:18
**essence** 60:13
**essentially** 4:8
12:17 13:12
27:4 29:12
**establish** 12:5
**et** 19:18
**evaluation** 39:16
57:1,17
**evaluator** 32:9
**event** 9:20
**everybody** 6:16
**evidence** 16:18
17:20,20 18:21
23:14 29:4
59:21
**ex** 46:21 47:17

**exact** 22:17 55:3
**exacting** 8:17
28:25
**exactly** 16:5
22:14 28:6
61:25
**examine** 59:24
60:4
**examined** 59:25
**exception** 38:14
**excluded** 38:16
**exercise** 64:19
**exhaust** 10:2
**exhausted** 10:7
54:3
**exhibit** 10:16
12:12 20:1,8
20:14 38:12
60:10
**explain** 19:11
26:11
**express** 25:20
**expressed** 13:11
**expressly** 10:20
**extended** 25:13
25:15 42:9,10
62:18
**extent** 16:10
23:10 29:5
59:19
**extra** 27:10
**extraordinary**
4:10
**extreme** 2:11

**F**

**F** 9:19
**F.2d** 25:25
**FAA** 55:9
**fact** 3:24 10:13
12:4 16:15
18:16,17 46:8
54:8,8 56:5
**factors** 53:9
**facts** 23:12
**factual** 22:23
**failed** 18:21 29:1

**failure** 56:4
**fair** 8:1 21:3
24:16 26:5
29:10 38:1
49:9,11,15
50:21
**fairly** 23:19
26:13
**faith** 29:9,13
**fall** 14:14
**false** 50:5 51:20
**familiar** 8:23
**far** 44:12 55:20
**fast** 59:6
**favor** 59:18
**favorable** 16:1
**Federal** 24:20
30:20 31:14
57:25 58:3
63:4
**feel** 30:6 33:16
55:20
**fell** 41:7
**felony** 54:12,12
**fifteen** 54:5
**fifteen-year** 44:4
**fight** 38:6,10
**figure** 31:22
**file** 19:19 37:6
38:11 54:7
60:7 63:6
**filed** 15:2 17:2,6
22:13,14 28:6
28:10 40:15
41:21 47:15
48:5 50:6
**files** 44:12
**final** 15:11 31:11
31:12 32:10
35:24 41:10
**find** 12:7 36:11
38:12
**fine** 3:6
**fired** 18:17
**firmly** 64:8
**first** 2:12 19:18
24:8 25:11

33:1 37:14
39:6 40:25
48:3,4 49:16
50:18 57:6
**firstly** 35:8 38:3
**fit** 32:4
**five** 2:17 4:13
29:16 49:13
51:23,23 59:10
62:23
**five-person**
13:14
**fixed** 26:21
**flip** 27:12
**Florida** 1:1,25
30:22 35:17
43:25 66:5
**Florida's** 24:24
**fly** 40:4 52:9
**flying** 15:21
16:12,14,15
18:2 19:17
**focuses** 8:10
**folks** 2:14 3:2
5:9 8:22 64:17
**follow** 34:19,22
35:6 41:4
**following** 6:14
**foreclosed** 33:25
**foregoing** 66:7
**form** 9:23
**formal** 17:13
**format** 66:11
**formula** 12:20
15:23 16:10
**formulation**
14:2
**forth** 50:16
**forty** 7:22 9:18
**FORUM** 1:24
**forward** 2:9
5:22 14:5 16:4
29:22 47:24
63:19 64:25
65:1
**found** 28:13
29:2 38:4

42:13 43:3
47:4,4,17
**foundation** 31:1
31:4
**four** 16:25 38:18
38:19 53:7
57:17 58:5,11
58:13
**four-hour** 53:2
**frame** 27:17
**frankly** 31:3
55:20
**fraud** 8:19 29:2
51:16
**fraudulent**
32:16
**free** 30:6 32:25
33:14
**friend** 58:2
**front** 12:22
25:22 37:9
**full** 2:25 3:10
21:3 31:18
54:10,14,25
55:11 57:19
59:2
**fully** 12:1
**fund** 34:4
**fundamental**
15:22 59:12
**funnily** 25:10
**further** 63:14

**G**

**gain** 35:20
**game** 26:17
35:22 42:4
**general** 46:11
**generally** 9:7
**generate** 19:21
**getting** 6:1
20:15 53:22
54:4
**Gia** 19:4
**give** 2:24 5:1
7:24 12:10
27:8,11 34:15

39:25 42:16
53:20 59:5,10
**given** 22:24
31:17 41:16
**gives** 3:9 27:10
**Giving** 58:22
**go** 8:24 13:15
14:5 15:14
20:22 27:2
33:15 34:14
35:4 47:24
56:24 57:12
58:12 63:2
64:18
**goes** 35:20 56:16
**going** 2:6 4:23
5:21 6:21 9:10
16:4 19:21
26:19 27:9
30:3,18 31:13
37:22 40:10,14
40:23 41:17
42:15 55:22
57:17,25 58:1
59:4 63:17
**Goldberg** 12:24
15:17 17:14,19
44:5 47:15
**good** 2:2 5:14,14
6:16 7:1,13 8:6
13:16 64:23
**gotten** 2:5 56:25
58:25
**govern** 16:4
**government**
63:5,13
**Grannon** 63:20
**grant** 15:4
**granted** 15:6
**grapple** 4:23
**grievance** 17:2
17:15,18,23
18:11,14,14
19:2,6 21:8
32:2 38:15
40:15,17 41:21
41:23 42:1,7

54:19,24 55:8
58:7 62:10,19
62:20
**grievances** 17:6
**grieved** 18:24
**group** 9:25 10:3
10:8
**guess** 3:14 13:4
23:17 24:18
30:17,23
**guidelines** 44:22
44:22

**H**

**hallway** 65:5
**happened** 21:18
40:9
**happens** 14:7
22:8
**happier** 39:5
**hard** 64:8
**harm** 21:2
**Harriston** 60:1
**hear** 2:22 4:4
**heard** 17:19
21:4 41:23,23
42:25 59:13
**hearing** 52:4
**hearings** 14:17
14:18 36:2
38:6
**held** 17:13 36:2
66:9
**help** 3:19 29:20
36:23
**helped** 27:15
**helpful** 4:17
59:6,8
**Henry** 25:23
**high** 64:16
**higher** 51:14
**highly** 12:22
**hired** 32:9,18
37:11 44:8,10
**Hoffman** 1:18
7:2,6,8,8,9,12
**hold** 53:8 54:13

55:8
**honestly** 21:20
**Honor** 3:5,6,13
6:5 7:1,19 8:2
8:5,9 15:9,17
20:18 21:20
22:25 24:22
25:1 26:12
29:23 59:11
61:25 63:14
64:1 65:12
**HONORABLE**
1:13
**hope** 64:18
**Hopkins** 50:7
**hostile** 51:19,20
**hour** 2:25 3:10
4:22 7:16
53:22
**Hudson** 26:25
**hundred** 28:9,10
41:7
**hundreds** 63:11
**hurdles** 64:16
**HURLEY** 1:13
**hurricane** 6:1

**I**

**identical** 55:1,12
58:4
**immediately**
40:15
**imperfections**
3:24
**implicitly** 11:6
61:4
**implied** 26:6
**important** 62:9
**improperly**
40:18,20 44:18
44:20
**inactive** 11:5
49:13
**included** 38:17
**including** 17:20
**inconsistent**
63:10

**incorrect** 45:17
**independent**
30:21 32:9
**infirmities** 55:24
**information**
19:14,19 20:6
20:7 46:21
**inherently** 27:5
**initial** 15:7,19
16:16 45:3
**initially** 25:14
59:25 62:20
**initiated** 37:21
**input** 37:4
**instance** 53:15
**insubordination**
55:8
**intent** 29:15
**interest** 27:23
**Interestingly**
31:16
**interests** 23:25
**internal** 20:11
41:15 47:9
**interrupt** 29:14
**intraunion**
60:18
**invalidates**
45:25 46:1
**investigating**
62:23
**investigation**
57:10
**invoke** 31:8,14
31:19 37:9
**invoked** 10:7
**Ira** 36:1
**irregularities**
3:25
**irregularity** 4:10
**issue** 14:1 20:19
21:19 26:16
46:2 61:20
**issued** 35:24
**issues** 3:15 4:2
30:24

**J**

**Jaffe** 36:1
**James** 1:18 7:2
**January** 36:3
42:7 54:18
**Jill** 1:23 66:3,18
**Joe** 51:10
**jointly** 32:9
**judge** 29:24
30:10 31:3
50:7,20 51:8
60:22 63:20
64:19,23
**judges** 2:19
**judgment** 3:12
5:8 7:15 28:20
50:24
**Judicial** 66:12
**July** 14:18
**jump** 3:16
**jumping** 12:3
**jurors** 64:6
**jury** 63:24 64:3
**justify** 56:8

**K**

**Kathy** 1:4,16
6:18,23
**keep** 5:22 29:25
**kept** 20:12
**kind** 14:5 30:21
32:23 33:5
50:13 61:15
65:8
**knew** 51:21
**know** 3:1 4:4,5
5:15,20 8:22
9:6 11:9 12:25
18:8,9,13
29:15 33:3
40:14 44:13,19
44:22 48:16
49:20 50:9
51:18 56:12
58:9 60:3,11
63:21 64:20,24
**knowingly** 18:6

23:12
**knowledge**
 48:16
**known** 8:17 49:3
**knows** 51:22

_____
**L**
_____
**Labor** 8:15
 11:15 25:5
 26:3,7 27:16
 27:17,21 30:11
 30:24 34:24,25
 35:1,14,15,19
 36:12,14,18
 43:21
**landscape** 4:5
**language** 18:14
 33:17
**largely** 20:25
 21:1
**lasted** 52:14
**late** 28:19
**law** 4:11,11 8:18
 30:15
**Lawrence** 58:3
**lawsuit** 3:15 4:2
 4:18 22:13,21
 23:3,5 27:25
 47:20 58:9
 63:6 64:11,17
**lawyers** 65:4
**lays** 26:2
**leave** 39:3 40:10
 54:1,3 62:16
 62:22
**lectern** 30:2
**left** 29:16
**legal** 10:3 11:21
 25:3 31:1,10
 33:21 34:6,21
 34:23 36:8
 37:10 44:13
 64:12,14
**legitimate** 35:5
**leisurely** 5:2
**length** 8:14
**less-hurried**

**65**:8
**let's** 4:25 15:14
 22:3 33:20
 34:16,17 35:5
 36:5 47:24
 48:18
**letter** 10:14,15
 10:18 13:10
 19:3 33:6 39:2
**letters** 56:13,14
**life** 64:22
**limbo** 39:23
**limit** 41:24
**limitations**
 22:16 24:17
**limited** 56:3
**list** 35:23 42:6
 46:7 51:24
**listen** 51:1 60:2
 64:6
**listening** 50:25
**literally** 56:1
**litigants** 63:22
**litigation** 3:18
 21:21
**little** 2:3 9:24
 13:24 52:11
**live** 64:10
**load** 6:6 65:4
**loads** 5:1
**locked** 38:8
**long** 5:21 37:11
 52:5,12 54:5
**longer** 39:1,9,15
 41:1,9 49:13
**look** 15:10 19:1
 19:7 20:4,9,11
 20:13 25:3,4
 27:16 36:9
 64:25
**looked** 28:8 46:3
 46:4
**looking** 9:12
 53:11 55:24
 64:18
**looks** 12:14
**lose** 20:1

**losses** 16:12
**lost** 32:20 38:25
 58:3
**lot** 4:10,11
**Lucretia** 19:3
**lump** 9:21,22
 10:2,5 12:5
**lumps** 43:15
**lunch** 4:22 8:9
**luncheon** 6:13

_____
**M**
_____
**M** 1:18
**magistrate** 28:1
**main** 28:23
**majority** 7:21
**making** 18:7
 27:23 63:7
**man** 48:25
**Management**
 35:14
**mandatory**
 42:23,23
**March** 22:18
**Marshall** 65:10
**materials** 41:18
**matter** 2:12,15
 2:18,21,23
 6:17 10:5
 66:10
**matters** 44:14
**MDD** 58:23
**Meadows** 58:3
**mean** 44:8 45:9
 57:7 58:8
**means** 19:6 26:9
**meat** 53:22 54:4
**mechanical** 1:21
**mediation** 5:12
 5:12 44:5
 63:20
**mediator** 44:1
**medical** 32:9,17
 39:2,7,14,16
 39:25 40:11,12
 41:2 53:8 55:2
 55:6,9,10

**56**:23 57:17
**medically** 39:8
 57:15
**medically-dis...**
 40:1
**medications**
 40:5
**meet** 2:19 3:9
 29:10
**meeting** 44:12
**member** 9:3
 11:4,5,6,6 14:1
 24:4,7 26:13
 44:23 61:6
**member's** 11:17
**members** 20:12
 23:20 24:1
 61:12
**membership**
 8:25 20:13
**mention** 35:9
**meritorious**
 55:21
**met** 28:25 46:11
 46:14
**Meyers** 12:12
**Meyers'** 20:2,8
 60:11
**mind** 29:25 46:8
 50:11
**minimum** 36:13
**minute** 10:24
**minutes** 2:17
 7:16,22,24
 29:16 54:5
 59:10
**misleading** 50:5
**misrepresented**
 18:6 23:12
 29:8
**mistake** 58:22
**modify** 58:16
**moment** 6:20
 8:24
**money** 13:21
 26:19 27:10
 34:9 43:10,15

**month** 22:15
 28:7,11 44:6
 46:14,15
**monthly** 19:14
 20:4
**months** 12:20
 14:16 22:17
 24:16 27:20
 31:18 32:15,19
 41:25 57:17
 59:1
**morning** 2:2
**motion** 3:11
 7:15 28:8,12
 47:15 50:7
 52:6,10
**move** 2:9 63:19
 64:22 65:1
**moved** 40:18,20
**Movement**
 57:11
**moving** 5:22
**multiple** 53:3

_____
**N**
_____
**nail** 38:10
**name** 7:2 8:6
**nationally-rec...**
 12:23
**necessarily** 27:9
 36:22
**need** 2:17 4:8,14
 6:2 23:14
 24:18 25:3,4
 27:15 30:1,18
 34:19 39:1
 60:3
**needed** 5:22
 40:2
**needs** 30:4
**negotiate** 10:13
**negotiated** 15:24
**neutral** 12:22
 13:6,8
**never** 17:25
 31:12 34:8
 39:12 45:1

**news** 64:23
**nice** 65:7
**Nineteen** 36:2
**nonbinding** 31:5
  32:24 33:4,13
  61:15
**Normally** 10:25
**noted** 26:12
**notice** 37:11
  41:8
**notified** 38:4
**notify** 40:25
**notion** 60:17
**November** 5:6,7
  62:19 64:25
  66:14
**number** 12:13
  19:6,7,16 20:1
  25:19 34:11
  36:25 45:22
  48:12,24 49:14
  64:6
**numerous** 47:17
  57:14
**NW** 1:19

**O**

**objected** 39:5
  42:19
**objection** 13:11
  13:15 14:11
**obligation** 23:19
  48:8,8
**obtain** 34:9
**obtaining** 38:13
**obviously** 64:17
**occasions** 46:12
**October** 1:14
  14:19,22 15:12
  22:18 36:3
**odds** 24:8
**officer** 19:18
**oh** 42:5 46:16
**okay** 5:7,10,23
  6:3,10 15:14
  21:15 22:10
  27:2,13 28:17

29:14 30:5,8
30:10 34:12
36:5,16 37:13
37:17 39:11
42:22 43:8,11
49:5 57:11,18
57:22 60:9,12
62:1
**once** 64:21 65:6
**one-thirty** 2:21
**onset** 44:2
**open** 28:5
**opening** 7:20
  26:24
**opinions** 4:13
**opponent** 50:16
**opponents** 51:5
**opportunity**
  21:3
**opposed** 33:22
  50:15
**opposite** 52:1
**opposition** 42:25
**option** 32:20
**order** 63:18
**originally** 42:15
**ought** 5:17
  50:19 51:4
**outside** 46:22
**overcame** 50:17
**overlay** 50:12
**overturning**
  8:16
**ownership** 34:6

**P**

**P.C** 1:18
**p.m** 65:13
**page** 9:17 10:17
  12:11 58:10
  66:10
**pages** 26:23
  38:18 59:23
**paid** 21:13 22:9
  41:13,13 57:6
  57:7,16,19,19
  57:20 62:12,15

62:22,24
**PALM** 1:25
**panel** 14:3 35:24
  35:25 47:11
**paper** 15:2
  18:10
**papers** 8:15
  11:10 28:8
**paragraph** 33:7
**part** 8:25 9:20
  15:4 34:1 38:9
  58:9 64:17
**parte** 46:21
  47:17
**partially** 51:4
**participate**
  38:10
**participated**
  12:1 46:23
**particular** 8:11
  9:8 12:11
  27:21 45:22
  52:4
**parties** 4:2 6:20
  11:1 33:7 37:3
  50:14 65:10
**parts** 4:18 64:11
**party** 44:24 45:5
  51:3
**passed** 25:11
**pay** 32:15 52:23
**payment** 9:21
  10:11
**PBA** 57:23
**PBAC** 38:25
  57:24
**pending** 21:24
  22:1 53:9
**pension** 41:5
**people** 55:19
  63:23 64:2,9
**perfectly** 27:6,7
**period** 24:12,17
  28:7 42:4,6,8,9
  52:14 55:3
**permanent**
  62:17

**person** 13:5 53:5
  53:6
**pertinent** 9:20
**Phipps** 1:24
  66:18
**phonetic** 7:22
  12:12 19:4
  26:25 27:1
  34:10 36:1
  58:3 60:24
  63:20 64:19
**physician** 39:19
**picture** 50:13
**piece** 18:9 19:8
**pierce** 23:11
**pilot** 9:25 10:3,8
  31:7 32:12
  38:2 39:3,10
  40:24 41:10
  53:2,6 54:12
  54:17,20,25
  55:15 57:20,20
  60:20
**pilot's** 41:1
**pilots** 1:7 6:19
  7:3 8:7 9:25
  10:3,8 11:5
  13:19,21 16:2
  16:4,10 17:6
  19:13,15 26:13
  26:20,21 30:12
  31:16,19 32:1
  41:8 47:6,7
  54:8,9 58:22
  59:15,20 60:18
**pilots'** 13:25
  38:9
**place** 1:24 14:13
  24:8 39:6
  50:18 52:18
**plain** 33:17
**Plaintiff** 1:5,16
  6:22,23 61:21
**plan** 3:9
**playing** 42:4
**plea** 2:13
**pleadings** 46:20

48:5
**please** 2:3 64:24
**pleases** 7:19
**point** 15:15 19:6
  19:7 22:20
  30:18 33:2
  45:3 55:24
  56:7 58:20
  59:12 61:20
  62:25 63:1,21
**points** 13:9
  59:17 60:15
  62:3
**policeman** 57:21
**politicking**
  57:13
**position** 17:13
  17:14,25 18:2
  18:18 27:9
  33:11,12 34:15
**positions** 49:25
  63:9
**positive** 54:23
**Posner** 60:22
**possibility** 5:20
**post** 6:1
**pot** 26:19
**power** 60:20
**practically** 55:4
**preceded** 16:2
**Precisely** 16:8
**prepare** 41:18
**prepared** 4:9
**prescription**
  40:1
**present** 2:14 5:4
  18:21 21:3
**presentation**
  23:12
**presented** 16:18
  16:18,19 17:21
  29:3
**presents** 24:6,7
**Presumably**
  24:7
**presumption**
  17:5,9,15

**pretrial** 2:23
**pretty** 42:12
  53:10 54:6
  64:16
**prevail** 23:5
  28:13,19 58:6
**previously** 56:5
**primary** 45:11
**principle** 15:22
  61:22
**prior** 8:9 31:8
  31:10 44:6
  46:10,14
**pro** 1:16
**probably** 4:5
  5:18 22:18
  57:16
**problem** 2:4
  30:17 55:1,22
**problems** 54:22
**procedure** 10:2
  10:6,7,12 12:5
  30:13 31:6
  32:24 40:23
  52:3 61:19
**procedures** 41:5
  56:11
**proceed** 8:4
**proceeding** 3:17
  15:8 24:5
  43:19,21 46:22
  52:13 53:20
  55:25 60:7
**proceedings**
  1:13,21 6:15
  13:2 28:16
  46:11,15 65:13
  66:9
**process** 3:25
  11:9,24 12:18
  12:22 13:13
  27:6 30:13
  31:8,9,10,15
  31:18,20 33:8
  33:13,14 34:16
  37:21,23 45:25
  46:2 54:19

61:11
**produced** 1:22
  19:23
**Professional**
  66:3
**profile** 20:13
**program** 41:6
**promise** 35:4
**promote** 23:25
**proposal** 15:19
  16:16
**prosecuting**
  17:10
**prove** 51:15
**provide** 19:14
**provides** 25:20
**providing** 46:21
**provision** 9:2,11
  11:22 12:4
  27:21 30:23
**provisions** 11:7
  25:20
**purportedly**
  44:23
**purpose** 16:9
**pursuant** 66:6
**put** 5:16 15:24
  16:7 23:17
  30:6 34:4,9,18
  36:5,7 37:9
  39:11 40:17
  41:13 46:7
  49:22,23 56:12
  56:19,20 57:5
  57:21 58:1,4
  64:21 65:7
**puts** 50:13
**putting** 50:16

**Q**

**qualification**
  42:8,9
**question** 8:8
  11:11,17 23:18
  23:18 27:14
  28:6 36:7 53:5
**questionable**

46:8
**questions** 63:15
**quick** 60:15
**quickly** 63:18
**Quite** 31:3

**R**

**R.P.R** 66:18
**rail** 30:7
**railroads** 25:14
**railway** 8:15
  11:15 25:5
  26:3,6 27:16
  27:17,21 30:11
  30:24 34:24,25
  35:1,13,15,17
  35:18 36:12,14
  36:18 43:21
**raise** 14:10
**raised** 8:9
**reach** 17:3
**reached** 17:4
**read** 33:6 35:3
  38:21
**reads** 9:19
**ready** 8:4
**real** 61:20
**really** 2:11 4:3
  4:13 34:2 45:9
  63:2 64:3
**reason** 13:16,17
  40:22 47:4
  49:3
**reasonable** 27:7
  39:24 41:16
**reasons** 28:23
  37:16
**receipt** 43:14
  63:10
**received** 31:24
  43:10
**recess** 6:13
**recitation** 22:23
**recited** 23:13
**recognized**
  12:23
**recognizing** 6:22

**recollection**
  14:23
**reconsider** 15:1
**record** 19:8 46:9
  59:21
**recorded** 1:21
**recording** 2:10
**records** 20:10,11
  20:12,12 41:15
  44:11
**refer** 18:15,16
  30:7 43:5
**reference** 14:24
**referred** 18:15
  21:12
**refers** 18:17
  46:13
**refused** 39:16
  55:7
**Registered** 66:3
**regulations**
  66:11
**reinforce** 4:6
**reinstatement**
  17:23,24 18:2
  18:3,3
**reject** 32:25
**relationship**
  44:4 48:24,25
**relevant** 18:11
**relief** 15:6
**rely** 47:25
**relying** 28:15
  49:7
**remember** 11:12
  22:17 28:7,9
**removed** 38:22
  42:5 51:24
**rendered** 23:8
**reorganization**
  9:24 16:6
**replacement** 2:7
**report** 19:12
**reported** 66:9
**reporter** 2:6,8
  30:2 66:1,4
**Reporting** 1:24

66:18
**reports** 19:10,22
  19:24 20:5
**represent** 8:7
  23:20 26:13
  50:3 52:20,22
**representation**
  24:16 26:6
  29:7,10 38:1
  49:10,12,15
  50:22
**representations**
  51:20 63:8
**representative**
  7:10 11:18
**represented**
  13:20 30:19
  60:19
**represents** 26:14
**request** 14:25
  55:10 62:13
**requests** 53:4
**required** 10:1
  39:17
**requires** 35:19
**reserve** 7:21
  58:21
**reserved** 58:20
**resolution** 10:2
  10:6 12:5
  30:13 31:6,10
  32:24 33:8
  37:22 46:10
**resolve** 4:1
  10:12 30:18
  60:14
**resolved** 5:9 9:4
  10:22 11:2
  14:1
**respect** 9:7 10:4
  23:2 27:18
  29:8
**responsible**
  26:18
**restaurants** 6:7
  6:9
**result** 53:12

**resulting** 36:4
**retained** 45:22
**return** 39:4,7
  41:12
**reverse** 34:20
**review** 25:21
  26:3 28:25
**reviewer** 32:17
**rid** 57:14
**rigged** 45:8
**right** 2:20 8:3
  9:12 11:13
  12:15 17:19
  20:22 23:7
  27:25 28:17
  37:24 40:8
  42:16 46:6
  47:13,23,23
  52:17,24 59:3
  60:15 61:25
  64:24
**RLA** 8:19 29:2
**ROA** 25:24
**role** 14:2
**room** 40:12
**RPR** 1:23
**ruled** 15:2 17:21
  21:5 50:7
  59:17,18,18
**rules** 53:14
**ruling** 15:5
**rushed** 52:3
**Ryskamp** 50:7

**S**

**safeguard** 23:25
**sat** 32:14,19
  40:13
**Saver** 20:7
**saw** 46:24
**saying** 17:11
  21:6 28:18
  30:3 33:22
  34:13 39:1,3
  42:5,12 45:9
  45:13,16,18,24
  46:1,2 48:7,22

49:20,21 50:16
  51:7 56:15
  58:11,21 61:11
  64:3
**says** 12:16,17
  22:7 33:6,8
  40:18 43:9
  51:4,19 54:4
  59:23 62:7
**schedule** 2:5,12
**scheduled** 5:11
  42:2
**schedules** 3:3
**scope** 59:22
**se** 1:16
**seated** 2:3
**second** 8:22
  12:10 29:5
  36:6 55:23
  58:9 60:23
**seconds** 19:11
**section** 9:19
  57:1 66:6
**see** 3:1 5:2,10
  30:4,20 34:21
  64:18,23
**seeing** 64:25
**seeking** 17:18
  18:1 41:11
**seeks** 40:17
**select** 37:2
**selected** 13:4
  37:2 44:24
  45:6
**selecting** 37:4
**send** 41:17
**seniority** 19:16
  20:1 26:17
  35:21,23 42:6
  49:14 51:24
**sent** 19:19 39:2
  39:7,14 40:14
  55:9
**sentencing** 2:13
**separate** 4:19
  11:22
**September** 36:3

**series** 26:22
**serious** 56:1
**seriously** 5:16
**set** 2:24 5:5
  11:24 41:2
  48:1,21 49:8
  49:24 53:13
  56:2 58:14
  63:24
**sets** 27:17 30:19
**setting** 59:6
**settle** 64:4
**seven** 9:19 26:23
**Seventh** 60:21
**share** 54:10,14
**Sheridan** 1:23
  66:3,18
**show** 21:1 41:16
  46:10 55:13
**showed** 54:22
**showing** 8:18
  19:24
**shown** 29:1
**shut** 54:6
**sick** 2:8 54:1,3
**side** 7:17 10:13
  20:16 27:12
  33:5 59:5
**silos** 16:25 21:11
  21:14 22:8,9
  31:23 43:4,5
  43:10,15 53:7
  58:5,11,13,18
  58:25 59:19
**similar** 26:18
**similarities**
  59:16
**similarly** 31:17
**similarly-situa...**
  54:8
**simply** 23:15
  29:7 33:22
**sit** 62:5
**sitting** 39:22
  49:17
**situated** 31:17
**situation** 55:19

**situations** 2:11
**six** 22:15,17
  24:15 27:20
  28:11 31:18
  58:25
**sixteen** 31:25
**sixth** 28:6
**sixty-five** 10:17
**sixty-nine** 59:23
**skip** 9:24
**SLI** 35:25
**small** 62:11
**solely** 37:2
**someone's** 64:13
**somewhat** 50:17
**soon** 38:11
**sorry** 7:7 9:14
  29:14
**sort** 33:13
**sought** 17:23
  42:19 49:10
  56:11
**sound** 7:25
  13:24
**sounds** 15:13
**Southern** 1:1
  66:5
**spanned** 59:22
**speak** 29:17
**specifically** 9:13
  41:12
**speed** 6:2
**spent** 12:19
**spin** 20:5
**SSDI** 63:5
**stage** 28:15
**standard** 8:10
  8:16 26:2
  30:19 34:19,21
  34:23 35:6,9
  36:8,11,13,15
  36:18,19,19,22
  51:13,15,19
**standards** 25:21
  28:25 29:11
  35:9
**start** 6:21 39:13

**starting** 18:20
  33:2,11,12
  34:15
**State** 24:24
  30:22
**statement** 7:20
**statements** 50:5
**states** 1:1 31:7
  66:4,7,12
**status** 19:10,12
  19:15,23 41:13
  57:6,10,20,21
  62:12,16,17
**statute** 22:16
  25:2,11,22
**statutory** 8:19
  30:22 31:4
**stenographica...**
  66:9
**stenography**
  1:22
**step** 34:14
**Steven** 7:6,8
**stop** 2:17 4:25
  8:22 10:23
  29:16 44:7
**straight** 38:7,7
**strange** 13:24
**Street** 6:7
**strip** 40:24
**stripped** 32:7
  39:18 41:7
**structured** 13:25
**subject** 11:7
**submit** 55:6
  60:16
**submitted** 18:10
**subparagraph**
  9:19
**subsequent** 10:9
  42:8
**subsequently**
  22:11
**substance** 54:22
  55:1
**substantiate**
  18:22

**successful** 17:16
21:8 43:2 51:4
**suffer** 16:12
**sufficiently** 58:6
**suggest** 13:5
**suggesting** 37:6
44:15,17 46:19
48:20 61:2,3
**suggestion** 2:20
**suggests** 9:2
**suing** 51:11
**suit** 22:12 28:4
49:4
**Suite** 1:19,24
**sum** 9:21,23
10:2,5 12:5
26:17 35:20,21
**summary** 3:11
5:8 7:15 28:20
**support** 29:4
**suppose** 4:2
**Supreme** 4:12
11:11 43:25
**sure** 26:10,10
33:10 36:15
49:6 61:1
**Surely** 14:9
**sustained** 15:18
**swoop** 41:7
**sympathetic**
39:10
**system** 2:10
13:14 35:1,19
37:12 45:4,8
60:21
**systems** 26:17

**T**
**T.K** 1:13
**TAG** 32:1
**take** 4:25 5:25
8:25 10:3 12:3
14:13,13 18:25
19:11 23:2
27:13 30:3
32:22 37:10
42:12,18 44:25

49:21 52:18
58:1
**taken** 6:13 17:12
18:18 33:21
**talk** 2:4 4:14 5:2
48:18
**talked** 5:15
**talking** 23:7
**tangent** 20:16
**tee** 32:5
**tell** 4:8 12:15
38:16 48:4,6
50:9 51:25
65:10
**telling** 27:15
38:21
**tells** 63:1
**temporary**
62:16,21
**ten** 19:13 27:22
53:7 54:13
55:11
**tends** 23:20
**terminate** 54:2
**terminated** 18:1
32:1 38:14
40:11 42:7
49:17 54:1,11
54:17,24 55:4
55:5,7
**termination**
18:15
**terms** 36:23
**testimony** 51:6
59:22 60:2
**testing** 54:23
**Texas** 52:19
**thank** 3:7 6:4,11
6:24 7:9 8:5
29:19,23 59:3
59:11 63:16
**thankful** 2:7
**thanks** 65:7
**thereof** 58:19
**they'd** 44:10
**thing** 20:4 27:7
30:10,20 50:19

51:5 53:1,12
65:3
**things** 3:2 4:23
6:2 25:19
**think** 2:24 3:21
4:14,16,21,23
5:8 8:14 11:20
14:17,24 20:17
20:25 22:16
23:4,16,20
24:14 27:19
28:5 31:1
33:23 34:17
36:8,23 42:11
44:20 49:24
51:6 55:23
56:8 60:14
64:10,15,20
65:8
**third** 60:1
**thirty** 7:16,24
**thirty-two** 20:2
**thought** 5:17,19
5:21
**thousand** 19:13
31:25
**thousands** 63:11
**three** 9:18 19:3
29:11 47:11
**three-part** 36:19
**till** 65:7
**time** 5:1,21 7:18
7:21 19:9,13
24:12 27:17
29:17,19 39:17
49:16 52:11
55:3 57:12,13
59:5 65:6
**timely** 24:15
27:25 28:4,14
**times** 50:14
57:15
**Title** 66:6
**titled** 25:11
**today** 2:8 7:5,14
35:24 43:6
59:13 61:14

62:7,14 63:1
63:10
**told** 28:1 31:12
31:13 39:23
40:10 42:24
49:17 51:22
56:3,11 62:14
**tomorrow** 5:13
**tooth** 38:10
**touched** 34:5
**training** 41:14
41:18,19 57:12
57:13
**transcript** 1:13
1:22 60:6 66:8
66:10
**transcripts**
59:23
**treated** 54:15,16
58:6
**treatment** 39:2
**tri-party** 36:18
**trial** 5:4,5 63:24
**tried** 51:16
58:21 59:15,16
64:4
**true** 9:5,7,9
40:23 51:21
56:13 59:24
66:8
**truthful** 50:21
51:9,12
**try** 49:6 63:17
64:7,8,21
**trying** 6:2 23:25
**TSA** 54:13
**TUESDAY** 1:14
**turn** 3:19 6:25
9:17 29:21
59:4
**turned** 32:17
**turns** 53:6
**TWA** 47:5,6
**twelve** 2:18
54:14
**twenty** 4:6 57:1
**twenty-four**

41:25
**twenty-one** 19:3
**twice** 55:7
**two** 11:25 16:25
19:7 21:11,14
22:1,8,9 25:19
27:20 28:23
38:5,6,7 41:24
43:4,9 44:6
46:14 50:14
52:15,16 58:18
58:25 59:19,25
62:2 63:1
64:11
**type** 30:19

**U**
**Uh-huh** 25:6
**Um-hum** 48:10
**unauthorized**
39:3 40:10
**unchallenged**
3:18 4:1
**unclear** 2:9
**underfunded**
41:6
**underscore** 4:14
**understand** 4:17
13:23 26:8
30:16 31:21
33:11 34:13
36:21 42:11
45:17,18 48:20
49:6,19 50:12
55:18 61:24
64:15
**understanding**
6:12 19:1
43:13
**unfair** 27:5 29:6
**unfortunately**
37:8
**union** 7:10 9:1,4
10:19 13:18,20
13:20 14:1
23:19,21,24
24:4,6 26:12

26:18 27:8
44:18 45:19,19
45:20,21 46:20
47:6 48:8,23
49:21,23,25
50:12 51:2,9
56:6 60:19
61:4,7,10,12
**unit** 26:15
**United** 1:1 66:4
66:7,12
**untruthful** 51:6
**upset** 48:1 50:19
51:5 64:14
**upsetting** 55:18
56:8
**urge** 63:19
**use** 2:10 7:25,25
30:2 43:2
**usually** 64:10
**utilized** 48:11

_____
**V**
_____

**v** 25:23
**vacate** 47:16
56:1
**valid** 3:20,22,23
8:13 23:7
34:17,18
**validity** 4:6
**versus** 6:19
**veto** 60:20
**view** 15:15
22:20 24:6,7
43:16 48:7
61:16,20
**views** 4:3,4
**violate** 29:9
**violation** 8:19
**vs** 1:6

_____
**W**
_____

**Wadestuck** 27:1
**wait** 57:13 64:22
**waiting** 65:5
**waived** 60:4
**walking** 6:8

**want** 3:19 4:3
5:8,15 14:12
27:13 29:16
33:10 36:6
37:1 45:16,18
46:7,16 49:6
55:17 58:11,18
59:9 62:9
63:21
**wanted** 2:4,15
3:1 4:21 14:5
14:20 33:19
39:12 60:5
63:2
**Washington**
1:19 57:12
**wasn't** 18:1
35:16,17 36:14
38:3 49:3
57:24,24
**water** 6:9
**way** 6:7 19:21
19:25 20:10
28:11,12 33:16
34:1 45:23
46:16 50:17
52:9 60:23
63:25
**we'll** 60:2
**we're** 4:23 12:13
23:7 28:15
30:18 38:21
41:25 43:6,7
57:25 58:1
**we've** 2:5 30:20
64:4,11 65:5
**web** 58:10
**website** 35:22
38:9
**week** 38:5
**weeks** 38:6,7
**went** 28:11
40:11 41:14
52:4,25
**weren't** 25:12
42:15
**WEST** 1:25

**whatsoever** 37:4
**wish** 13:16
**wishes** 9:25
23:10
**withheld** 62:12
62:15,24
**withhold** 41:13
57:6,8,16,19
**witnes** 60:5
**witness** 53:20
56:4 59:24
**witnesses** 16:20
50:25 51:2
53:3,4,16
**won** 59:18,19
**wonder** 8:21,24
**word** 18:25
38:19 45:17
**words** 15:11
16:3 33:25
40:3 46:6
**work** 39:4,7,11
41:12 56:21,24
63:2
**workable** 60:21
**worked** 56:5
**workers** 35:18
**working** 46:17
**worse** 26:21
**worth** 63:11
**wouldn't** 24:8
38:16
**wreck** 51:11
**wrestle** 55:23
**writing** 60:22
**written** 38:19
**wrong** 43:18
**wrote** 53:5

_____
**X**
_____

_____
**Y**
_____

**yeah** 26:1 39:12
40:21 48:14
51:8 52:8
53:24 57:3
62:4

**year** 40:6
**years** 4:6,13
16:16 18:20
27:20 41:24
45:23 48:12,17
48:24 49:13,18
51:23 52:23
53:8 54:14
55:11 62:24
63:3,11

_____
**Z**
_____

**zero** 26:17 35:20
35:21

_____
**0**
_____

_____
**1**
_____

**1** 38:12 54:18
**1:30** 3:9 5:1 65:8
**11** 1:14
**11:40** 1:14
**11:48** 6:14
**1130** 1:19
**11D** 53:22 54:1
54:3
**1307** 10:15,15
13:10
**135,000** 53:10
**14-80518** 6:18
**1551** 1:24
**19** 25:13,13
**1926** 25:11
**1945** 11:16

_____
**2**
_____

**2** 10:16
**2:30** 2:24 65:13
**2003** 18:20
**20036** 1:19
**2004** 18:20
**2007** 17:2 18:1
18:17,22,24
19:9 38:23
41:22,25 56:18
63:9
**2008** 62:19

**2009** 19:25,25
42:6
**200E** 1:24
**2013** 14:14,19
14:22 15:12,21
16:13,15 38:22
42:1,8 49:16
54:18
**2014** 22:16,19
**2015** 36:3
**2016** 1:14 36:4
66:14
**20th** 15:12
**28** 66:7
**2nd** 66:14

_____
**3**
_____

**3** 12:12
**33** 20:8
**33401** 1:25
**37** 9:14 20:14

_____
**4**
_____

_____
**5**
_____

_____
**6**
_____

_____
**7**
_____

**753** 66:6
**759** 25:25

_____
**8**
_____

**870** 25:25

_____
**9**
_____

**93-7** 9:14 10:17
12:14
**93-8** 20:3
**93-A** 19:2
**94** 44:12
**950** 1:19